UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Christian Charles,

        Plaintiff,

—v—

Jerry Seinfeld, *et al.*,

        Defendants.

---

18-CV-1196 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

This litigation concerns allegations that Plaintiff is the author of intellectual property related to the talk show *Comedians in Cars Getting Coffee*, produced and distributed by Defendants. Now before the Court is Defendants' motion to dismiss, Dkt. No. 73. For the reasons set forth below, the Court GRANTS the motion. The copyright claims are time-barred, and the Court declines supplemental jurisdiction over Plaintiff's remaining state law claims.

### I. BACKGROUND

The following facts are drawn from Plaintiff's Second Amended Complaint ("SAC"), Dkt. No. 70, Exhs. 3-4. Since the 1990s, Plaintiff Christian Charles, a writer and director, and Defendant Jerry Seinfeld, a well-known comedian and actor, had worked together on various projects. SAC ¶ 18-26. During one of their collaborations, Charles allegedly suggested to Seinfeld that he should create a television show based on the concept of two friends talking and driving. *Id.* ¶ 22. Charles produced a treatment of the show, but Seinfeld ultimately decided not to proceed with the project. *Id.* ¶ 24.[1] Years later, in 2011, Seinfeld allegedly mentioned to

---

[1] In this context, the term "treatment" commonly refers to "a brief outline, in prose, describing the actions of a movie plot, indicating characters along the way with little or no dialogue . . . run[ning] no more than 25 pages." *Richlin v. MGM Pictures, Inc.*, 531 F.3d 962, 964 n.1 (9th Cir. 2008). It can include a "mixture of story and

1

Charles that he was considering a talk show about "comedians driving in a car to a coffee place and just 'chatting,'" as his next project. *Id.* ¶ 28. Charles claims he immediately noted that this was the same idea for which he earlier produced the treatment. *Id.* They then purportedly agreed to work together on the project. *Id.*

Charles then produced a new treatment which he claims captures the "look and feel" of *Comedians in Cars Getting Coffee*. *Id.* ¶ 32. Seinfeld liked the treatment, and Charles allegedly created a "synopsis, camera shot list with description and visual camera angles, and script," all of which he deems "the Script." *Id.* ¶ 36. In October 2011, Charles and his production company, mouseROAR, shot a pilot of the show with Seinfeld, settling on the name, *Comedians in Cars Getting Coffee*. *Id.* ¶ 36-44. According to the SAC, despite some initial reservations, Seinfeld decided he wanted to proceed with the project. *Id.* ¶ 45-47.

In Charles's telling, this is the point at which things go sour. Charles allegedly had a business understanding with Seinfeld that mouseROAR would provide all production services and was concerned when Seinfeld brought in a subsidiary of Sony Pictures Television that also did production work. *Id.* ¶ 62. In January and February of 2012, Charles claims that he communicated his request "for compensation and backend involvement" with the show. *Id.* ¶ 69. According to the SAC, Seinfeld "expressed outrage at the notion that Charles would have more than a 'work for hire' directing role." *Id.* ¶ 70. The SAC further states that Seinfeld characterized Charles as "ungrateful" and told Charles that he "should expect to be compensated through his directing fee." *Id.* They had another conversation along similar lines a few days later. *Id.* ¶ 73. During these conversations, Charles alleges that "Seinfeld did not claim authorship or ownership of the Pilot" even though "Charles had often reminded Seinfeld" that

---

staging." *Id.*

the idea for the show was Charles's. *Id.* Chares also contends that he never made any agreements with any of the Defendants regarding a "work-for-hire" arrangement or his alleged copyright interests. *Id.* ¶ 71-72.

Charles alleges that business partners and confidantes of Seinfeld assured Charles that he would "remain involved" and that the spat with Seinfeld would "blow over." *Id.* ¶ 74. As late as April of 2012, Charles claims that one Seinfeld representative left a voicemail stating that Charles and Seinfeld could still work together. *Id.* ¶ 76. Later that month, the SAC states that Seinfeld agreed to pay $107,734 for pre-production expenses that mouseROAR incurred. *Id.* ¶¶ 77-79. Charles also alleges that he and his representatives were engaged in discussions with the Sony subsidiary, regarding a potential deal and "backend compensation" as the show's "writer/director." *Id.* ¶ 80. Despite these conversations, Charles had no further involvement in the project, which became a successful web series that continues to produce new episodes. *Id.* ¶¶ 81, 96.

