UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTIAN CHARLES,

                Plaintiff,

   v.

JERRY SEINFELD, COLUMBUS 81
PRODUCTIONS, INC., EMBASSY ROW, LLC,
COMEDIANS IN CARS, LLC, SONY PICTURES
TELEVISION INC., and NETFLIX, INC.,

                Defendants.

No. 18 Civ. 01196 (AJN) (KHP)

---

**MEMORANDUM OF LAW OF DEFENDANTS JERRY SEINFELD, COLUMBUS 81
PRODUCTIONS, INC., AND COMEDIANS IN CARS, LLC IN SUPPORT OF THEIR
MOTION FOR ATTORNEYS' FEES AND COSTS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile:  (212) 351-4035

Dated: October 15, 2019

*Attorneys for Defendants Jerry Seinfeld,
Columbus 81 Productions, Inc., Embassy
Row, LLC, Comedians in Cars, LLC, Sony
Pictures Television Inc., and Netflix, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 4

    I.      THE COURT FOUND THAT PLAINTIFF WAS ON NOTICE
            THAT HIS OWNERSHIP CLAIM HAD BEEN REPUDIATED
            SINCE AT LEAST 2012 ........................................................................4

    II.     PLAINTIFF WAS ON NOTICE THAT HIS CLAIMS WERE
            OBJECTIVELY UNREASONABLE ......................................................4

ARGUMENT ....................................................................................................................... 7

    I.      DEFENDANTS ARE ENTITLED TO RECOVER THEIR
            ATTORNEYS' FEES AND COSTS AS THE PREVAILING
            PARTIES IN THIS ACTION ................................................................7

          A.      Plaintiff Maintained Objectively Unreasonable and Frivolous
                  Legal and Factual Positions ........................................................8

          B.      Awarding Attorneys' Fees and Costs Furthers the Copyright Act's
                  Principles of Deterrence and Compensation .................................12

    II.     THE FEES AND COSTS SOUGHT BY THE SEINFELD
            DEFENDANTS ARE REASONABLE ................................................13

          A.      The Rates of the Seinfeld Defendants' Counsel Are Reasonable ..............14

          B.      The Number of Hours Counsel Expended Is Reasonable ..........................17

          C.      The Costs Sought by the Seinfeld Defendants Are Reasonable ...............18

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*APEX Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*,
 2018 WL 5784544 (S.D.N.Y. Nov. 5, 2018) ...........................................................................15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
 522 F.3d 182 (2d Cir. 2008) ...............................................................................................14, 15

*Baker v. Urban Outfitters, Inc.*,
 431 F. Supp. 2d 351 (S.D.N.Y. 2006) ...........................................................................12, 13, 14

*Byrne v. BuyThisFast Network, Inc.*,
 2005 WL 1155175 (S.D.N.Y. May 17, 2005) ......................................................................10

*Ceglia v. Zuckerberg*,
 2012 WL 503810 (W.D.N.Y. Feb. 14, 2012) ......................................................................15

*Charles v. Seinfeld, et al.*,
 No. 18-CV-1196 (AJN) (S.D.N.Y. Sept. 30, 2019)...................................1, 3, 4, 5, 7, 9, 10, 11

*Dimmie v. Carey*,
 88 F. Supp. 2d 142 (S.D.N.Y. 2000) ...................................................................................16

*Fogerty v. Fantasy, Inc.*,
 510 U.S. 517 (1994)....................................................................................................8, 12

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
 2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) ......................................................................19

*Jorgensen v. Epic/Sony Records*,
 351 F.3d 46 (2d Cir. 2003).................................................................................................16

*Kirtsaeng v. John Wiley & Sons, Inc.*,
 136 S. Ct. 1979 (2016)........................................................................................................8

*Kwan v. Schlein*,
 634 F.3d 224 (2d Cir. 2011)................................................................................5, 6, 7, 9, 10

*LaPine v. Seinfeld*,
 2009 WL 2902584 (S.D.N.Y. Sept. 10, 2009), *aff'd*, 375 F. App'x 81 (2d Cir.
 2010) .................................................................................................................................16

*Mahan v. Roc Nation, LLC*,
 2015 WL 4388885 (S.D.N.Y. July 17, 2015), *aff'd*, 634 F. App'x 329 (2d Cir.
 2016) ..........................................................................................................................3, 7, 8

## TABLE OF AUTHORITIES  *(continued)*

Page(s)

*Mahan v. Roc Nation, LLC*,
   634 F. App'x 329 (2d Cir. 2016) ........................................................................10

*Millea v. Metro-North R.R. Co.*,
   658 F.3d 154 (2d Cir. 2011)..............................................................................13

*Miroglio S.P.A. v. Conway Stores, Inc.*,
   629 F. Supp. 2d 307 (S.D.N.Y. 2009)..............................................................14

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
   711 F.2d 1136 (2d Cir. 1983)...........................................................................17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663 (2014)............................................................................................9

*Porto v. Guirgis*,
   659 F. Supp. 2d 597 (S.D.N.Y. 2009)..........................................................11, 12

*Sid Bernstein Presents, LLC v. Apple Corps Ltd.*,
   2018 WL 3300688 (S.D.N.Y. Jan. 25, 2018), *report and recommendation*
   *adopted*, 2018 WL 1587125 (S.D.N.Y. Mar. 29, 2018) .................................7, 9, 13

*Simmons v. Stanberry*,
   810 F.3d 114 (2d Cir. 2016)........................................................................6, 7, 9, 10

