UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTIAN CHARLES,

          Plaintiff,

    v.

JERRY SEINFELD, COLUMBUS 81
PRODUCTIONS, INC., EMBASSY ROW, LLC,
COMEDIANS IN CARS, LLC, SONY PICTURES
TELEVISION INC., and NETFLIX, INC.,

          Defendants.

No. 18 Civ. 01196 (AJN) (KHP)

**MEMORANDUM OF LAW OF DEFENDANTS JERRY SEINFELD, COLUMBUS 81
PRODUCTIONS, INC., AND COMEDIANS IN CARS, LLC IN SUPPORT OF THEIR
MOTION FOR ATTORNEYS' FEES AND COSTS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Dated: July 1, 2020

*Attorneys for Defendants Jerry Seinfeld,
Columbus 81 Productions, Inc., Embassy
Row, LLC, Comedians in Cars, LLC, Sony
Pictures Television Inc., and Netflix, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 6

    I.    THIS COURT AND THE SECOND CIRCUIT FOUND THAT
          PLAINTIFF WAS ON NOTICE THAT HIS OWNERSHIP
          CLAIM HAD BEEN REPUDIATED SINCE AT LEAST 2012 ......................... 6

    II.   PLAINTIFF WAS ON NOTICE THAT HIS CLAIMS WERE
          OBJECTIVELY UNREASONABLE ............................................................... 7

ARGUMENT .............................................................................................................. 10

    I.    DEFENDANTS ARE ENTITLED TO RECOVER THEIR
          ATTORNEYS' FEES AND COSTS AS THE PREVAILING
          PARTIES IN THIS ACTION ........................................................................ 10

          A.    Plaintiff Maintained Objectively Unreasonable and Frivolous
                Legal and Factual Positions ...................................................... 11

          B.    Awarding Attorneys' Fees and Costs Furthers the Copyright Act's
                Principles of Deterrence and Compensation .............................. 16

    II.   THE FEES AND COSTS SOUGHT BY THE SEINFELD
          DEFENDANTS ARE REASONABLE ......................................................... 18

          A.    The Rates of the Seinfeld Defendants' Counsel Are Reasonable ............. 19

          B.    The Number of Hours Counsel Expended Is Reasonable ......................... 23

          C.    The Costs Sought by the Seinfeld Defendants Are Reasonable ............... 25

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*APEX Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*,
   2018 WL 5784544 (S.D.N.Y. Nov. 5, 2018) ...........................................................................20

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
   522 F.3d 182 (2d Cir. 2008)...........................................................................................19, 20

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006).........................................................................16, 17, 18

*Byrne v. BuyThisFast Network, Inc.*,
   2005 WL 1155175 (S.D.N.Y. May 17, 2005) ........................................................................14

*Ceglia v. Zuckerberg*,
   2012 WL 503810 (W.D.N.Y. Feb. 14, 2012) .........................................................................20

*Charles v. Seinfeld, et al.*,
   No. 18-CV-1196 (AJN) (S.D.N.Y. Sept. 30, 2019)..................................................................2

*Charles v. Seinfeld*,
   No. 19-3335 (2d Cir. May 7, 2020) .........................................................................1, 10, 13

*Dimmie v. Carey*,
   88 F. Supp. 2d 142 (S.D.N.Y. 2000).....................................................................................21

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994).......................................................................................................11, 16

*Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*,
   716 F.3d 302 (2d Cir. 2013).................................................................................................5, 6

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
   2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) ........................................................................25

*Jorgensen v. Epic/Sony Records*,
   351 F.3d 46 (2d Cir. 2003)....................................................................................................21

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013)..............................................................................................................22

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S. Ct. 1979 (2016)..........................................................................................................11

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011)...............................................................4, 5, 6, 8, 13

*LaPine v. Seinfeld*,
    2009 WL 2902584 (S.D.N.Y. Sept. 10, 2009), *aff'd*, 375 F. App'x 81 (2d Cir.
    2010) ............................................................................................................21

*Mahan v. Roc Nation, LLC*,
    2015 WL 4388885 (S.D.N.Y. July 17, 2015), *aff'd*, 634 F. App'x 329 (2d Cir.
    2016) ....................................................................................................5, 10, 11

*Mahan v. Roc Nation, LLC*,
    2016 WL 4718018 (S.D.N.Y. Sept. 9, 2016)........................................................17

*Mahan v. Roc Nation, LLC*,
    634 F. App'x 329 (2d Cir. 2016) ..................................................................14, 17

*Millea v. Metro-N. R.R. Co.*,
    658 F.3d 154 (2d Cir. 2011)...........................................................................18

*Miroglio S.P.A. v. Conway Stores, Inc.*,
    629 F. Supp. 2d 307 (S.D.N.Y. 2009).................................................................19

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983)...........................................................................23

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014).....................................................................................13

*Porto v. Guirgis*,
    659 F. Supp. 2d 597 (S.D.N.Y. 2009)......................................................14, 15, 16

*Sid Bernstein Presents, LLC v. Apple Corps Ltd.*,
    2018 WL 3300688 (S.D.N.Y. Jan. 25, 2018), *report and recommendation*
    *adopted*, 2018 WL 1587125 (S.D.N.Y. Mar. 29, 2018) ............................10, 13, 18

*Simmons v. Stanberry*,
    810 F.3d 114 (2d Cir. 2016)............................................................................8

*Thomson v. Larson*,
    147 F.3d 195 (2d Cir. 1998)...........................................................................21

*Tisi v. Patrick*,
    97 F. Supp. 2d 539 (S.D.N.Y. 2000)..................................................................21

*TufAmerica Inc. v. Diamond*,
    2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) ...................................................14, 16

TABLE OF AUTHORITIES *(continued)*

Page(s)

*TufAmerica, Inc. v. Diamond*,
  2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016) ...........................................11, 14, 17, 18, 19, 25

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
  2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) ........................................................................20

*U.S. Football League v. Nat'l Football League*,
  887 F.2d 408 (2d Cir. 1989) ................................................................................................25

*Vista Outdoor Inc. v. Reeves Family Tr.*,
  2018 WL 3104631 (S.D.N.Y. May 24, 2018) ......................................................................20

*Willis v. Home Box Office*,
  2001 WL 1352916 (S.D.N.Y. Nov. 2, 2001), *aff'd*, 57 F. App'x 902 (2d Cir.
  2003) ....................................................................................................................................21

**Statutes**

17 U.S.C. § 505 ..........................................................................................................................10

**Other Authorities**

Eriq Gardner, *Jerry Seinfeld Faces Bulked-Up Lawsuit for Allegedly Stealing Hit
  Show*, HOLLYWOOD REP. (May 29, 2018),
  https://www.hollywoodreporter.com/thr-esq/jerry-seinfeld-faces-bulked-up-
  lawsuit-allegedly-stealing-hit-show-1115493 ......................................................................15

*Jerry Seinfeld Sued for Allegedly Stealing 'Comedians in Cars Getting Coffee'*,
  TMZ (Feb. 12, 2018), https://www.tmz.com/2018/02/12/jerry-seinfeld-sued-
  for-stealing-comedians-in-cars-getting-coffee/ ....................................................................15

