**CLARK GULDIN**
Attorneys At Law
20 Church Street – Suite 15
Montclair, New Jersey 07042
(973) 707-5346 (ph)
(973) 707-7631 (fax)
*Attorneys for Plaintiff*
*Christian Charles*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **CHRISTIAN CHARLES,**<br><br>    Plaintiff,<br><br>    v.<br><br>**JERRY SEINFELD, COLUMBUS 81 PRODUCTIONS, INC., EMBASSY ROW, LLC, COMEDIANS IN CARS, LLC, SONY PICTURES TELEVISION INC., NETFLIX, INC.**<br><br>    Defendants. | **Civil Action No. 1:18-cv-01196 (AJN-KHP)** |

# MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

# **TABLE OF CONTENTS**

**PAGES**

**TABLE OF AUTHORITIES** ........................................................................................ ii

**PRELIMINARY STATEMENT** ...............................................................................1

**ARGUMENT** ...........................................................................................................6

**POINT I: THE SIXTH CIRCUIT'S DECISION IN *EVERLY V. EVERLY* – PROVIDING A COMPREHENSIVE EXPLANATION OF THE DISTINCTIONS BETWEEN REPUDIATIONS OF *OWNERSHIP* AND *AUTHORSHIP* – COMPELS THE CONCLUSION CHARLES'S COMPLAINT WAS NEITHER FRIVOLOUS NOR OBJECTIVELY UNREASONABLE** ...............................................................................................6

**CONCLUSION**........................................................................................................9

# TABLE OF AUTHORITIES

**Pages**

**CASES**

*Brownstein v. Lindsay*, 742 F.3d 55 (3d Cir. 2014) .................................................................. 8

*Everly v. Everly,* 958 F.3d 442 (6th Cir. 2020) ................................................................. passim

*Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011 ........................................................................ 7, 8

**RULES & STATUTES**

ABA Model Rule 3.3(a)(2) ....................................................................................................... 1

Fed. R. Civ. P 11(b) .................................................................................................................. 1

Fed. R. Civ. P 11(c)(2) .............................................................................................................. 1

Fed. R. Civ. 11(c)(3) ................................................................................................................. 1

17 U.S.C. § 203(a) .................................................................................................................... 8

**OTHER AUTHORITIES**

Tillman J. Breckenridge, *Petitioning for Further Review After Losing a Federal Appeal*, IN-HOUSE DEFENSE QUARTERLY (Summer 2010) ............................................................ 7

Martin Flumenbaum and Brad S. Karp, *The Rarity of En Banc Review In the Second Circuit,* NEW YORK LAW JOURNAL (August 24, 2016) .................................................... 7

David L. Hudson, Jr., *Lawyers Have a Duty to Disclose Adverse Legal Authority Even If It Hurts Their Case,* ABA JOURNAL (June 1, 2019) ........................................................ 1

J. Alexander Lawrence, *Commentary: Claims Filing Time Issues On Copyright Ownership From Everly Bros. Case,* LAW JOURNAL NEWSLETTERS (July 2020) ........... 9

## **PRELIMINARY STATEMENT**

Defendants' brief uses 29 pages to make the same argument a score of times. It's a simple recipe. Plaintiff Christian Charles's suit was "frivolous" 17 times; "objectively unreasonable" 14 times. Throw in "meritless" 14 times, "baseless" 6 times; add a pinch of "hopeless" and "misguided." Bring to a boil with inflammatory implications of "unscrupulous" and "unprincipled," and incendiary imputations of an "unwarranted" and "opportunistic" assault on a beloved funnyman.

Charles needs far less space to illuminate the only "frivolous and objectively unreasonable" submission is Defendants' Motion. He respectfully submits this Motion warrants a Court Order requiring Defendants to show cause under Fed. R.Civ. P. 11(c)(3) why they should not be sanctioned for violating Rule 11(b) and requiring Charles to oppose this shameful submission.[1]

That is so because it is astonishing that defendants have renewed a fee application resting solely on assertions of frivolousness and objective unreasonableness in light of the Sixth Circuit's recent decision in *Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020). Even more astonishing is that defendants – on notice of *Everly* since Charles's application for Second Circuit Panel Rehearing[2] – not only don't try to explain why *Everly* is irrelevant to their assertions of frivolousness and unreasonableness – they don't even mention the case. 3

---

[1] Should the Court decline to do so, Charles reserves the right to move for sanctions under Rule 11(c)(2).