From 2012 to 2014, Charles claims that he "maintained a reasonable and good faith belief" that "Seinfeld would eventually acknowledge Charles's authorship and ownership and bring him in" on the show. *Id.* ¶ 86. By September of 2016, the SAC states that "Charles concluded that Seinfeld never intended to include Charles in the Project." *Id.* ¶ 91. That month Charles registered his treatment with the Copyright Office. *Id.* ¶ 92. In 2017, Netflix inked a lucrative new deal for the show to join their platform, leading Charles to contact Seinfeld. *Id.* ¶ 96-97. Seinfeld's lawyer responded, stating that Seinfeld was the creator and owner of the show. *Id.* ¶ 98. While Charles concedes that Seinfeld had previously claimed to be the "creator" of the show in the press, this was the first time that "Seinfeld or a representative of Seinfeld had directly made this claim to Charles." *Id.* In February of 2018, Charles filed this lawsuit against

3

Defendants, all of whom are involved in the production or distribution of *Comedians in Cars Getting Coffee*. *Id.* ¶¶ 1-3, 99. He brings claims for copyright infringement of the treatment, script, and pilot, as well as claims for joint authorship, injunctive relief, and several state law causes of action. *Id.* ¶¶ 100-71.

## II.   LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

While "the statute of limitations is ordinarily an affirmative defense that must be raised in the answer" it may nevertheless "be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). When evaluating 12(b)(6) motions based on the statute of limitations, the Court must continue to "assume [Plaintiff's] factual allegations are true" and apply the plausibility standard announced in *Twombly* and *Iqbal*. *Luv N' Care, Ltd. v. Shiboleth LLP*, Case No. 16-cv-3179, 2017 U.S. Dist. LEXIS 128060, at *15 (S.D.N.Y. Aug. 8, 2017).

## III.   DISCUSSION

Defendants argue that Plaintiff's copyright claims are time-barred. The Court agrees.

4

Civil actions under the Copyright Act have a three-year statute of limitations. *See* 17 U.S.C. § 507(b). To successfully sue for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, Inc., 499 U.S. 340, 361 (1991)). The Second Circuit has held that when "ownership is the dispositive issue" in an infringement claim and the "ownership claim is time-barred," then the infringement claim itself is time-barred, even if there had been infringing activity in the three years preceding the lawsuit. *Kwan*, 634 F.3d at 230; *see also Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016) (per curiam) ("Where the plaintiff's claims were rooted in her contested assertion of an ownership interest in the copyright, and that claim of ownership interest was time-barred because of the plaintiff's delay in suing, the plaintiff could not resuscitate the untimely claim by relying on claims against the defendants' continuing course of infringing publication after the plaintiff's ownership claim became time-barred.").

Plaintiff's infringement claim is squarely "rooted in [his] contested assertion of an ownership interest in the copyright." *Id.* The principle issue in this case is not the "nature, extent or scope, of copying." *Kwan*, 634 F.3d at 229. Rather, it is whether Charles's alleged "contributions . . . qualify [him] as the author and therefore owner" of the copyrights in *Comedians in Cars Getting Coffee*. *Id.*

Plaintiff does not truly dispute any of this. *See* Memorandum in Opposition to Defendants' Motion to Dismiss, Dkt. No. 85, at 1 ("Resolution of this case depends upon the answer to one simple question: who it the *author* of the [*Comedians in Cars Getting Coffee*] Pilot.") (emphasis in original). Instead, Plaintiff makes unavailing attempts to distinguish Second Circuit precedent on this issue. First, he contends that his lawsuit is about "authorship,"

5

which is somehow different than "ownership." However, authorship is merely one path to ownership of a copyright, and *Kwan* itself dealt with an authorship dispute. 634 F.3d at 229. Second, Plaintiff argues that *Kwan* and *Simmons* involved disputes over the plaintiff's status as an owner but not defendant's status. This is not a material distinction, because a non-owner defendant can prevail in an infringement suit so long as the plaintiff is also not the owner. Moreover, the plaintiff in *Kwan* claimed that she, and not the defendant, was the sole author, even though the defendant had been listed as the author on the work in question. *Id.* at 227; *see also id.* at 229 ("[Plaintiff] cannot recover unless she was the sole author"). This set of facts largely mirrors the present case.

Having determined that "ownership forms the backbone of the 'infringement' claim," the relevant inquiry is whether it is evident from the face of Plaintiff's Second Amended Complaint that his ownership claim is time-barred. *Id.* at 229. The ownership claim "accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Id.* at 228 (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). Furthermore, "any number of events can trigger the accrual of an ownership claim, including an express assertion of sole authorship or ownership." *Kwan*, 634 F.3d at 228. For several reasons, the SAC describes assertions made over three years before this lawsuit was filed that were sufficiently express as to put a reasonably diligent plaintiff on inquiry.