*Thomson v. Larson*,
   147 F.3d 195 (2d Cir. 1998)..............................................................................16

*Tisi v. Patrick*,
   97 F. Supp. 2d 539 (S.D.N.Y. 2000)................................................................16

*TufAmerica Inc. v. Diamond*,
   2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) .................................................10, 12

*TufAmerica, Inc. v. Diamond*,
   2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016) ...................................8, 10, 13, 14, 18

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
   2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) .................................................15

*U.S. Football League v. Nat'l Football League*,
   887 F.2d 408 (2d Cir. 1989)..............................................................................18

*Vista Outdoor Inc. v. Reeves Family Tr.*,
   2018 WL 3104631 (S.D.N.Y. May 24, 2018) .................................................15

TABLE OF AUTHORITIES  *(continued)*

Page(s)

*Willis v. Home Box Office*,
  2001 WL 1352916 (S.D.N.Y. Nov. 2, 2001), *aff'd*, 57 F. App'x 902 (2d Cir.
  2003) ........................................................................................................................16

*Wilson v. Dynatone Publishing Co.*,
  892 F.3d 112 (2d Cir. 2018)....................................................................................10

**Statutes**

17 U.S.C. § 505 .......................................................................................1, 3, 5, 7, 8, 9

**Other Authorities**

Eriq Gardner, *Jerry Seinfeld Faces Bulked-Up Lawsuit for Allegedly Stealing Hit
  Show*, HOLLYWOOD REP. (May 29, 2018),
  https://www.hollywoodreporter.com/thr-esq/jerry-seinfeld-faces-bulked-up-
  lawsuit-allegedly-stealing-hit-show-1115493 ........................................................11

*Jerry Seinfeld Sued for Allegedly Stealing 'Comedians in Cars Getting Coffee'*,
  TMZ (Feb. 12, 2018), https://www.tmz.com/2018/02/12/jerry-seinfeld-sued-
  for-stealing-comedians-in-cars-getting-coffee........................................................11

Michelle Kaminsky, *BigLaw Attorney Revs Up 'Comedians in Cars Getting
  Coffee' Lawsuit Against Seinfeld*, FORBES (May 30, 2018),
  https://www.forbes.com/sites/michellefabio/2018/05/30/biglaw-attorney-revs-
  up-comedians-in-cars-getting-coffee-lawsuit-against-seinfeld/#4e9edd47416c ....................11

**Rules**

Fed. R. Civ. P. 54 .......................................................................................................1

Defendants Jerry Seinfeld, Columbus 81 Productions, Inc., and Comedians in Cars, LLC, (collectively, the "Seinfeld Defendants")[1] respectfully submit this memorandum of law and the accompanying declaration of David M. Kusnetz ("Kusnetz Declaration") in support of their motion for attorneys' fees and costs pursuant to Section 505 of the Copyright Act and Rule 54 of the Federal Rules of Civil Procedure, together with such further relief as appropriate.

## PRELIMINARY STATEMENT

This is a textbook case for an award of attorneys' fees and costs under the Copyright Act. Plaintiff filed and prosecuted this case knowing that his claims were hopelessly time-barred in the hope that the negative media attention generated by his lawsuit would pressure Jerry Seinfeld to settle. This meritless case was a press strategy masquerading as a lawsuit. But Mr. Seinfeld refused to acquiesce to these tactics and defended himself on the merits. Now that the Court has dismissed the time-barred complaint, it is time to hold Plaintiff accountable for the damage his misguided lawsuit has caused.

The facts here are straightforward. In 2012, Jerry Seinfeld's talk show *Comedians in Cars Getting Coffee* (the "Show") premiered on Crackle, Sony Pictures Television's online streaming service, to critical acclaim. For the next five years, the Show was consistently renewed for additional seasons and continued to garner rave reviews from critics across the globe. Since its premier, viewers have streamed episodes of the Show over 100 million times and it received Emmy Award nominations in 2013, 2014, and 2016. In 2017, "Netflix inked a lucrative new deal" to stream Mr. Seinfeld's award-winning and popular talk show. *See Charles v. Seinfeld, et al.*, No. 18-CV-1196 (AJN), slip. op. at 3 (S.D.N.Y. Sept. 30, 2019) (Dkt. No. 106)

---

[1]   Pursuant to an agreement between the Seinfeld Defendants and Sony Pictures Television Inc., Embassy Row, LLC, and Netflix, Inc. (collectively, the "Defendants"), the Seinfeld Defendants were responsible for paying all of the Defendants' attorneys' fees and costs in this action.

[hereinafter "Order"] (citing Plaintiff's Second Amended Complaint ("SAC") at ¶¶ 96–97, Dkt. No. 70).  In response, and later that year, on December 27, 2017—five-and-a-half years after the Show first premiered on July 19, 2012—Plaintiff came out of the woodwork and sent an email to Mr. Seinfeld, claiming for the first time to be the true creator of the Show and threatening to sue if he did not receive a share of the profits.  Over the next eight months, Mr. Seinfeld's counsel warned Plaintiff in writing on at least three separate occasions—before Plaintiff initiated this lawsuit, after he filed his *pro se* complaint*, and after he retained counsel*—that his ownership claims were meritless and time-barred under the Copyright Act's statute of limitations.  *See* Exs.[2] A–C.  In these communications, Mr. Seinfeld expressly placed Plaintiff on notice that if he persisted in prosecuting his objectively unreasonable claims, Mr. Seinfeld would seek all available remedies and damages, including attorneys' fees and costs.  *Id.*