Michelle Kaminsky, *BigLaw Attorney Revs Up 'Comedians in Cars Getting
  Coffee' Lawsuit Against Seinfeld*, FORBES (May 30, 2018),
  https://www.forbes.com/sites/michellefabio/2018/05/30/biglaw-attorney-revs-
  up-comedians-in-cars-getting-coffee-lawsuit-against-seinfeld/#4e9edd47416c ...................15

Oral Argument Recording, *available at*
  https://www.ca2.uscourts.gov/decisions/isysquery/6249cb72-f1c9-4fb0-b390-
  ecd53f63feb3/138/doc/19-3335.mp3 ......................................................................................4

Defendants Jerry Seinfeld, Columbus 81 Productions, Inc., and Comedians in Cars, LLC, (collectively, the "Seinfeld Defendants")[1] respectfully submit this memorandum of law and the accompanying declaration of David M. Kusnetz ("Kusnetz Declaration") in support of their motion for attorneys' fees and costs pursuant to Section 505 of the Copyright Act and Rule 54 of the Federal Rules of Civil Procedure, together with such further relief as appropriate.

## PRELIMINARY STATEMENT

This is a textbook case for an award of attorneys' fees and costs under the Copyright Act. Plaintiff filed, prosecuted, and appealed this abusive case knowing that his claims were plainly time-barred in the hope that the negative media attention generated by his lawsuit would pressure Jerry Seinfeld to settle.  This meritless case was a press strategy and pressure tactic masquerading as a lawsuit.  But Mr. Seinfeld refused to acquiesce to these tactics and defended himself on the merits at great expense.  Now that the Court has dismissed the time-barred complaint, and the Second Circuit has affirmed that dismissal, *see Charles v. Seinfeld*, No. 19-3335 (2d Cir. May 7, 2020) (summary order) (hereinafter "Summary Order"), it is time to hold Plaintiff accountable for the damage caused by his misguided lawsuit.

The facts are straightforward.  In 2012, Jerry Seinfeld's talk show *Comedians in Cars Getting Coffee* (the "Show") premiered on Crackle, Sony Pictures Television's online streaming service, to critical acclaim.  For the next five years, the Show was consistently renewed for additional seasons and continued to garner rave reviews from critics across the globe.  Since its premiere, viewers have streamed episodes of the Show over 100 million times and it garnered Emmy Award nominations in 2013, 2014, and 2016.  In 2017, "Netflix inked a lucrative new

---

[1]  Pursuant to an agreement between the Seinfeld Defendants and Sony Pictures Television Inc., Embassy Row, LLC, and Netflix, Inc. (collectively, the "Defendants"), the Seinfeld Defendants were responsible for paying all of the Defendants' attorneys' fees and costs in this action.

deal" to stream Mr. Seinfeld's award-winning and popular talk show.  *Charles v. Seinfeld, et al.*, No. 18-CV-1196 (AJN), slip. op. at 3 (S.D.N.Y. Sept. 30, 2019) (Dkt. No. 106) (citing Plaintiff's Second Amended Complaint ("SAC") at ¶¶ 96–97, Dkt. No. 70).  In response, and later that year, on December 27, 2017—five-and-a-half years after the Show first premiered on July 19, 2012—Plaintiff came out of the woodwork and sent an email to Mr. Seinfeld, claiming for the first time to be the true creator of the Show and threatening to sue if he did not receive a share of the profits.  Over the next eight months, Mr. Seinfeld's counsel warned Plaintiff in writing on at least three separate occasions—before Plaintiff initiated this lawsuit, after he filed his *pro se* complaint*,* and after he retained counsel—that his ownership claims were meritless and time-barred under the Copyright Act's statute of limitations.  *See* Exs.[2] A–C.  In these communications, Mr. Seinfeld expressly placed Plaintiff on notice that if he persisted in prosecuting his objectively unreasonable claims, Mr. Seinfeld would seek all available remedies and damages, including attorneys' fees and costs.  *Id.*

Ignoring these warnings, Plaintiff barreled ahead, hoping that the media coverage generated by his allegations would extract a payout from Mr. Seinfeld.  Mr. Seinfeld and his co-Defendants did not budge, choosing to weather the media storm in order to publicly vindicate their rights to the Show.  After Defendants moved to dismiss Plaintiff's *pro se* complaint, Plaintiff doubled down on his objectively unreasonable claims and found a lawyer willing to file a First Amended Complaint ("FAC").  *See* Dkt. No. 46.  When Mr. Seinfeld again did not yield, the lawyer moved to withdraw as counsel the evening before Defendants moved to dismiss the FAC.  Tripling down, Plaintiff hired new counsel, who sought (and received) leave to file a

---

[2]  All references to Exhibits ("Ex.") herein shall be to Exhibits to the Kusnetz Declaration, unless otherwise stated.

Second Amended Complaint because he "concluded that the First Amended Complaint does not adequately express and assert all of [Plaintiff's] valid and important claims." Dkt. No. 65. Defendants then moved to dismiss the SAC.  By forcing Defendants to prepare <u>three</u> motions to dismiss, Plaintiff exponentially increased Mr. Seinfeld's fees and costs to litigate this case.

Each iteration of Plaintiff's complaint repackaged the same time-barred copyright claims. And each motion to dismiss painstakingly demonstrated that those claims were hopelessly time-barred under the Second Circuit's unambiguous standard for determining when a plaintiff's claim of copyright ownership accrues.  *See* Dkt. Nos. 22; 50; 74.  On September 30, 2019, this Court granted Defendants' motion to dismiss the SAC, ruling that Plaintiff's copyright claims were time-barred under the same Second Circuit precedent that Defendants cited in all three motions to dismiss and related warning letters and emails to Plaintiff.  Dkt. No. 106 at 5, 8; Exs. B–C.  Accordingly, the Court saw through Plaintiff's "unavailing attempts to distinguish Second Circuit precedent" and held that because Plaintiff "was on notice that his ownership claim had been repudiated since at least 2012, his infringement claim is time-barred." *Id.*

On October 15, 2019, the Seinfeld Defendants moved for attorneys' fees and costs pursuant to Section 505 of the Copyright Act.  *See* Dkt. Nos. 109–11.  The next day, Plaintiff submitted a notice of appeal from this Court's judgment.  *See* Dkt. No. 112.  On November 20, 2019, the Court denied Defendants' fee motion without prejudice, presciently noting that "the expedited briefing schedule set by the Second Circuit would not leave [Plaintiff's] counsel enough time to brief the fees issue . . . [and] that the content of a fees motion may be altered depending on the outcome and reasoning of the Second Circuit's opinion."  Dkt. No. 120 at 1.