[2] *Everly* was issued less than a week after argument before the Second Circuit Panel, and three days before the Court issued its Summary Order.

[3] A June 1, 2019 Article in the ABA Journal (David L. Hudson, Jr., *Lawyers Have a Duty to Disclose Adverse Legal Authority Even If It Hurts Their Case,* ABA JOURNAL (June 1, 2019)), examines the history and import of ABA Model Rule 3.3(a)(2) — "Candor Toward the Tribunal." Although on its face the Rule applies only to adverse authority "*in the controlling jurisdiction,"* if the Court evaluates the applicability of Rule 11, Charles urges consideration of the ethical

Charles need not belabor the issue. Defendants' entire asserted justification for an award of fees is that Charles's Complaint is "frivolous" and "objectively unreasonable." The Sixth Circuit says in effect and instead that Charles is right.

Judge Nathan's September 30, 2019 Opinion and Order [Docket # 106, at 5-6] implies Charles was the *author* of the Pilot episode of *Comedians In Cars Getting Coffee* ("CICGC), but finds it irrelevant because of Seinfeld's alleged repudiations of Charles's *ownership*. *Everly* is unambiguous: as a *non-author*, Seinfeld lacked authority to repudiate Charles's ownership of the Pilot's copyright.[4] If Seinfeld's repudiations of ownership were irrelevant, Charles' claim for infringement of his copyright interest as *author* did not accrue, and the statute of limitations was not triggered by those repudiations.

It is true that both Judge Nathan and the Second Circuit reached a different conclusion. For that reason, the circuit split between the Second and Sixth Circuits created by *Everly* will soon be presented to the United States Supreme Court in Charles's Petition for Certification.

But *Everly* leads to one inescapable conclusion: Charles's Complaint was neither frivolous nor objectively unreasonable. Seinfeld knows it. His attorneys know it. His co-defendants know it. Let's not mince words: They all know that Seinfeld stole Charles's idea, his creative development of the idea, and the Pilot he created.

Christian Charles is not some reprobate opportunist. He is not some guy who caught a lucky break, saw an opening and tried to cash in on Seinfeld's celebrity. CICGC was the

---

propriety of the failure by Defendants' counsel to so much as acknowledge the *existence* of *Everly* while seeking fees of $940,502.23 on the solitary ground Charles's Complaint was "frivolous and objectively unreasonable."

4      Seinfeld has never produced any evidence of contributing as as *author* of the Pilot, and has never claimed any; and while Seinfeld claimed in 2018 he had created the *idea* for CICGC, he has never produced any evidence he had done so.

[2]

culmination of Charles's 18-year writing and directing relationship with Seinfeld: Not most recently, the two had collaborated on "Comedian" – a documentary feature about Seinfeld's return to stand-up – conceptually created by Charles, directed by Charles and sold to Miramax. Among Charles and Seinfeld's many other collaborations, Charles had worked with Seinfeld at DreamWorks, at NBC, and on major advertising campaigns for American Express and Microsoft.

So Charles did not crawl out of the woodwork. He instead performed, during an 18-year stint, as master architect on important building-blocks of Seinfeld's career. Nor did Charles make any attempt to court the media. He is a very private man who throughout his career allowed the quality of his work to speak for him – a right that was stolen from him in this case. And Charles tried repeatedly to resolve this dispute privately. Encouraged that Seinfeld's manager, sister, even his own wife thought Seinfeld was being unreasonable and pig-headed and would "come around," Charles gave Seinfeld ample opportunity to discuss, to settle out of court, to avoid litigation. Seinfeld's only answer and defense was "you waited too long."