First, the SAC alleges that in 2011 Seinfeld twice rejected Charles's request for backend compensation and made it clear that Charles's only involvement was to be on a "work-for-hire" basis. In *Wilson v. Dynatone Publising Co.*, the Second Circuit explained that a defendant who, in a copyright registration, "assert[ed] ownership *as a work for hire* would effectively repudiate Plaintiffs' claim" of copyright ownership, if the plaintiffs were put on notice of the registration.

6

892 F.3d 112, 119 (2d Cir. 2018) (emphasis in original). Likewise, Seinfeld restricting Charles to a "work-for-hire" directing role necessarily contradicted any idea that Charles was the owner of intellectual property in the show. Even if all inferences are drawn in favor of Charles, a reasonably diligent plaintiff would have understood that Seinfeld was repudiating any claim of ownership that Charles may have. That Seinfeld did not expressly claim ownership for himself during these conversations does not matter. It is sufficient that Charles's claim was rejected. *See Mahan v. ROC Nation, LLC*, 634 F. App'x 329, 331 (2d Cir. 2016) (statute of limitations barred copyright infringement claim when defendant "had long ago expressly repudiated [plaintiff's] ownership claims"); *Simmons*, 810 F.3d at 116 (copyright infringement claim was time-barred when "more than three years prior to [plaintiff's] filing of his suit, [defendant] had made clear to [plaintiff] that he rejected [plaintiff's] assertion of an interest in the copyright").

Charles claims that statements made by associates of Seinfeld in the aftermath of the two phone calls diluted or muddled the repudiation. However, as the SAC makes explicit, these statements relate only to whether Charles "would remain involved in the Project." SAC ¶ 74; *see also id.* ¶ 76 ("It's not over; Christian and Jerry can still work together"). Even drawing all inferences in favor of Charles, these remarks do not plausibly contradict Seinfeld's statements that Charles would not be "involved" on more than a work-for-hire basis.

Second, Seinfeld and other Defendants went on to produce and distribute the show without giving any credit to Charles. In *Kwan*, the fact that the book in question was published without crediting Plaintiff as an author was enough to put her on notice that her claim of authorship was repudiated. 634 F.3d at 227, 229. The SAC states that from 2012 to 2014, Charles believed that "Seinfeld would eventually acknowledge Charles's authorship and ownership and bring him in on the Project." SAC ¶ 86. Even interpreting the SAC most

7

favorably to Charles, it clearly alleges he was aware that the show was being produced and that he was not being credited on it.

Because Charles was on notice that his ownership claim had been repudiated since at least 2012, his infringement claim is time-barred. His joint authorship claim is also time-barred for the same reasons. And his request for an injunction fails, because it was premised on Charles' assertion that he is the sole owner. Because Charles has had multiple opportunities to amend his complaint in the face of Defendants' timeliness arguments and has not made any further amendment requests, these claims are dismissed with prejudice. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' *see* Fed. R. Civ. P. 15(a), no court can be said to have erred in failing to grant a request that was not made."); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (dismissal with prejudice is proper when "a party has been given ample prior opportunity to allege a claim"); *see also* Individual Rule 3.F ("Non-moving parties are on notice that declining to amend their pleadings to timely respond to a fully briefed argument in the motion to dismiss may well constitute a waiver of their right to use the amendment process to cure any defects that have been made apparent by the briefing.").

The Court further declines supplemental jurisdiction over the remaining state law claims. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (noting that "when the federal claims are dismissed the 'state claims should be dismissed as well'") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (explaining that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point

8

toward declining jurisdiction over the remaining state-law claims").

The Court finds no reason to deviate from that normal practice here. Because "the Court has not yet invested resources necessary to resolve [these] claims," and because "[t]he extensive discovery already taken is likely sufficient to enable [these] claims to be evaluated in state court without any additional discovery," the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 393-94 (S.D.N.Y. 2013). They are dismissed without prejudice.[2]

## IV.  CONCLUSION

For the reasons stated above, the Court hereby GRANTS Defendants' motion to dismiss. The federal claims are dismissed with prejudice and the state law claims dismissed without prejudice. Because the Court resolves these motions on the papers, Defendants' request for oral argument, Dkt. No. 89, is hereby DENIED. The Clerk of Court is respectfully directed to terminate Dkt. Nos. 73, 89 and to close this case.

SO ORDERED.

Dated: September 30, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[2] After submitting briefing on this motion, the parties became engaged in a dispute regarding the proper procedural vehicle for Defendants to challenge Plaintiff's attachment of various declarations and affidavits to his opposition memorandum. *See* Dkt. Nos. 91, 92. Because these declarations and affidavits would not affect the Court's analysis if they were considered, the Court declines to address the parties' procedural arguments.

9