Ignoring these warnings, Plaintiff barreled ahead, hoping that the media coverage generated by his allegations would pressure Mr. Seinfeld to settle.  But Mr. Seinfeld and his co-Defendants did not budge, choosing to weather the media storm in order to publicly vindicate their rights to the Show.  After Defendants moved to dismiss Plaintiff's *pro se* complaint, Plaintiff doubled down on his objectively unreasonable claims and found a lawyer willing to file a First Amended Complaint ("FAC").  Dkt. No. 46.  When Mr. Seinfeld again did not yield, the lawyer moved to withdraw as counsel the evening before Defendants moved to dismiss the FAC.  Tripling down, Plaintiff hired new counsel, who sought (and received) leave to file a Second Amended Complaint because he "concluded that the First Amended Complaint does not adequately express and assert all of [Plaintiff's] valid and important claims."  Dkt. No. 65.

---

[2]  All references to Exhibits ("Ex.") herein shall be to Exhibits to the Kusnetz Declaration, unless otherwise stated.

Defendants then moved to dismiss the SAC.  By forcing Defendants to prepare three motions to dismiss, Plaintiff exponentially increased Mr. Seinfeld's fees and costs to litigate this case.

Each iteration of Plaintiff's complaint repackaged the same time-barred copyright claims. And each motion to dismiss painstakingly demonstrated that those claims were hopelessly time-barred under the Second Circuit's unambiguous standard for determining when a plaintiff's claim of copyright ownership accrues.  *See* Dkt. Nos. 22; 50; 74.  On September 30, 2019, this Court granted Defendants' motion to dismiss the SAC, ruling that Plaintiff's copyright claims were time-barred under the same Second Circuit precedent that Defendants cited in all three motions to dismiss.  Order at 5–7.  Accordingly, the Court saw through Plaintiff's "unavailing attempts to distinguish Second Circuit precedent" and held that because Plaintiff "was on notice that his ownership claim had been repudiated since at least 2012, his infringement claim is time-barred."  *Id.* at 5, 8.  "Plaintiff's claims under the Copyright Act were plainly time barred and therefore objectively unreasonable."  *Mahan v. Roc Nation, LLC*, 2015 WL 4388885, at *2 (S.D.N.Y. July 17, 2015), *aff'd*, 634 F. App'x 329 (2d Cir. 2016).

On this record, the Court should award attorneys' fees and costs under Section 505 of the Copyright Act because:  (1) Plaintiff knew or should have known that his claims were objectively unreasonable when he filed this lawsuit and each time he amended his complaint; (2) Plaintiff failed to heed Mr. Seinfeld's multiple warnings—before and during the litigation—that his claims were objectively unreasonable and that Mr. Seinfeld would move for fees if he did not dismiss this lawsuit; (3) Plaintiff "had multiple opportunities to amend his complaint in the face of Defendants' timeliness arguments," Order at 8, which drastically increased the fees and costs that Mr. Seinfeld incurred in defending this action; and (4) awarding fees and costs will serve the purposes of the Copyright Act by putting Plaintiff and similarly situated plaintiffs on notice that

there are adverse consequences to bringing unreasonable claims.

## STATEMENT OF FACTS

**I.  THE COURT FOUND THAT PLAINTIFF WAS ON NOTICE THAT HIS OWNERSHIP CLAIM HAD BEEN REPUDIATED SINCE AT LEAST 2012**

In 2011, Mr. Seinfeld hired Plaintiff to direct the pilot episode of the Show.  Seeking more than a director's salary, "[i]n January and February of 2012, [Plaintiff] claims that he communicated his request 'for compensation and backend involvement' with the show."  Order at 2 (citing SAC ¶ 69).  This Court correctly found that "this is the point at which things [went] sour."  *Id.*  "First, the SAC alleges that in 2011 Seinfeld twice rejected [Plaintiff's] request for backend compensation and made it clear that [Plaintiff's] only involvement was to be on a 'work-for-hire' basis."  *Id.*  This "necessarily contradicted any idea that [Plaintiff] was the owner of intellectual property in the show."  *Id.* at 7.

"Second, Seinfeld and other Defendants went on to produce and distribute the show without giving any credit to [Plaintiff]."  *Id.*  "Even interpreting the SAC most favorably to [Plaintiff], it clearly alleges he was aware that the show was being produced and that he was not being credited on it."  *Id.* at 7–8.  This Court found that, "[f]or several reasons, the SAC describes assertions made over three years before this lawsuit was filed that were sufficiently express as to put a reasonably diligent plaintiff on inquiry," thus triggering the accrual of Plaintiff's copyright ownership claim.  *Id.* at 6.  As a result, this Court concluded that, "[b]ecause Charles was on notice that his ownership claim had been repudiated since at least 2012, his infringement claim is time-barred."  *Id.* at 8.