Despite this Court's straightforward dismissal of Plaintiff's claims on the very grounds presented in each of Defendants' motions to dismiss, Plaintiff nevertheless recycled the same

arguments on appeal before the Second Circuit.  The appeal needlessly prolonged the litigation and necessitated substantial additional work submitting an appellate brief in opposition and preparing for oral argument.  On April 29, 2020, during oral argument, all three judges on the Second Circuit panel made clear their strong view that the appeal was baseless.  *See* Oral Argument Recording, *available at* https://www.ca2.uscourts.gov/decisions/isysquery/6249cb72-f1c9-4fb0-b390-ecd53f63feb3/138/doc/19-3335.mp3, at 8:47–9:07 (Judge Lynch: "It seems to me a very remarkable proposition that you can allow this to go forward and only at your convenience after the other side, meanwhile, has invested money in trying to develop the product and just come after them when it suits your convenience many years later."); *id*. at 15:17–16:13 (Judge Walker: "[C]ertainly by the time of the Sony streaming, which was . . . in the summer of 2012, [Plaintiff] was aware that Seinfeld was acting inconsistently with your client being the owner.  Don't debate whether or not he was the owner.  That's not the issue. . . . The fact is that the suit wasn't brought until 2018, which is more than three years after 2012."), *id*. at 6:17–6:35 (Judge Pooler: "Didn't they put out this show without giving him credit after the first pilot?  . . . And wouldn't that have alerted him to the fact that they contested ownership?").

On May 7, 2020, one week after hearing oral argument, the Second Circuit summarily affirmed this Court's judgment, "for substantially the same reasons that it set out in its well-reasoned opinion."  Summary Order at 2.  The Second Circuit held that the "[t]he dispositive issue in this case is whether Charles's alleged 'contributions . . . qualify [him] as the author and therefore owner' of the copyrights to the show."  Summary Order at 2 (quoting *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011)).  Citing this Court's decision, the Second Circuit emphasized that "authorship is merely one path to ownership of a copyright" and that Plaintiff's "ownership claim is time-barred."  *Id*.  The Second Circuit then found that this Court correctly "identified

two events described in the Second Amended Complaint that would have put a reasonably diligent plaintiff on notice that his ownership claims were disputed." *Id*. "First, in February 2012, [when] Seinfeld rejected Charles's request for backend compensation and made it clear that Charles's involvement would be limited to a work-for-hire basis," *id*. (citing *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 318 (2d Cir. 2013)), and "[s]econd, [when] the show premiered in July 2012 without crediting Charles, at which point his ownership claim was publicly repudiated," *id*. at 3 (citing *Kwan*, 634 F.3d at 227).

The Second Circuit's ruling was not surprising. Defendants have repeatedly told Plaintiff that his own allegations and controlling Second Circuit case law are fatal under the Copyright Act's statute of limitations—the very same grounds that this Court relied on in granting Defendants' motion to dismiss and which the Second Circuit relied on in affirming that decision. "Plaintiff's claims under the Copyright Act were plainly time barred and therefore objectively unreasonable." *Mahan v. Roc Nation, LLC*, 2015 WL 4388885, at *2 (S.D.N.Y. July 17, 2015), *aff'd*, 634 F. App'x 329 (2d Cir. 2016). Plaintiff wasted the judicial resources of this Court and the Second Circuit and burdened the Seinfeld Defendants with significant legal costs.

On this record, the Court should award attorneys' fees and costs under Section 505 of the Copyright Act because: (1) Plaintiff knew or should have known that his claims were objectively unreasonable when he filed this lawsuit and each time he amended his complaint; (2) Plaintiff failed to heed Mr. Seinfeld's multiple warnings—before and during the litigation—that his claims were objectively unreasonable and that Mr. Seinfeld would move for fees if he did not dismiss this lawsuit; (3) Plaintiff "had multiple opportunities to amend his complaint in the face of Defendants' timeliness arguments," Dkt. No. 106 at 8, which drastically increased the fees and costs that Mr. Seinfeld incurred in defending this action; (4) Plaintiff persisted in raising the

same objectively unreasonable arguments on appeal; and (5) awarding fees and costs will serve

the purposes of the Copyright Act by putting Plaintiff and similarly situated plaintiffs on notice

that there are adverse consequences to bringing unreasonable claims.

## STATEMENT OF FACTS

I.    **THIS COURT AND THE SECOND CIRCUIT FOUND THAT PLAINTIFF WAS
      ON NOTICE THAT HIS OWNERSHIP CLAIM HAD BEEN REPUDIATED
      SINCE AT LEAST 2012**

In 2011, Mr. Seinfeld hired Plaintiff to direct the pilot episode of the Show.  Seeking

more than a director's salary, "[i]n January and February of 2012, [Plaintiff] claims that he

communicated his request 'for compensation and backend involvement' with the show."  Dkt.

No. 106 at 2 (citing SAC ¶ 69).  This Court correctly found that "this is the point at which things

[went] sour."  *Id.*  "First, the SAC alleges that in 2011 Seinfeld twice rejected [Plaintiff's]

request for backend compensation and made it clear that [Plaintiff's] only involvement was to be

on a 'work-for-hire' basis."  *Id.*  This "necessarily contradicted any idea that [Plaintiff] was the

owner of intellectual property in the show."  Dkt. No. 106 at 7.

The Second Circuit agreed, recognizing that "Seinfeld rejected [Plaintiff's] request for

backend compensation and made it clear that [Plaintiff's] involvement would be limited to a

work-for-hire basis," and that this "would have put a reasonably diligent plaintiff on notice that

his ownership claims were disputed."  Summary Order at 2 (citing *Friedrich*, 716 F.3d at 318).

"Second, Seinfeld and other Defendants went on to produce and distribute the show

without giving any credit to [Plaintiff]."  Dkt. No. 106 at 7.  "Even interpreting the SAC most

favorably to [Plaintiff], it clearly alleges he was aware that the show was being produced and

that he was not being credited on it."  Dkt. No. 106 at 7–8.  The Second Circuit agreed,

explaining that "the [S]how premiered in July 2012 without crediting [Plaintiff], at which point

his ownership claim was publicly repudiated."  Summary Order at 3 (citing *Kwan*, 634 F.3d at

227).  The Second Circuit concluded that "[e]ither one of these developments was enough to place [Plaintiff] on notice that his ownership claim was disputed and therefore this action, filed six years later, was brought too late." *Id.*  The Summary Order, issued just one week after oral argument, confirms that this is not a close case and the appeal was meritless.

## II.    PLAINTIFF WAS ON NOTICE THAT HIS CLAIMS WERE OBJECTIVELY UNREASONABLE

The decisions by this Court and the Second Circuit confirm that Plaintiff's lawsuit was an opportunistic and frivolous attempt to capitalize on Mr. Seinfeld's success.  Instead of bringing his purported copyright claims within three years after his ownership claim had been repudiated by Defendants on multiple occasions, Plaintiff remained silent until 2017.  As this Court recognized, it was the announcement in 2017 that "Netflix inked a lucrative new deal for the show to join their platform," that prompted Plaintiff to contact Mr. Seinfeld via email on December 27, 2017.  Dkt. No. 106 at 3 (citing SAC ¶¶ 96–97).  In this email, Plaintiff claimed to be the creator of the Show, demanding a share of the Show's profits and threatening to sue if Mr. Seinfeld did not agree to "confidential mediation."  Mr. Seinfeld's counsel responded in an email to Plaintiff on January 10, 2018, explaining that Plaintiff's ownership claims were "without merit" and reminding him that he "releas[ed] all claims of future compensation."  Ex. A; *see* Dkt. No. 106 at 3 (citing SAC ¶ 98).  Mr. Seinfeld's counsel also warned Plaintiff that Mr. Seinfeld would "seek appropriate damages and remedies" if Plaintiff "pursue[d] this unwarranted claim." In two subsequent letters, Plaintiff again threatened to sue Mr. Seinfeld unless he agreed to a monetary settlement.  After Mr. Seinfeld chose not to respond, Plaintiff filed a *pro se* complaint on February 9, 2018.  Dkt. No. 1.