Not only is Charles's Complaint neither frivolous nor objectively unreasonable; but as *Everly* teaches, had the same Complaint been filed within the Sixth Circuit, defendants would by now have been found liable for copyright infringement, and owe Charles damages amounting to tens of millions of dollars. That is a great injustice. It must not be compounded by an award of attorneys' fees to those who have so richly benefited from Mr. Seinfeld's theft.

From the outset, Charles has insisted this case is about "authorship" as distinct from "ownership." Here are the opening paragraphs of his October 27, 2018 Memorandum In Opposition To Defendants' Motion to Dismiss [Docket # 85]:

> No matter how many times Defendants insist this case is simply about copyright *ownership*, wishing cannot make it so. Plaintiff Christian Charles is suing to establish his *authorship* of the first episode – the "Pilot" – of Defendants' successful internet streaming show "Comedians in Cars

[3]

> Getting Coffee" ("CICGC"). If indeed the case were to skip right past the core question of copyright *authorship* and focus on the secondary question of *ownership* of the CICGC Pilot, Defendants would lose solely because nothing in the actual factual history provides the smallest hint of how defendant Jerry Seinfeld ("Seinfeld") and his co-Defendants can claim ownership of the Pilot, except through an arrogant display of self-entitlement pursued through an egregious series of thefts and frauds.
>
> The fundamental problem with Defendants' repeated insistence that the case turns on ownership is that it ignores the core principle of copyright ownership set out in 17 USC § 201(a): "Initial Ownership – Copyright in a work protected under this title vests initially in the author or authors of the work." Stated more directly, you don't own a copyright unless you are its author, or obtain it from the author in whom it initially vested.
>
> Resolution of this case depends upon the answer to one simple question: who is the author of the CICGC Pilot. There are only three possible answers: Mr. Seinfeld, Mr. Charles, or both of them jointly. And unless Mr. Seinfeld can show that he was the sole author – which he has not and cannot – or that he obtained ownership from Mr. Charles – which he did not – Mr. Seinfeld was never the sole owner of CICGC, and Defendants' motion to dismiss must be denied.

Because this Court and the Second Circuit Panel rejected that view, they were led inexorably down the path to interpreting application of the statute of limitations to "ownership cases." But besides *Everly's* decisive holding that a limitations-triggering repudiation of *ownership* must be made by one who himself – unlike Seinfeld – claims "*authorship*," the Sixth Circuit's analysis draws important distinctions between authorship and ownership (*Everly*, 958 F.3d, 442 *passim*) that are all but absent from the District Court and Second Circuit decisions. Those distinctions forcefully suggest this case should always have been viewed as an "authorship case." It has always seemed likely defendants knew – also from the outset – that arguing "it's an ownership case" was their only hope of prevailing before discovery could reveal the truth.

*Everly* explains the only repudiation that would have triggered the Statute of Limitations was a repudiation of Charles's authorship – by another author.

[4]

The Sixth Circuit held:

> [A]n *authorship* claim will not accrue until the putative author's status as an *author* is expressly repudiated; *actions repudiating ownership are irrelevant to begin the statute of limitations for an authorship claim* because repudiation of ownership is not adverse to the author's claim as such.
>
> \*\*\*
>
> "Regardless of whether *repudiation of authorship* is made privately, publicly or implicitly, *it must come from someone asserting authorship of the work, not from a third party*.
>
> \*\*\*
>
> "A person's *authorship* of a work can be legally called into question *only if it is challenged by another person who herself claims authorship* of the work in question.
>
> \*\*\*
>
> "[I]n the context of *ownership*, express repudiation can be effectuated by a non-author *who has been assigned ownership rights by an author*, [but] *in the context of authorship disputes, express repudiation must be made by an author herself* because, unlike ownership, authorship is not transferrable by contract. Thus, *the person repudiating another's authorship must herself have a claim of authorship in the work in question.*

*Everly*, 958 F.3d 453-454 (emphasis added). To the extent Seinfeld ever challenged Charles's authorship while even *implying* authorship for himself, he only did so by means of an email his then-attorney sent to Charles on January 10, 2018 (copy annexed to the Declaration of Peter L. Skolnik as **Exhibit A**). The email claimed only that Seinfeld had "conceived of the concept" of CICGC. Charles sued a month later, on February 9, 2018. Had discovery proceeded here, it would have explored (i) if Seinfeld effectively repudiated Charles's *authorship*, (ii) if he did so outside the statutory limitations period (i.e., before February 9, 2015), and (iii) if he was claiming to be the sole *author* when he repudiated.