**II.  PLAINTIFF WAS ON NOTICE THAT HIS CLAIMS WERE OBJECTIVELY UNREASONABLE**

The Order confirms that Plaintiff's lawsuit was an opportunistic and frivolous attempt to capitalize on Mr. Seinfeld's success.  Instead of bringing his purported copyright claims within

three years after his ownership claim had been repudiated by Defendants on multiple occasions,
Plaintiff remained silent until 2017.  As this Court recognized, it was the announcement in 2017
that "Netflix inked a lucrative new deal for the show to join their platform," that prompted
Plaintiff to contact Mr. Seinfeld via email on December 27, 2017.  Order at 3 (citing SAC ¶¶ 96–
97).  In this email, Plaintiff claimed to be the creator of the Show, demanding a share of the
Show's profits, and threatening to sue if Mr. Seinfeld did not agree to "confidential mediation."
Mr. Seinfeld's counsel responded in an email to Plaintiff on January 10, 2018, explaining that
Plaintiff's ownership claims were "without merit" and reminding him that he "releas[ed] all
claims of future compensation."  Ex. A; *see* Order at 3 (citing SAC ¶ 98).  Mr. Seinfeld's counsel
also warned Plaintiff that Mr. Seinfeld would "seek appropriate damages and remedies" if
Plaintiff "pursue[d] this unwarranted claim."  In two subsequent letters, Plaintiff again threatened
to sue Mr. Seinfeld unless he agreed to a monetary settlement.  After Mr. Seinfeld chose not to
respond, Plaintiff filed a *pro se* complaint on February 9, 2018.

On March 1, 2018, given Plaintiff's then-*pro se* status, Mr. Seinfeld's counsel informed
Plaintiff via email and letter of the consequences of asserting "objectively unreasonable" claims
and explained that "when a plaintiff brings a frivolous and objectively meritless copyright claim,
the court has the power to award attorney's fees and costs to the prevailing party under 17 U.S.C.
§ 505 of the Copyright Act."  Ex. B.  Mr. Seinfeld's counsel further explained to Plaintiff that
"[b]ecause [he] did not file suit until [February 2018], more than three years after the publication
of the first [episode of the show] . . . any ownership claim relating to [Comedians in Cars Getting
Coffee] is untimely."  *Id.* at 2 (quoting *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011)).  In
light of the binding Second Circuit authority compelling dismissal of his case, Plaintiff was then
explicitly warned that if he "refus[ed] to dismiss [his] lawsuit with prejudice and, instead,

require[d] Mr. Seinfeld to spend time and money litigating the case, [Mr. Seinfeld's counsel] will ask the judge to make [Plaintiff] pay our attorney's fees and costs after we prevail, and those fees likely would rise into the six figures." *Id.* at 1.

After Plaintiff failed to voluntarily dismiss his lawsuit, Mr. Seinfeld filed a motion to dismiss, which again made clear that binding Second Circuit authority, such as *Kwan* and *Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016), mandated dismissal of Plaintiff's claims. *See* Dkt. No. 22. In response, Plaintiff hired an attorney to file an FAC on May 25, 2018, corrected on June 22, 2018. Dkt. No. 46. The FAC largely repackaged the same baseless time-barred claims in the original complaint. Plaintiff's lawyer conspicuously withdrew as counsel the evening before Defendants moved to dismiss the FAC on June 29, 2018. Defendants' motion to dismiss the FAC once again made clear that the same binding Second Circuit authority compelled dismissal of Plaintiff's claims. *See* Dkt. No. 50.

Plaintiff then hired new counsel, who requested leave to file an SAC, claiming that "the First Amended Complaint does not adequately express and assert all of [Plaintiff's] valid and important claims." Dkt. No. 65. When Plaintiff's new counsel emailed Mr. Seinfeld's counsel on August 12, 2018, seeking consent to file an SAC, Mr. Seinfeld's counsel responded that, "[w]e have made it clear to your client in correspondence and in two motions to dismiss that controlling precedent mandates dismissal of his copyright claims as time-barred." Ex. C at 4 (emphasis in original). After again citing *Kwan* and *Simmons* to explain why Plaintiff's claims were time-barred, Mr. Seinfeld's counsel issued a final warning: "We cannot stop you from filing a motion to amend. But we can ask the Court to hold you and your client responsible for our fees and costs if you seek leave to amend with a time-barred, futile and frivolous joint authorship claim." Ex. C at 1–2.

Plaintiff's counsel ignored this warning and received leave from this Court to file the

SAC.  The SAC, filed on September 2, 2018, recycled the original allegations in the *pro se*

complaint and FAC and included two additional time-barred copyright claims.  Dkt. No. 70.  On

September 17, 2018, Defendants filed a third motion to dismiss, which again made clear that the

same binding Second Circuit authority—cited in the two prior motions to dismiss and in the

correspondence with Plaintiff's counsel—compelled dismissal of Plaintiff's claims.  Dkt. No. 74.

On September 30, 2019, this Court granted Defendants' motion to dismiss the SAC,

ruling that Plaintiff's copyright claims were principally time-barred under *Kwan* and *Simmons*,

the same Second Circuit precedent that Defendants cited in all three motions to dismiss and in

repeated correspondence with Plaintiff's counsel.  Order at 5–7.  This Court found that Plaintiff's

"attempts to distinguish Second Circuit precedent" were "unavailing."  *Id.* at 5.  On October 1,

2019, the Clerk of Court entered Judgment for Defendants on the docket.  Dkt. No. 108.  As

prevailing parties in this copyright action, the Seinfeld Defendants now move the Court for an

award of attorneys' fees and costs.  As Mr. Seinfeld's counsel warned Plaintiff at the beginning

of this case, forcing the Seinfeld Defendants to defend against these meritless claims caused

them to incur fees well into the six figures.  *See* Ex. B.