On March 1, 2018, given Plaintiff's then–*pro se* status, Mr. Seinfeld's counsel informed Plaintiff via email and letter of the consequences of asserting "objectively unreasonable" claims

and explained that "when a plaintiff brings a frivolous and objectively meritless copyright claim, the court has the power to award attorney's fees and costs to the prevailing party under 17 U.S.C. § 505 of the Copyright Act."  Ex. B.  Mr. Seinfeld's counsel further explained to Plaintiff that "[b]ecause [he] did not file suit until [February 2018], more than three years after the publication of the first [episode of the show] . . . any ownership claim relating to [Comedians in Cars Getting Coffee] is untimely."  *Id.* at 2 (citing *Kwan*, 634 F.3d at 229).  In light of the binding Second Circuit authority compelling dismissal of his case, Plaintiff was then explicitly warned that if he "refus[ed] to dismiss [his] lawsuit with prejudice and, instead, require[d] Mr. Seinfeld to spend time and money litigating the case, [Mr. Seinfeld's counsel] will ask the judge to make [Plaintiff] pay our attorney's fees and costs after we prevail, and those fees likely would rise into the six figures."  *Id.* at 1.

After Plaintiff failed to voluntarily dismiss his lawsuit, Mr. Seinfeld filed a motion to dismiss, which again made clear that binding Second Circuit authority, such as *Kwan* and *Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016) (per curiam), mandated dismissal of Plaintiff's claims.  *See* Dkt. No. 22.  In response, Plaintiff hired an attorney to file an FAC on May 25, 2018, corrected on June 22, 2018.  Dkt. No. 46.  The FAC largely repackaged the same baseless time-barred claims contained in the original complaint.  Plaintiff's lawyer conspicuously withdrew as counsel the evening before Defendants moved to dismiss the FAC on June 29, 2018, when it was clear that Defendants were defending the case on the merits and not writing a check. *See* Dkt. No. 47.  Defendants' motion to dismiss the FAC once again made clear that the same binding Second Circuit authority compelled dismissal of Plaintiff's claims.  *See* Dkt. No. 50.

Plaintiff then hired new counsel, who requested leave to file an SAC, claiming that "the First Amended Complaint does not adequately express and assert all of [Plaintiff's] valid and

important claims." Dkt. No. 65.  When Plaintiff's new counsel emailed Mr. Seinfeld's counsel

on August 12, 2018, seeking consent to file an SAC, Mr. Seinfeld's counsel responded that,

"[w]e have made it clear to your client in correspondence and in two motions to dismiss that

controlling precedent mandates dismissal of his copyright claims as time-barred."  Ex. C at 4

(emphasis in original).  After again citing *Kwan* and *Simmons* to explain why Plaintiff's claims

were time-barred, Mr. Seinfeld's counsel issued a final warning:  "We cannot stop you from

filing a motion to amend.  But we can ask the Court to hold you and your client responsible for

our fees and costs if you seek leave to amend with a time-barred, futile and frivolous joint

authorship claim."  Ex. C at 1–2.

　　At their own peril, Plaintiff's counsel ignored this warning, seeking and receiving leave

from this Court to file the SAC.  The SAC, filed on September 2, 2018, recycled the original

allegations in the *pro se* complaint and FAC and included two additional time-barred copyright

claims.  Dkt. No. 70.  On September 17, 2018, Defendants filed a third motion to dismiss, which

again made clear that the same binding Second Circuit authority—cited in the two prior motions

to dismiss and in the correspondence with Plaintiff's counsel—compelled dismissal of Plaintiff's

claims.  Dkt. No. 74.

　　On September 30, 2019, this Court granted Defendants' motion to dismiss the SAC,

ruling that Plaintiff's copyright claims were time-barred principally under *Kwan* and *Simmons*,

the same Second Circuit precedent that Defendants cited in all three motions to dismiss and in

repeated correspondence with Plaintiff's counsel.  Dkt. No. 106 at 5–7.  This Court found that

Plaintiff's "attempts to distinguish Second Circuit precedent" were "unavailing."  *Id.* at 5.  On

October 1, 2019, the Clerk of Court entered Judgment for Defendants on the docket.  Dkt. No.

108.  On April 29, 2020, following Plaintiff's appeal of the Court's judgment, the Second Circuit

held oral argument.  During oral argument, the Second Circuit panel grilled Plaintiff's counsel for nearly twenty minutes, far exceeding Plaintiff's allotted time.  The panel did not ask Defendants' counsel a single question.  On May 7, 2020, one week after hearing oral argument, the Second Circuit summarily affirmed this Court "for substantially the same reasons that it set out in its well-reasoned opinion," citing to its prior decisions in *Kwan* and *Simmons*.  Summary Order at 2.  On May 21, 2020, Plaintiff filed a petition for panel rehearing.  On June 10, 2020, without ordering a response from Defendants, the Second Circuit summarily denied the petition. *Charles*, No. 19-3335, at Dkt. No. 101.

As prevailing parties in this copyright action, the Seinfeld Defendants now move the Court for an award of attorneys' fees and costs.  As Mr. Seinfeld's counsel warned Plaintiff at the beginning and every subsequent stage of this case, forcing the Seinfeld Defendants to defend against these objectively unreasonable claims caused them to incur substantial fees.  *See* Ex. B. And Plaintiff's equally meritless appeal needlessly burdened the Seinfeld Defendants with additional substantial fees.

## **ARGUMENT**

## I.     **DEFENDANTS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES AND COSTS AS THE PREVAILING PARTIES IN THIS ACTION**

The Copyright Act authorizes "the court in its discretion [to] . . . . award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.  "[D]efendants are prevailing parties in this action because their motion to dismiss the complaint was granted" and affirmed on appeal. *See Sid Bernstein Presents, LLC v. Apple Corps Ltd.*, 2018 WL 3300688, at *6 (S.D.N.Y. Jan. 25, 2018), *report and recommendation adopted*, 2018 WL 1587125 (S.D.N.Y. Mar. 29, 2018); *see also Mahan*, 2015 WL 4388885, at *2 (finding defendants were prevailing parties in

copyright infringement action and awarding fees and costs after granting motion to dismiss on statute of limitations grounds).