[5]

**ARGUMENT**

I. **THE SIXTH CIRCUIT'S DECISION IN *EVERLY V. EVERLY* – PROVIDING A COMPREHENSIVE EXPLANATION OF THE DISTINCTIONS BETWEEN REPUDIATIONS OF *OWNERSHIP* AND *AUTHORSHIP* – COMPELS THE CONCLUSION CHARLES'S COMPLAINT WAS NEITHER FRIVOLOUS NOR OBJECTIVELY UNREASONABLE.**

Since the inception of Defendants' "it's all about ownership" defense, Charles has steadfastly insisted this case is one of first impression – in this Circuit and elsewhere – because unlike every reported case where repudiations triggered the Copyright Act's limitations period, Seinfeld was not an author. Nor did he ever even subtly claim to be until 2018. Consequently, Charles argued, Seinfeld's asserted repudiations were those of a "stranger" to the CICGC copyrights, and thus ineffectual.

In Charles's Opposition to Defendants' Motion to Dismiss, he explained:

> For Seinfeld to have authority to repudiate Charles's claims to an authorship and ownership interest in the Pilot, he must himself be its author or owner. The SAC asserts that Charles is (at the very least) *an* author and owner of the Pilot. With evidence presented here he has both substantiated those claims, and explained why Seinfeld should be found to be neither the Pilot's author nor its owner. Discovery is required to determine whether Seinfeld is either. If he is not, then *he is a stranger to the copyrighted work and the express repudiations upon which he seeks to rely to refute joint authorship are legal nullities*.

October 27, 2018 Memorandum [Docket # 85] at 16 (emphasis added)

In Charles's Moving Memorandum on Appeal, he asserted:

> The court below also failed to accept that the factual scenario presented a question of first impression, which prior case law in this Circuit and elsewhere had never addressed.
>
> \*\*\*
>
> Seinfeld was and is a stranger to the copyright in Comedians In Cars Getting Coffee. The central question on this appeal is one of first impression. It is whether Seinfeld, who does not assert authorship and can assert no legitimate ownership interest in the Comedians In Cars Getting Coffee copyright, could – by "repudiating" Charles's ownership of rights the Copyright Act had given him – trigger the statute of limitations and compel Charles to sue to protect his ownership of that copyright and prevent its wholesale usurpation by Seinfeld and his co-defendants.

[6]

> \*\*\*
>
> Whether Seinfeld – neither author nor owner of the Comedians In Cars Getting Coffee copyright – had the power here to trigger the limitations period is hence a question of first impression.

Second Circuit Case 19-3335, Document 53 (December 13, 2019), at 2, 16, 18.

The Second Circuit, by a Panel that included Judge Pooler, declined to reevaluate how to apply her decision in *Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011) if repudiations emanated from a non-author.

In his May 21, 2020, Petition For Panel Rehearing, filed after *Everly* was decided and based upon *Everly's* rationale and interpretation of how and when repudiations trigger the running of copyright's limitations period, Charles argued "Panel Rehearing Is Necessary To Consider This Case As An Authorship Dispute."  Charles's request for Panel Rehearing was promptly denied.  That is hardly surprising.  It is widely-accepted conventional wisdom the Second Circuit, like others, is reluctant to propogate intra-circuit conflict, and more reluctant still to reconsider its decisions based on authority from outside the Circuit.[5]  To the extent its rationale rests on the premise that circuit conflicts are more appropriately resolved by the Supreme Court, the Justices will be offered that opportunity here.