## **ARGUMENT**

### I.   **DEFENDANTS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES AND COSTS AS THE PREVAILING PARTIES IN THIS ACTION**

The Copyright Act authorizes "the court in its discretion [to] . . . . award a reasonable

attorney's fee to the prevailing party."  17 U.S.C. § 505.  "[D]efendants are prevailing parties in

this action because their motion to dismiss the complaint was granted."  *Sid Bernstein Presents,*

*LLC v. Apple Corps Ltd.*, 2018 WL 3300688, at *6 (S.D.N.Y. Jan. 25, 2018), *report and*

*recommendation adopted*, 2018 WL 1587125 (S.D.N.Y. Mar. 29, 2018); *see also Mahan*, 2015

WL 4388885, at *2 (finding defendants were prevailing parties in copyright infringement action and awarding fees and costs after granting motion to dismiss on statute of limitations grounds).

### A.    Plaintiff Maintained Objectively Unreasonable and Frivolous Legal and Factual Positions

In determining whether to award fees under Section 505 of the Copyright Act, courts may consider "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence' as relevant factors." *TufAmerica, Inc. v. Diamond*, 2016 WL 1029553, at *1 (S.D.N.Y. Mar. 9, 2016) (Nathan, J.) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)).  A court must give "substantial weight to the reasonableness of [the losing party's] litigating position, [while] also taking into account all other relevant factors." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016).  "Claims are objectively unreasonable if they 'have no legal or factual support.'" *TufAmerica Inc.*, 2016 WL 1029553, at *2 (citation omitted).  The Seinfeld Defendants "are entitled to attorneys' fees because, for the reasons set forth in the [Order], Plaintiff's claims under the Copyright Act were plainly time barred and therefore objectively unreasonable.  Claims brought after the statute of limitations has run may be considered objectively unreasonable." *Mahan*, 2015 WL 4388885, at *2.

This is not a case where the plaintiff filed and maintained copyright claims in good faith. Nor is it a case where the plaintiff was unaware of the consequences of his actions.  Plaintiff filed this action in the apparent hope that the ensuing media coverage would force Mr. Seinfeld to offer him a settlement.  But Mr. Seinfeld refused to acquiesce and defended himself.  At every stage, Mr. Seinfeld gave Plaintiff the choice to abandon his frivolous lawsuit, repeatedly warning him that his copyright claims were time-barred.  But Plaintiff ignored the clear warnings and

continued to press his objectively unreasonable claims.  This Court determined that "ownership form[ed] the backbone of the 'infringement' claim" here, rejecting Plaintiff's "unavailing attempts to distinguish" this case from binding Second Circuit precedent.  Order at 5–7.  As Defendants consistently argued in all three motions to dismiss, this was not a close call, much less a credible legal argument.  The Second Circuit's decisions in *Kwan* and *Simmons* control and make clear that Plaintiff's legal arguments were objectively unreasonable.  This Court agreed, holding that the "set of facts [in *Kwan*] largely mirror[] the present case."  Order at 6.  This Court also rejected Plaintiff's frivolous attempt to "somehow" distinguish his lawsuit as concerning "authorship" rather than "ownership," ruling that "authorship is merely one path to ownership of a copyright, and *Kwan* itself dealt with an ownership dispute."  *Id.* at 5–6.

Plaintiff's other attempt to circumvent the statute of limitations was also objectively unreasonable.  Like other unsuccessful copyright plaintiffs before him, Plaintiff argued that the "separate-accrual rule," in which the statute of limitations runs separately from each violation, applied to an ownership dispute.  Dkt. No. 85 at 24–25.  This Court correctly rejected Plaintiff's argument, reaffirming Second Circuit precedent holding that an "ownership claim 'accrues only once, when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'"  Order at 6 (quoting *Kwan*, 634 F.3d at 228–29 ).  In fact, courts in this District have held the same "separate-accrual" argument advanced by Plaintiff here, based on a misreading of *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), to be objectively unreasonable and the basis for awarding fees under Section 505.  *See Sid Bernstein*, 2018 WL 3300688, at *6 (finding plaintiff's reliance on *Petrella* sufficiently objectively unreasonable to award fees under Section 505).

Because this case concerned an ownership dispute, this Court agreed with Defendants'

argument that Plaintiff pled himself out of Court, in that "the SAC describes assertions made

over three years before this lawsuit was filed that were sufficiently express as to put a reasonably

diligent plaintiff on inquiry."  Order at 6.  Hardly a close call, this Court found the litany of

express repudiations alleged in the SAC to be fully in line with those that the Second Circuit has

previously found sufficient to trigger the accrual of an ownership claim.  *See id.* at 6–7 (citing

*Wilson v. Dynatone Publishing Co.*, 892 F.3d 112, 119 (2d Cir. 2018); *Mahan v. Roc Nation,*

*LLC*, 634 F. App'x 329, 331 (2d Cir. 2016); *Simmons*, 810 F.3d at 116; *Kwan*, 634 F.3d at 227,

229).  A claim is "'clearly without merit' and 'objectively unreasonable'" when it disregards a

"well-settled principle of law."  *TufAmerica*, 2016 WL 1029553, at *2 (citation omitted).  Here,

Plaintiff made objectively unreasonable attempts to distinguish Second Circuit precedent, Order

at 5, even when that precedent was directly on point.  *See id.* at 6 (finding *Kwan*'s "set of facts

largely mirrors the present case").

This case, therefore, easily meets the "frivolousness" factor, as many courts analyze

frivolousness and objective reasonableness together.  *See TufAmerica Inc. v. Diamond*, 2018 WL

401510, at *3 (S.D.N.Y. Jan. 12, 2018) (Nathan, J.) (collecting cases).  "A complaint is frivolous

'where it lacks an arguable basis either in law or in fact.'"  *Id.* (citation omitted).  As

demonstrated above, this Court found that Plaintiff's copyright claims were plainly time-barred

under unambiguous Second Circuit precedent and the facts pled in the SAC were self-defeating.