###### A.    Plaintiff Maintained Objectively Unreasonable and Frivolous Legal and Factual Positions

In determining whether to award fees under Section 505 of the Copyright Act, courts may consider "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence' as relevant factors." *TufAmerica, Inc. v. Diamond*, 2016 WL 1029553, at *1 (S.D.N.Y. Mar. 9, 2016) (Nathan, J.) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)).  A court must give "substantial weight to the reasonableness of [the losing party's] litigating position, [while] also taking into account all other relevant factors." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016).  "Claims are objectively unreasonable if they 'have no legal or factual support.'" *TufAmerica Inc.*, 2016 WL 1029553, at *2 (citation omitted).  The Seinfeld Defendants "are entitled to attorneys' fees because, for the reasons set forth in the [Court's decision and in the Second Circuit's Summary Order], Plaintiff's claims under the Copyright Act were plainly time barred and therefore objectively unreasonable. Claims brought after the statute of limitations has run may be considered objectively unreasonable." *Mahan*, 2015 WL 4388885, at *2.

This is not a case in which the plaintiff filed and maintained copyright claims in good faith.  Nor is it a case in which the plaintiff was unaware of the consequences of his actions. Plaintiff filed this action in the apparent hope that the ensuing media coverage would force Mr. Seinfeld to offer him a settlement.  But Mr. Seinfeld refused to acquiesce and defended himself. At every stage, Mr. Seinfeld gave Plaintiff the choice to abandon his frivolous lawsuit,

11

repeatedly warning him that his copyright claims were time-barred. But Plaintiff ignored the clear warnings and continued to press his objectively unreasonable claims.

The Second Circuit held that "the central issue [here] is clearly a dispute over ownership," Summary Order at 2, affirming this Court's determination that "ownership form[ed] the backbone of the 'infringement' claim" here. Dkt. No. 106 at 6. As Defendants consistently argued in all three motions to dismiss, this was not a close call. Despite Plaintiff's "unavailing attempts to distinguish" this case from binding Second Circuit precedent, *id*. at 5, *Kwan* and *Simmons* control this case and make clear that Plaintiff's legal arguments were objectively unreasonable. This Court agreed, determining that the "set of facts [in *Kwan*] largely mirror[] the present case," Dkt. No. 106 at 6. And so did the Second Circuit, when it cited to *Kwan* in finding that the facts of this case were "enough to place [Plaintiff] on notice that his ownership claim was disputed and therefore this action, filed six years later, was brought too late." Summary Order at 3. The Second Circuit also affirmed this Court's rejection of Plaintiff's frivolous attempt to "somehow" distinguish his lawsuit as concerning "authorship" rather than "ownership," Dkt. No. 106 at 5–6, ruling that "authorship is merely one path to ownership of a copyright." Summary Order at 2 (quoting Dkt. No. 106 at 6).

Plaintiff's other attempt to circumvent the statute of limitations was also objectively unreasonable. Like other unsuccessful copyright plaintiffs before him, Plaintiff argued that the "separate-accrual rule," in which the statute of limitations runs separately from each violation, applied to an ownership dispute, by mischaracterizing his copyright claims as being for infringement. Dkt. No. 85 at 24–25. The Second Circuit squarely rejected this discredited argument, noting that "[w]hen 'ownership is the dispositive issue' in an infringement case and the 'ownership claim is time-barred,' the infringement claim itself is also time-barred, even if

any allegedly infringing activity occurred within the limitations period."  Summary Order at 2.

This Court thus correctly held that an "ownership claim 'accrues only once, when a reasonably

diligent plaintiff would have been put on inquiry as to the existence of a right.'"  Dkt. No. 106 at

6 (quoting *Kwan*, 634 F.3d at 228).  In fact, courts in this District have held the same "separate-

accrual" argument advanced by Plaintiff here, based on a misreading of *Petrella v. Metro-*

*Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), to be objectively unreasonable and the basis for

awarding fees under Section 505.  *See, e.g.*, *Sid Bernstein*, 2018 WL 3300688, at *6 (finding

plaintiff's reliance on *Petrella* sufficiently objectively unreasonable to award fees under

Section 505).

Because this case plainly concerned an ownership dispute, both the Second Circuit and

this Court agreed with Defendants' argument that Plaintiff pled himself out of Court.  Pointing to

the frivolous nature of Plaintiff's arguments, the Second Circuit found that Plaintiff's efforts to

dispute "that his claim centers on ownership" were "seriously undermined by his statements in

various filings throughout this litigation."  Summary Order at 2.  Hardly a close call, the Second

Circuit thus determined that this Court correctly "identified two events described in the Second

Amended Complaint that would have put a reasonably diligent plaintiff on notice that his

ownership claims were disputed[:]"

> First, in February 2012, Seinfeld rejected Charles's request for backend
> compensation and made it clear that Charles's involvement would be limited to a
> work-for-hire basis.  Second, the show premiered in July 2012 without crediting
> Charles, at which point his ownership claim was publicly repudiated.  Either one
> of these developments was enough to place Charles on notice that his ownership
> claim was disputed and therefore this action, filed six years later, was brought too
> late.  We have considered the remainder of Charles's arguments and find them to
> be without merit.

> *Id.* at 2–3 (citations omitted) (citing *Kwan*, 634 F.3d at 227).  A claim is "'clearly without

merit' and 'objectively unreasonable'" when it disregards a "well-settled principle of law."

*TufAmerica Inc.*, 2016 WL 1029553, at *2 (citation omitted).  Here, Plaintiff made objectively

unreasonable attempts to distinguish Second Circuit precedent, Dkt. No. 106 at 5, even when that

precedent was directly on point.  *See* Summary Order at 2 ("[T]he central issue is *clearly* a

dispute over ownership." (emphasis added)); *id.* (describing Plaintiff's arguments as "seriously

undermined by his [own] statements"); Dkt. No. 106 at 6 (finding *Kwan*'s "set of facts largely

mirrors the present case").

This case, therefore, easily meets the "frivolousness" factor, as many courts analyze

frivolousness and objective reasonableness together.  *See TufAmerica Inc. v. Diamond*, 2018 WL

401510, at *3 (S.D.N.Y. Jan. 12, 2018) (Nathan, J.) (collecting cases).  "A complaint is frivolous

'where it lacks an arguable basis either in law or in fact.'"  *Id.* (citation omitted).  As

demonstrated above, both the Second Circuit and this Court found that Plaintiff's copyright

claims were plainly time-barred under unambiguous Second Circuit precedent, and that the facts

pled in the SAC were self-defeating.  Indeed, "[Plaintiff's] arguments [on appeal were] as

frivolous as those he made below; an award of attorney's fees would further the objectives of the

Copyright Act by deterring such baseless appeals." *Mahan v. Roc Nation, LLC*, 634 F. App'x

329, 331 (2d Cir. 2016) (affirming district court's holding that asserting time-barred copyright

claims "was objectively unreasonable and that awarding fees would deter *similar frivolous suits*

from being filed by others" (emphasis added)).  *See also Byrne v. BuyThisFast Network, Inc.*,

2005 WL 1155175, at *3 (S.D.N.Y. May 17, 2005) ("To bring a clearly time-barred complaint is

a violation of Rule 11.").