In *Everly*, the estate and children of deceased pop musician Phil Everly (collectively "Phil") – one of the famous Everly Brothers – asserted that Phil was a co-author of the valuable 1960 hit "Cathy's Clown."  The *Everly* Court held that an authorship claim – like an ownership

---

[5] *See generally,* Martin Flumenbaum and Brad S. Karp, *The Rarity of En Banc Review In the Second Circuit,* NEW YORK LAW JOURNAL (August 24, 2016) (annexed to the Declaration of Peter L. Skolnik as **Exhibit B**); Tillman J. Breckenridge, *Petitioning for Further Review After Losing a Federal Appeal*, IN-HOUSE DEFENSE QUARTERLY (Summer 2010) (annexed to the Declaration of Peter L. Skolnik as **Exhibit C**).

[7]

claim – accrues when the assertion of authorship is expressly repudiated, but with an authorship claim, the repudiation must be by another person claiming sole authorship.

The *Everly* Court recognized there are material distinctions between copyright authorship and copyright ownership. *Everly*, 958 F.3d at 449, 452. It distinguished repudiation of ownership from repudiation of authorship, noting for example that authorship status has different implications in copyright law unaffected by transferring ownership, including the right to terminate a transfer, which cannot be transferred by contract. 17 U.S.C. § 203(a). It opined, too, "Settling property rights is equally important, if not more important, in the context of authorship than ownership. Authorship status has important implications, such as determining the copyright's duration as well as the accrual of the renewal term." *Everly*, 958 F.3d at 452-453. Thus, as noted above, the *Everly* Court held that "an authorship claim will not accrue until the putative author's status as an author is expressly repudiated; actions repudiating ownership are irrelevant to begin the statute of limitations for an authorship claim." *Everly*, 958 F.3d at 453. *See also Everly*, 958 F.3d at 453-454:

> Regardless of whether repudiation of authorship is made privately, publicly or implicitly, it must come from someone asserting authorship of the work, not from a third party. *See Brownstein v. Lindsay*, 742 F.3d 55, 70 (3d Cir. 2014) ('[A] joint authorship claim arises and an author is alerted to the potential violation of his rights when his authorship has been expressly repudiated *by his co-author*.'

Emphasis in original.

The *Everly* Court considered the implications of several familiar prior decisions about species of repudiations – private, public and implicit, whether through absence of credit, non-payment of royalties, or otherwise (958 F.3d at 452) – including among many others Judge Pooler's decision in *Kwan v. Schlein*. But the Court's examination led it to sweep those cases aside: "All of these examples, however, concern claims for copyright ownership, which is not at issue in this case, which involves copyright authorship. . . ." *Id.*

[8]

It seems superfluous and a needless imposition on the Court's time to relate further details of *Everly's* underlying facts and further consideration of the Sixth Circuit's decision.[6] But if *Everly* tells us anything, it is that Defendants know with undeniable certainty that Charles's case is neither frivolous nor objectively unreasonable, and never was. Their Motion For Attorneys' Fees, however, is frivolous, objectively unreasonable, and in violation of Rule 11.

## CONCLUSION

This Court should deny Defendants' Motion for Attorneys' Fees, and order Defendants to show cause why their motion does not violate F.R.C.P. 11(b).


**Dated**: August 10, 2020

                                             **CLARK GULDIN**
                                                Attorneys at Law

                                           By: /s/ Peter L. Skolnik
                                           Peter L. Skolnik (PS 4876)
                                           Of Counsel
                                                20 Church Street, Suite 15
                                                Montclair, New Jersey 07042
                                                (973) 707-5346
                                                *Attorneys for Plaintiff*
                                                *Christian Charles*

---

[6] Predictably, *Everly* has led to a cluster of articles in the copyright bar press. A Google search of "*Everly v. Everly*" yields over 6.5 million results. One commentator observed "it can be difficult to reconcile many of the statute of limitations decisions in copyright ownership or authorship cases. The law in this area is a thicket." J. Alexander Lawrence, *Commentary: Claims Filing Time Issues On Copyright Ownership From Everly Bros. Case,* LAW JOURNAL NEWSLETTERS (July 2020) (annexed to the Declaration of Peter L. Skolnik as **Exhibit D**).

[9]