This is more than sufficient to support a finding of frivolousness.  *See, e.g.*, *Mahan*, 634 F.

App'x 329, 331 (affirming district court's holding that asserting time-barred copyright claims

"was objectively unreasonable and that awarding fees would deter *similar frivolous suits* from

being filed by others" (emphasis added)); *Byrne v. BuyThisFast Network, Inc.*, 2005 WL

1155175, at *3 (S.D.N.Y. May 17, 2005) ("To bring a clearly time-barred complaint is a violation of Rule 11.").

The same is true for the "motivation" factor, because there are more than "indicia of bad faith here." *See Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009). Plaintiff knew that the mere filing of a complaint accusing Mr. Seinfeld, "a well-known comedian and actor," Order at 1, of theft—no matter how objectively unreasonable—would attract significant media attention. Unsurprisingly, Plaintiff's allegations led to headlines like, *Jerry Seinfeld Sued for Allegedly Stealing 'Comedians in Cars Getting Coffee'*.[3] Each development in the case, such as when Plaintiff first hired counsel, generated additional media reports parroting Plaintiff's baseless allegations.[4]

Targeting a high-profile individual with inflammatory allegations of theft is a well-worn tactic. This case is similar in posture to *Porto*, which had "the hallmarks of an abusive lawsuit." 659 F. Supp. 2d at 617. In *Porto*, the plaintiff unsuccessfully sued "an award-winning play and author, and a well-known director (who is also an Academy Award-winning actor) . . . several years after the production of the play" for copyright infringement. *Id.* Similarly, here, Plaintiff waited six years, until "Netflix inked a lucrative new deal for the show to join their platform" to file his opportunistic suit. Order at 3 (citing SAC ¶¶ 96–97). Also, just as Mr. Seinfeld's

---

[3] *Jerry Seinfeld Sued for Allegedly Stealing 'Comedians in Cars Getting Coffee'*, TMZ (Feb. 12, 2018), https://www.tmz.com/2018/02/12/jerry-seinfeld-sued-for-stealing-comedians-in-cars-getting-coffee/.

[4] *See, e.g.*, Eriq Gardner, *Jerry Seinfeld Faces Bulked-Up Lawsuit for Allegedly Stealing Hit Show*, HOLLYWOOD REP. (May 29, 2018), https://www.hollywoodreporter.com/thr-esq/jerry-seinfeld-faces-bulked-up-lawsuit-allegedly-stealing-hit-show-1115493; Michelle Kaminsky, *BigLaw Attorney Revs Up 'Comedians in Cars Getting Coffee' Lawsuit Against Seinfeld*, FORBES (May 30, 2018), https://www.forbes.com/sites/michellefabio/2018/05/30/biglaw-attorney-revs-up-comedians-in-cars-getting-coffee-lawsuit-against-seinfeld/#4e9edd47416c.

counsel warned Plaintiff that his claims were meritless, in *Porto*, "plaintiff's first counsel was warned, before any action had been filed, that there was no colorable copyright infringement claim . . . [and] [t]he plaintiff nevertheless persisted in obtaining new counsel and filing his complaint." *Porto*, 659 F. Supp. 2d at 617. The *Porto* court found that "an award of reasonable costs and attorneys' fees [was] appropriate," *id.*, and an award of attorneys' fees and costs is also appropriate here.

### B.  Awarding Attorneys' Fees and Costs Furthers the Copyright Act's Principles of Deterrence and Compensation

The Supreme Court has recognized that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Fogerty v. Fantasy*, *Inc.*, 510 U.S. 517, 527 (1994). In particular, when a plaintiff pursues a meritless claim, "failing to award attorneys' fees to defendants . . . would invite others to bring similarly unreasonable actions without fear of any consequences." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006).

Here, there is a strong basis for both deterrence and compensation. For deterrence, this lawsuit was an opportunistic and frivolous attempt to capitalize on Mr. Seinfeld's fame and success, and awarding attorneys' fees is "necessary to deter Plaintiff from similarly frivolous future litigation." *TufAmerica Inc.*, 2018 WL 401510, at *6. Plaintiff followed the perilous path of "pursu[ing] expensive and time-consuming litigation" with the hope of "extract[ing] a significant payment from perceived 'deep pocketed' defendants." *Baker*, 431 F. Supp. 2d at 355, 358. "[A]n award of costs and fees is crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells

such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose." *Id.* at 359.  "An award of fees and costs is necessary to convince [Plaintiff] and other like-minded plaintiffs that federal courts do not exist so that they can roll the dice on unreasonable allegations or so that they can seek fame and fortune from 'deep-pocketed' defendants." *Id.* at 360.

The same is true for compensation, because this case was not a "close call[]," and it did not "present novel legal issues or theories." *TufAmerica Inc.*, 2016 WL 1029553, at *2.  Plaintiff pursued this litigation with eyes wide open, in the face of multiple warnings from Mr. Seinfeld's counsel that his copyright claims were time-barred.  Plaintiff forced the Seinfeld Defendants to expend significant resources to defend the action.  Plaintiff needlessly prolonged and complicated this case by filing three meritless complaints, which, in turn, prompted Defendants to file three successive motions to dismiss.  As such, "an award of attorneys' fees and costs in this case will advance the purposes of the Copyright Act by compensating the defendants for expending the time and incurring the expense of defending this action." *Sid Bernstein Presents, LLC*, 2018 WL 1587125, at *4.  "Furthermore, such an award will deter others 'from pursuing meritless claims, such as those asserted in this action.'" *Id.* (citation omitted).