The same is true for the "motivation" factor, because there are more than "indicia of bad

faith here." *See Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009).  Plaintiff waited

six years and only filed this baseless case after the announcement in 2017 that "Netflix inked a

14

lucrative new deal for the show to join their platform." Dkt. No. 106 at 3.  Plaintiff knew that the mere filing of a complaint accusing Mr. Seinfeld, "a well-known comedian and actor," Dkt. No. 106 at 1, of theft—no matter how objectively unreasonable—would attract significant media attention.  Unsurprisingly, Plaintiff's allegations led to headlines like, *Jerry Seinfeld Sued for Allegedly Stealing 'Comedians in Cars Getting Coffee'*.[3]  Each development in the case, such as when Plaintiff first hired counsel, generated additional media reports parroting Plaintiff's baseless allegations.[4]

Targeting a high-profile individual with inflammatory allegations of theft is a well-worn tactic.  This case is similar in posture to *Porto*, which had "the hallmarks of an abusive lawsuit." *Porto*, 659 F. Supp. 2d at 617.  In *Porto*, the plaintiff unsuccessfully sued "an award-winning play and author, and a well-known director (who is also an Academy Award-winning actor) . . . several years after the production of the play" for copyright infringement.  *Id.*  Similarly, here, Plaintiff waited six years, until "Netflix inked a lucrative new deal for the show to join their platform" to file his opportunistic suit.  Dkt. No. 106 at 3 (citing SAC ¶¶ 96–97).  Also, just as Mr. Seinfeld's counsel warned Plaintiff that his claims were meritless, in *Porto*, "plaintiff's first counsel was warned, before any action had been filed, that there was no colorable copyright infringement claim . . . [and] [t]he plaintiff nevertheless persisted in obtaining new counsel and filing his complaint."  *Porto*, 659 F. Supp. 2d at 617.  In *Porto*, Judge Koeltl found that "an

---

[3] *Jerry Seinfeld Sued for Allegedly Stealing 'Comedians in Cars Getting Coffee'*, TMZ (Feb. 12, 2018), https://www.tmz.com/2018/02/12/jerry-seinfeld-sued-for-stealing-comedians-in-cars-getting-coffee/.

[4] *See, e.g.*, Eriq Gardner, *Jerry Seinfeld Faces Bulked-Up Lawsuit for Allegedly Stealing Hit Show*, HOLLYWOOD REP. (May 29, 2018), https://www.hollywoodreporter.com/thr-esq/jerry-seinfeld-faces-bulked-up-lawsuit-allegedly-stealing-hit-show-1115493; Michelle Kaminsky, *BigLaw Attorney Revs Up 'Comedians in Cars Getting Coffee' Lawsuit Against Seinfeld*, FORBES (May 30, 2018), https://www.forbes.com/sites/michellefabio/2018/05/30/biglaw-attorney-revs-up-comedians-in-cars-getting-coffee-lawsuit-against-seinfeld/#4e9edd47416c.

award of reasonable costs and attorneys' fees [was] appropriate," *id.*, and an award of attorneys'

fees and costs is also appropriate here.

### B.    Awarding Attorneys' Fees and Costs Furthers the Copyright Act's Principles of Deterrence and Compensation

The Supreme Court has recognized that "a successful defense of a copyright infringement

action may further the policies of the Copyright Act every bit as much as a successful

prosecution of an infringement claim by the holder of a copyright." *Fogerty*, 510 U.S. at 527.  In

particular, when a plaintiff pursues a meritless claim, "failing to award attorneys' fees to

defendants . . . would invite others to bring similarly unreasonable actions without fear of any

consequences." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006).

Here, there is a strong basis for both deterrence and compensation.  For deterrence, this

lawsuit was an opportunistic and frivolous attempt to capitalize on Mr. Seinfeld's fame and

success, and awarding attorneys' fees is "necessary to deter Plaintiff from similarly frivolous

future litigation." *TufAmerica Inc.*, 2018 WL 401510, at *6.  Plaintiff followed the perilous path

of "pursu[ing] expensive and time-consuming litigation" with the hope of "extract[ing] a

significant payment from perceived 'deep pocketed' defendants." *Baker*, 431 F. Supp. 2d at 358.

He persisted down this path even after this Court's "well-reasoned opinion," Summary Order at

2, dismissed his claims on precisely the same statute of limitations grounds identified by

Defendants in their three motions to dismiss.  Unsurprisingly, the Second Circuit found

Plaintiff's arguments to be without merit "for substantially the same reasons" as this Court, in a

Summary Order issued one week after hearing oral argument.  Summary Order at 2.  "[A]n

award of costs and fees is crucial here, so as to deter this plaintiff, and other similarly situated

plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such

plaintiffs that they can score big if they win and that there will be no adverse consequences if

they lose." *Baker*, 431 F. Supp. 2d at 359.  In addition, "an award of attorney's fees would further the objectives of the Copyright Act by deterring such baseless appeals." *Mahan v. Roc Nation, LLC*, 2016 WL 4718018, at *1 (S.D.N.Y. Sept. 9, 2016) (quoting *Mahan*, 634 F. App'x 329 at 331).  "An award of fees and costs is necessary to convince [Plaintiff] and other like-minded plaintiffs that federal courts do not exist so that they can roll the dice on unreasonable allegations or so that they can seek fame and fortune from 'deep-pocketed' defendants." *Baker*, 431 F. Supp. 2d at 360.

The same is true for compensation, because this case was not a "close call[]," and it did not "present novel legal issues or theories." *TufAmerica Inc.*, 2016 WL 1029553, at *2.  Plaintiff pursued this litigation with eyes wide open, in the face of multiple warnings from Mr. Seinfeld's counsel that his copyright claims were time-barred.  Plaintiff forced the Seinfeld Defendants to expend significant resources to defend the action.  Plaintiff needlessly prolonged and complicated this case by filing <u>three</u> meritless complaints, which, in turn, prompted Defendants to file <u>three</u> successive motions to dismiss.  Even when this Court dismissed the case, Plaintiff and his counsel barreled ahead, multiplying the litigation even further by appealing this Court's decision despite the adverse controlling authority cited by both Defendants and the Court.  Citing to the same controlling authority, the Second Circuit summarily affirmed this Court's decision. Although Plaintiff's arguments were meritless, "it was reasonable for Defendants to take the appeal seriously.  While the crux of Defendants' arguments may have remained the same, the substance and style of briefing and oral argument differ between trial and appellate courts, and competent lawyers will work hard to defend against even frivolous appeals." *Mahan*, 2016 WL 4718018, at *3.  As such, "an award of attorneys' fees and costs in this case will advance the purposes of the Copyright Act by compensating the defendants for expending the time and

incurring the expense of defending this action." *Sid Bernstein Presents, LLC*, 2018 WL 1587125, at \*4.  "Furthermore, such an award will deter others 'from pursuing meritless claims, such as those asserted in this action.'"  *Id.* (citation omitted).