## II. THE FEES AND COSTS SOUGHT BY THE SEINFELD DEFENDANTS ARE REASONABLE

Courts assess the reasonableness of attorneys' fees using the lodestar method.  "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *TufAmerica Inc.*, 2016 WL 1029553, at *3 (alteration in original) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  "Once the lodestar amount is

established, there is a strong presumption that it is reasonable." *Baker*, 431 F. Supp. 2d at 360 (internal quotation marks and citations omitted).

In sum, the Seinfeld Defendants are seeking an award of $616,864.30, representing $562,974.35 of attorneys' fees and $53,889.95 of costs that the Seinfeld Defendants reasonably expended in this action. The work performed by Defendants' counsel included investigating Plaintiff's claims, briefing three motions to dismiss, addressing multiple disputes with Plaintiff and his counsel regarding procedural issues, and preparing and drafting initial disclosures.[5] These fees and costs have been paid in full. The accompanying Kusnetz Declaration and the exhibits thereto demonstrate that the fees charged by Defendants' counsel, Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), are reasonable. *See* Kusnetz Declaration ¶¶ 5–29, Exs. D–H.

### A.      The Rates of the Seinfeld Defendants' Counsel Are Reasonable

"An attorney's reasonable hourly rate is what 'a reasonable, paying client would be willing to pay.'" *TufAmerica Inc.*, 2016 WL 1029553, at *5 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008)). "[T]his rate must be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Miroglio S.P.A.*, 629 F. Supp. 2d at 314). Additional factors courts consider "includ[e], but [are] not limited to, the complexity and difficulty of the case, . . . the resources required to prosecute the case effectively[,] . . . the timing demands of the case, whether an attorney might have an interest

---

[5]  The Seinfeld Defendants are also entitled to the attorneys' fees and costs associated with briefing this motion, and intend to submit a supplemental declaration identifying and substantiating such costs with their reply. *See TufAmerica Inc.*, 2016 WL 1029553, at *7 (granting attorneys' fees for the hours defendants spent preparing their motion for fees); *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) (granting attorneys' fees "for the hours spent preparing the application for costs and fees").

(independent of that of his client) in achieving the ends of the litigation[,] . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation." *Arbor Hill*, 522 F.3d at 184.

The qualifications for the primary members of the litigation team in this case are detailed in the Kusnetz Declaration and accompanying exhibits.  Kusnetz Declaration ¶¶ 12–27, Ex. G. These rates are in line with, and in many cases lower than, the rates charged by comparable law firms in this District with similar expertise.  The rates charged by Gibson Dunn are commensurate with the hourly rates for partners and associates at comparable firms in the Southern District of New York and consistent with reasonable rates approved in other cases in this District.  *See, e.g.*, *Vista Outdoor Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (approving rates up to $1,260 for Gibson Dunn partners); *APEX Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, 2018 WL 5784544, at *5 (S.D.N.Y. Nov. 5, 2018) (approving hourly rates of up to $1,058.25); *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (approving hourly rates of up to $1,055 and noting that "partner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation").  Moreover, the rates charged by Gibson Dunn reflect actual market rates and are the same or similar to those paid by Gibson Dunn's other clients for comparable work.  *See Ceglia v. Zuckerberg*, 2012 WL 503810, at *16 (W.D.N.Y. Feb. 14, 2012) (finding "Gibson Dunn's hourly billing rates are in line with the prevailing market rates for attorneys of similar credentials at large New York City law firms"); *see also* Ex. H (Legal Billing Report By Billing Rate, published by Thomson Reuters in December 2018).  Defendants are primarily represented by the following two attorneys in this matter:

- Orin Snyder is the supervising partner for this case and has had ultimate decision-making responsibility since its inception.  Mr. Snyder has been a partner at Gibson Dunn since 2005 and is one of the country's leading trial lawyers and litigators.  Mr. Snyder is a senior partner and the Co-Chair of Gibson Dunn's Media, Entertainment and Technology Practice Group.  Mr. Snyder has litigated many of the leading copyright cases in the Second Circuit.  *See, e.g.*, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46 (2d Cir. 2003); *Thomson v. Larson*, 147 F.3d 195 (2d Cir. 1998); *LaPine v. Seinfeld*, 2009 WL 2902584 (S.D.N.Y. Sept. 10, 2009), *aff'd*, 375 F. App'x 81 (2d Cir. 2010); *Willis v. Home Box Office*, 2001 WL 1352916 (S.D.N.Y. Nov. 2, 2001), *aff'd*, 57 F. App'x 902 (2d Cir. 2003); *Tisi v. Patrick*, 97 F. Supp. 2d 539 (S.D.N.Y. 2000); *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y. 2000).  Previously, Mr. Snyder served as an Assistant United States Attorney in this District and was a named partner at a prominent New York litigation boutique.  Orin Snyder has been recognized as one of the five best business trial lawyers in the country by Chambers USA; ranked by Chambers USA in Band 1 in New York for both General Commercial Litigation and Media & Entertainment Litigation in 2019; recognized as one of the "Top 100 Trial Lawyers in America" in Benchmark Litigation's Guide to America's Leading Litigation Firms and Attorneys; honored as a "Power Lawyer" by *The Hollywood Reporter*; and profiled as AmLaw Litigation Daily's "Litigator of the Week."  Mr. Snyder earned his law degree, *cum laude*, at the University of Pennsylvania Law School in 1986.  His rates have ranged from $1,395 in 2018 to $1,445 in 2019.  The total fees sought for Mr. Snyder's work are $48,317.  *See* Kusnetz Declaration ¶ 13, Exs. D–E.