## II.   THE FEES AND COSTS SOUGHT BY THE SEINFELD DEFENDANTS ARE REASONABLE

Courts assess the reasonableness of attorneys' fees using the lodestar method.  "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"  *TufAmerica Inc.*, 2016 WL 1029553, at \*3 (alteration in original) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  "Once the lodestar amount is established, there is a strong presumption that it is reasonable."  *Baker*, 431 F. Supp. 2d at 360 (internal quotation marks and citations omitted).  While the Seinfeld Defendants submit that the hourly rates of their counsel, Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), are reasonable and in line with the market, to avoid any disputes and mindful of the fact that this Court often reduces fee requests to ensure reasonableness, the Seinfeld Defendants are only requesting an award of 75% of Gibson Dunn's standard hourly rates.  This reduced rate will be referred to as the "claimed rate."

In sum, the Seinfeld Defendants are seeking an award of $940,502.23, representing $845,693.63 of attorneys' fees and $94,808.60 of costs that the Seinfeld Defendants reasonably expended in this action.  Even though this was a meritless case, the stakes were high because of the Show's value and the nature of Plaintiff's demands.  *See* SAC ¶ 96 ("[I]ndustry press revealed that the Project's deal with Netflix was estimated at around $100 million.").  Given that Plaintiff was seeking Mr. Seinfeld's entire share of the Show's profits, as well as an injunction on making future episodes or distributing existing ones, Defendants were forced to vigorously

defend their rights to the Show.  In addition, Plaintiff's vexatious litigation tactics needlessly burdened the Seinfeld Defendants with additional substantial fees.

Over the past two and a half years, the work performed by Defendants' counsel included, *inter alia*, investigating Plaintiff's claims, preserving evidence for document discovery, briefing three motions to dismiss, litigating Plaintiff's counsel's motion to withdraw, litigating Plaintiff's motion to strike a section of Defendants' motion to dismiss reply brief, addressing multiple disputes with Plaintiff and his counsel regarding procedural issues, preparing and drafting initial disclosures, preparing and filing an initial motion for attorneys' fees, litigating Plaintiff's request for a stay of the fees motion pending the outcome of the appeal, reviewing the record on appeal, briefing the appeal, preparing for and conducting oral argument before the Second Circuit, and briefing this subsequent motion for attorneys' fees.[5]  In sum, Defendants' counsel filed twelve briefs and letter briefs, totaling over 150 pages.  The accompanying Kusnetz Declaration and the exhibits thereto demonstrate that the fees charged by Gibson Dunn are reasonable.  *See* Kusnetz Declaration ¶¶ 5–35, Exs. D–H.  Gibson Dunn's fees and costs have been paid in full.

## A.    The Rates of the Seinfeld Defendants' Counsel Are Reasonable

"An attorney's reasonable hourly rate is what 'a reasonable, paying client would be willing to pay.'"  *TufAmerica Inc.*, 2016 WL 1029553, at *5 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008)).  "[T]his rate must be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Id.* (quoting *Miroglio S.P.A.*, 629 F.

---

[5]  The Seinfeld Defendants are entitled to the attorneys' fees and costs associated with briefing this motion, and intend to submit a supplemental declaration identifying and substantiating additional fees and costs with their reply.  *See TufAmerica Inc.*, 2016 WL 1029553, at *7 (granting attorneys' fees for the hours defendants spent preparing their motion for fees); *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) (granting attorneys' fees "for the hours spent preparing the application for costs and fees").

Supp. 2d at 314).  Additional factors courts consider "includ[e], but [are] not limited to, the complexity and difficulty of the case, . . . the resources required to prosecute the case effectively[,] . . . the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation[,] . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation."  *Arbor Hill*, 522 F.3d at 184.

The qualifications for the primary members of the litigation team in this case are detailed in the Kusnetz Declaration and accompanying exhibits.  Kusnetz Declaration ¶¶ 17–33; Ex. G.  These rates are in line with, and in many cases lower than, the rates charged by comparable law firms in this District with similar expertise.  The rates charged by Gibson Dunn are commensurate with the hourly rates for partners and associates at comparable firms in the Southern District of New York and consistent with reasonable rates approved in other cases in this District.  *See, e.g.*, *Vista Outdoor Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (approving rates up to $1,260 for Gibson Dunn partners); *APEX Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, 2018 WL 5784544, at *5 (S.D.N.Y. Nov. 5, 2018) (approving hourly rates of up to $1,058.25); *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (approving hourly rates of up to $1,055 and noting that "partner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation").  Moreover, the rates charged by Gibson Dunn reflect actual market rates and are the same or similar to those paid by Gibson Dunn's other clients for comparable work.  *See Ceglia v. Zuckerberg*, 2012 WL 503810, at *16 (W.D.N.Y. Feb. 14, 2012) (finding "Gibson Dunn's hourly billing rates are in line with the prevailing market rates for attorneys of similar credentials at large New York City law firms");

*see also* Ex. H (Legal Billing Report By Billing Rate, published by Thomson Reuters in December 2018).  Defendants are primarily represented by the following three attorneys in this matter:

- Orin Snyder is the supervising partner for this case, argued the appeal, and has had ultimate decision-making responsibility since the inception of this case.  Mr. Snyder has been a partner at Gibson Dunn since 2005 and is one of the country's leading trial lawyers and litigators.  Mr. Snyder was named General Commercial Attorney of the Year for 2020 by Benchmark Litigation.  Mr. Snyder is a senior partner and the Co-Chair of Gibson Dunn's Media, Entertainment and Technology Practice Group.  Mr. Snyder has litigated many of the leading copyright cases in the Second Circuit.  *See, e.g.*, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46 (2d Cir. 2003); *Thomson v. Larson*, 147 F.3d 195 (2d Cir. 1998); *LaPine v. Seinfeld*, 2009 WL 2902584 (S.D.N.Y. Sept. 10, 2009), *aff'd*, 375 F. App'x 81 (2d Cir. 2010); *Willis v. Home Box Office*, 2001 WL 1352916 (S.D.N.Y. Nov. 2, 2001), *aff'd*, 57 F. App'x 902 (2d Cir. 2003); *Tisi v. Patrick*, 97 F. Supp. 2d 539 (S.D.N.Y. 2000); *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y. 2000).  Previously, Mr. Snyder served as an Assistant United States Attorney in this District and was a named partner at a prominent New York litigation boutique.  Mr. Snyder has also been recognized as one of the five best business trial lawyers in the country by Chambers USA; ranked by Chambers USA in Band 1 in New York for both General Commercial Litigation and Media & Entertainment Litigation in 2019; recognized as one of the "Top 100 Trial Lawyers in America" in Benchmark Litigation's Guide to America's Leading Litigation Firms and Attorneys; honored as a "Power Lawyer" by *The Hollywood Reporter*; and profiled as AmLaw Litigation Daily's "Litigator of the Week."  Mr.

Snyder earned his law degree, *cum laude*, at the University of Pennsylvania Law School in 1986.  His standard rates were $1,395 in 2018, $1,445 in 2019, and $1,550 in 2020.  His claimed rates are $1,046.25 in 2018, $1,083.75 in 2019, and $1,162.50 in 2020.  The total fees sought for Mr. Snyder's work are $70,220.63.  *See* Kusnetz Declaration ¶ 18, Exs. D–E.