- David Kusnetz is a fifth-year litigation associate at Gibson Dunn and has had day-to-day responsibility for running this case since its inception.  Mr. Kusnetz's practice focuses on complex commercial, copyright, and securities litigation.  Mr. Kusnetz previously served as a law clerk for the Honorable Richard M. Berman of the United States District Court for the Southern District of New York.  Mr. Kusnetz graduated from Columbia Law School in 2014, where he was a Harlan Fiske Stone Scholar and a Notes Editor on the *Columbia Journal of Law and Social Problems*.  His rates have ranged from $815 in 2018 to $895 in 2019.  The total fees sought for Mr. Kusnetz's work are $412,112.85.  *See* Kusnetz Declaration ¶ 14, Exs. D–E.

## B.    The Number of Hours Counsel Expended Is Reasonable

Gibson Dunn's contemporaneous monthly time records, describing the work performed on this matter by Gibson Dunn attorneys and litigation support staff, are attached as Exhibit D to the Kusnetz Declaration.  These records identify 728.3 hours of work by Gibson Dunn attorneys and litigation support staff in connection with this litigation and, for each entry, specify "the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983). In these records, each timekeeper recorded his or her time contemporaneously in tenths of hours and provided a detailed description of the services rendered.

Gibson Dunn managed this case in an extremely efficient manner.  With a team of just two attorneys—one handling day-to-day responsibilities and one supervising the matter—all of the work was necessary and not redundant.[6]  Notably, Mr. Snyder billed only 34.6 hours on this

---

[6] Gibson Dunn partner Laura O'Boyle occasionally assisted with reviewing and revising the motion to dismiss briefing.  Ms. O'Boyle has been an attorney at Gibson Dunn since 2006, and became a partner in 2017.  She has extensive experience litigating a wide range of

matter, representing 5% of the total hours billed.  As the senior associate on this matter, Mr.

Kusnetz billed 502.6 hours, representing 69% of the total hours billed.  *See* Ex. E (billing

summary).  Mr. Kusnetz delegated legal research and other appropriate tasks to more junior

associates with lower billing rates.[7]  Messrs. Snyder and Kusnetz were also assisted by paralegals

and other litigation support staff.[8]  Gibson Dunn focused on using its resources efficiently and

made every effort to minimize the costs incurred.[9]  The number of hours expended by counsel

for Defendants is reasonable.  All of the work reflected in the time records was necessary and

justified to prevail in this action.

### C.   The Costs Sought by the Seinfeld Defendants Are Reasonable

"The Second Circuit has consistently 'held that attorney's fees awards include those

reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"

*TufAmerica Inc.*, 2016 WL 1029553, at *7 (quoting *U.S. Football League v. Nat'l Football

League*, 887 F.2d 408, 416 (2d Cir. 1989)).  The Seinfeld Defendants seek to recover $53,889.95

in costs, as set forth in the costs summary attached as Exhibit F to the Kusnetz Declaration.  The

---

complex commercial matters in federal and state court, including fraud and breach of contract matters, securities class actions, trade secret claims, and shareholder disputes.  She also regularly represents media and technology clients in copyright, trademark, privacy, and defamation matters.  She graduated with distinction from Stanford Law School in 2006.  Her rate in 2018 was $1,065.  We are not seeking reimbursement of the fees from Ms. O'Boyle's work.

[7]  This included the following first-year associates to complete discrete tasks, such as legal research, in order to further reduce costs: Jeremy Bunting, Trevor Gopnik (departed firm), Kimberly Kirschenbaum (departed firm), Amanda LeSavage, and Zachary Piaker.  *See* Kusnetz Declaration ¶ 16, Exs. D–E.

[8]  This included paralegals Angel Arias and Nilhan Gezgin; the Managing Attorney of the Firm's New York office, Laura Coppola; and Litigation Support Specialists Carla Edwards, Leonid Roymisher, and Spencer Scott.  *See* Kusnetz Declaration ¶ 20, Exs. D–E.

[9]  Messrs. Snyder and Kusnetz also utilized the assistance of several summer associates.  The Seinfeld Defendants are not requesting reimbursement for the work performed by summer associates.

costs summarized in Exhibit F are also individually itemized on Gibson Dunn's invoices. *See* Ex. D. The costs include electronic legal research, electronic discovery database hosting fees, in house duplication charges, and messenger and courier delivery services. These costs are reasonable because they are not associated with ordinary office overhead but instead relate to identifiable "out-of-pocket expenses incurred by attorneys *and ordinarily charged to their clients.*" *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752, at *18 (S.D.N.Y. Oct. 17, 2008) (emphasis in original) (citation omitted).

## **CONCLUSION**

For the foregoing reasons, the Seinfeld Defendants respectfully request that the Court grant their motion for attorneys' fees and costs, together with such further relief as appropriate.

Dated: New York, New York
      October 15, 2019

Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP

By:    /s/ Orin Snyder

Orin Snyder
David M. Kusnetz
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
osnyder@gibsondunn.com
dkusnetz@gibsondunn.com

*Attorneys for Defendants Jerry Seinfeld, Columbus 81 Productions, Inc., Embassy Row, LLC, Comedians in Cars, LLC, Sony Pictures Television Inc., and Netflix, Inc.*