- David Kusnetz is a sixth-year litigation associate at Gibson Dunn and has had day-to-day responsibility for running this case since its inception.  Mr. Kusnetz's practice focuses on complex commercial, copyright, and securities litigation.  Mr. Kusnetz previously served as a law clerk for the Honorable Richard M. Berman of the United States District Court for the Southern District of New York.  Mr. Kusnetz graduated from Columbia Law School in 2014, where he was a Harlan Fiske Stone Scholar and a Notes Editor on the *Columbia Journal of Law and Social Problems*.  His standard rates were $815 in 2018, $895 in 2019, and $965 in 2020.  His claimed rates are $611.25 in 2018, $671.25 in 2019, and $723.75 in 2020.  The total fees sought for Mr. Kusnetz's work are $511,772.25.  *See* Kusnetz Declaration ¶ 19, Exs. D–E.

- On appeal, Mr. Snyder and Mr. Kusnetz were assisted by Matthew McGill, an appellate specialist, who assisted with drafting Defendants' appellate brief and oral argument preparation.  Mr. McGill has been a partner at Gibson Dunn since 2004 and is a Chambers-ranked appellate litigator.  He has litigated 21 cases before the Supreme Court of the United States, prevailing in 16.  Mr. McGill has also participated in significant copyright cases before the Supreme Court and the courts of appeals, including *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013).  Previously, Mr. McGill served as a Bristow Fellow in the Office of the Solicitor General at the U.S. Department of Justice

22

and as a law clerk for the Honorable Joseph M. McLaughlin of the U.S. Court of Appeals for the Second Circuit and the Honorable John G. Roberts, Jr. of the U.S. Court of Appeals for the D.C. Circuit.  Mr. McGill has been recognized by Benchmark Litigation as a "Future Litigation Star" in Washington, D.C.; by Law360 as a Sports Law "MVP" and as a national "Rising Star," identifying him as one of ten appellate lawyers under 40 to watch; and by the National Law Journal as a "2019 Sports & Entertainment Trailblazer" and a "Litigation Trailblazer."  In 2000, Mr. McGill earned his law degree from Stanford Law School, where he was elected to the Order of the Coif.  His standard rate in 2020 is $1,320.  His claimed rate in 2020 is $990.  The total fees sought for Mr. McGill's work are $30,591.  *See* Kusnetz Declaration ¶ 20, Exs. D–E.

**B.      The Number of Hours Counsel Expended Is Reasonable**

Gibson Dunn's contemporaneous monthly time records, describing the work performed on this matter by Gibson Dunn attorneys and litigation support staff, are attached as Exhibit D to the Kusnetz Declaration.  These records identify 1,421.50 hours of work by Gibson Dunn attorneys and litigation support staff in connection with this litigation and, for each entry, specify "the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983).  In these records, each timekeeper recorded his or her time contemporaneously in tenths of hours and provided a detailed description of the services rendered.

From February 9, 2018 to the present, Gibson Dunn managed this case in an efficient manner.  With a team of just three attorneys—one handling day-to-day responsibilities, one supervising the matter, and one assisting on appeal—all of the work was necessary and not

redundant.[6]  Notably, Mr. Snyder billed only 64.3 hours on this matter, representing 5% of the

total attorney hours billed, and Mr. McGill billed only 30.9 hours on this matter, representing

just 2% of the total attorney hours billed.  As the senior associate on this matter, Mr. Kusnetz

billed 791.2 hours, representing 59% of the total attorney hours billed.  *See* Ex. E (billing

summary).  The bulk of the remaining hours were billed by junior associates with lower billing

rates, to whom Mr. Kusnetz delegated legal research and other appropriate tasks.[7]  Messrs.

Snyder, Kusnetz, and McGill were also assisted by paralegals and other litigation support staff,

who billed 72.1 hours, representing 5% of the total hours billed.[8]  Gibson Dunn focused on using

its resources efficiently and made every effort to minimize the costs incurred.[9]  The number of

hours expended by counsel for Defendants is reasonable.  All of the work reflected in the time

records was necessary and justified to prevail in this action.

---

[6]  Gibson Dunn partner Laura O'Boyle occasionally assisted with reviewing and revising the
motion to dismiss briefing, as well as oral argument preparation.  Ms. O'Boyle has been an
attorney at Gibson Dunn since 2006, and became a partner in 2017.  She has extensive
experience litigating a wide range of complex commercial matters in federal and state court,
including fraud and breach of contract matters, securities class actions, trade secret claims,
and shareholder disputes.  She also regularly represents media and technology clients in
copyright, trademark, privacy, and defamation matters.  She graduated with distinction from
Stanford Law School in 2006.  Her rates were $1,065 in 2018, $1,095 in 2019, and $1,175 in
2020.  Other Gibson Dunn partners also assisted with oral argument preparation.  The
Seinfeld Defendants are not seeking reimbursement of the fees associated with the work of
Ms. O'Boyle or any additional partners.

[7]  This included the following first-year associates to complete discrete tasks, such as legal
research, in order to further reduce costs: Jeremy Bunting, Trevor Gopnik (departed firm),
Kimberly Kirschenbaum (departed firm), Amanda LeSavage, and Zachary Piaker (departed
firm).  *See* Kusnetz Declaration ¶ 22, Exs. D–E.

[8]  This included paralegals Angel Arias, LaToya Best, and Nilhan Gezgin; the Managing
Attorney of the Firm's New York office, Laura Coppola; and Litigation Support Specialists
Carla Edwards, Steven Raber, Leonid Roymisher, and Spencer Scott.  *See* Kusnetz
Declaration ¶ 26, Exs. D–E.

[9]  Messrs. Snyder and Kusnetz also utilized the assistance of several summer associates.  The
Seinfeld Defendants are not requesting reimbursement for the work performed by summer
associates.

### C.    The Costs Sought by the Seinfeld Defendants Are Reasonable

"The Second Circuit has consistently 'held that attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *TufAmerica Inc.*, 2016 WL 1029553, at \*7 (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)).  The Seinfeld Defendants seek to recover $94,808.60 in costs, as set forth in the costs summary attached as Exhibit F to the Kusnetz Declaration.  The costs summarized in Exhibit F are also individually itemized on Gibson Dunn's invoices.  *See* Ex. D.  The costs include electronic legal research, electronic discovery database hosting fees, in-house duplication charges, and messenger and courier delivery services.  These costs are reasonable because they are not associated with ordinary office overhead but instead relate to identifiable "out-of-pocket expenses incurred by attorneys *and ordinarily charged to their clients*."  *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752, at \*18 (S.D.N.Y. Oct. 17, 2008) (emphasis in original) (citation omitted).

### CONCLUSION

For the foregoing reasons, the Seinfeld Defendants respectfully request that the Court grant their motion for attorneys' fees and costs, together with such further relief as appropriate.

Dated: New York, New York
     July 1, 2020

Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP

By:    /s/ Orin Snyder

Orin Snyder
David M. Kusnetz

200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile:  (212) 351-4035
osnyder@gibsondunn.com
dkusnetz@gibsondunn.com

*Attorneys for Defendants Jerry Seinfeld,*
*Columbus 81 Productions, Inc., Embassy*
*Row, LLC, Comedians in Cars, LLC,*
*Sony Pictures Television Inc., and*
*Netflix, Inc.*