

November 13, 2020

Honorable Alison J. Nathan, U.S.D.J.
Honorable Katherine H. Parker, U.S.M.J.
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

   **Re: *Charles v. Seinfeld, et al.*; Docket No. 18-CV-1196 (AJN)(KHP)**

Dear Judges Nathan and Parker:

As a courtesy, I am attaching a copy of Christian Charles's Petition For Certiorari, docketed today in the United States Supreme Court.


Respectfully submitted,

<u>s/s Peter L. Skolnik, Esq.</u>
 Peter L. Skolnik (PLS 4876)
*Attorney for Christian Charles*

cc: Orin Snyder, Esq. (via ECF)

Search documents in this case: [ Search ]

## No. 20-661

| Title: | **Christian Charles, Petitioner**<br>v.<br>**Jerry Seinfeld, et al.** |
|---|---|
| Docketed: | November 13, 2020 |
| Lower Ct: | United States Court of Appeals for the Second Circuit |
| Case Numbers: | (19-3335) |
| Decision Date: | May 7, 2020 |
| Rehearing Denied: | June 10, 2020 |

| DATE | PROCEEDINGS AND ORDERS |
|---|---|
| Nov 09 2020 | Petition for a writ of certiorari filed. (Response due December 14, 2020) |
| | **Petition**    **Proof of Service** |

| NAME | ADDRESS | PHONE |
|---|---|---|
| Attorneys for Petitioner | | |
| Peter Laurence Skolnik<br>Counsel of Record | Clark Guldin<br>20 Church Street, Suite 15<br>Montclair, NJ 07042<br><br>pskolnik@clarkguldin.com | 9737075346 |
| Party name: Christian Charles | | |

No. 20-___

IN THE

# Supreme Court of the United States

---

CHRISTIAN CHARLES,

*Petitioner,*

v.

JERRY SEINFELD, COLUMBUS 81 PRODUCTIONS, INC., (AND NEW MATERIAL, LLC), COMEDIANS IN CARS, LLC, SONY PICTURES TELEVISION INC., NETFLIX, INC., EMBASSY ROW, LLC, EMBASSY ROW, MICHAEL DAVIES, CEO,

*Respondents.*

---

ON PETITION FOR WRIT OF CERTIORARI TO THE
UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

## PETITION FOR WRIT OF CERTIORARI

PETER L. SKOLNIK
  *Counsel of Record*
CLARK GULDIN
  ATTORNEYS AT LAW
20 Church Street, Suite 15
Montclair, NJ 07042
(973) 707-5346
pskolnik@clarkguldin.com

*Attorneys for Petitioner*

299544



COUNSEL PRESS

(800) 274-3321 • (800) 359-6859

## QUESTION PRESENTED

The Second Circuit affirmed the district court's application of the limitations period in 17 U.S.C. §507(b) to dismiss plaintiff Christian Charles's claims of copyright infringement and joint ownership of the pilot episode of the television series "Comedians In Cars Getting Coffee."  It was undisputed that defendant Jerry Seinfeld had written no part of the pilot, had made no other copyrightable contribution, and had obtained no written work for hire agreement from Charles.  When disputes arose about Charles's compensation, Seinfeld declared Charles was entitled to be compensated only as the pilot's director, licensed rights to create, produce and exploit additional episodes of the series to defendants SONY and NETFLIX, and neither compensated nor credited Charles.  The district court's dismissal of Charles's Complaint held that the dispute actually concerned "ownership" of the pilot, and that under Second Circuit law, Seinfeld's repudiations of Charles's ownership interest in the pilot accrued his authorship claims, and triggered the 3-year limitations period in § 507(b).  But within days of the Second Circuit's affirmance, the Sixth Circuit decided *Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020), which held, in direct conflict with the Second Circuit, that only a repudiation of copyright authorship could cause accrual of an authorship claim, and that "[a] person's authorship of a work can be legally called into question only if it is challenged by another person who herself claims authorship of the work in question."

**Only one question is presented:** Does a repudiation of copyright ownership in a work by one who is not an author of the work and has obtained no authorship interest in the work cause the author's infringement claim to accrue?

## LIST OF PARTIES

The parties below are listed in the caption.

## RELATED CASES

*Charles v. Seinfeld, et al.,* No. 18-CV-1196, U.S. District Court for the Southern District of New York.  Judgment entered September 30, 2019.

*Charles v. Seinfeld, et al.,* No. 19-3335, U.S. Court of Appeals for the Second Circuit.

Judgment entered May 7, 2020; Petition for Panel Rehearing denied June 10, 2020.

## TABLE OF CONTENTS

QUESTION PRESENTED ..........................................................i

LIST OF PARTIES ................................................................ii

RELATED CASES................................................................ii

TABLE OF CONTENTS........................................................ii

TABLE OF CITED AUTHORITIES ....................................... iii

TABLE OF APPENDICES....................................................iv

OPINIONS BELOW ............................................................ 1

STATEMENT OF JURISDICTION.......................................... 1

STATUTORY PROVISIONS INVOLVED ................................. 1

STATEMENT OF THE CASE ................................................ 3

REASONS FOR ALLOWANCE OF THE WRIT .......................... 9

I. REVIEW IS NECESSARY TO RESOLVE THE MISUNDERSTOOD OWNERSHIP/AUTHORSHIP DICHOTOMY........................................ 10

    A.    REVIEW IS NECESSARY BECAUSE THE SECOND AND SIXTH CIRCUIT DECISIONS ON THE SAME QUESTION OF FIRST IMPRESSION HAVE CREATED AN EXPLICIT CONFLICT .............. 11

    B.    REVIEW IS WARRANTED BECAUSE THE SECOND CIRCUIT DECISION HAS TROUBLESOME IMPLICATIONS FOR FUTURE CASES ............................................................... 15

CONCLUSION................................................................... 16

## TABLE OF CITED AUTHORITIES

CASES                                                                    PAGE

*Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020) .................................................... **passim**

*Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011) ........................................................ 14

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014)  .................................. 14

*Wilson v. Dynatone Publishing Co.*, 892 F.3d 112, 119 (2d Cir. 2018) ................... 14

STATUTES                                                                 PAGE

17 U.S.C. § 101 .............................................................................................. **1, 6, 7**

17 U.S.C. § 201(a) ........................................................................................ **2, 10**

17 U.S.C. § 203(a) ............................................................................................ 13

17 U.S.C. § 304(c) ............................................................................................ 13

17 U.S.C. § 507(b) ...................................................................................... **passim**

v

## TABLE OF APPENDICES

Appendix A – Opinion of the United States Court of Appeals for the Second Circuit issued as a Summary Order on May 7, 2020

Appendix B – Decision of the United States District Court for the Southern District of New York, Dated and filed September 30, 2019

Appendix C – Order of the United States Court of Appeals for the Second Circuit Dated June 10, 2020, denying Charles's Petition for Panel Rehearing

## OPINIONS BELOW

The initial opinion of the United States Court of Appeals for the Second Circuit was issued as a Summary Order on May 7, 2020. Petitioner's Petition for Panel Rehearing was denied by Order dated June 10, 2020. Those decisions affirmed the September 30, 2019 decision of the United States District Court for the Southern District of New York, reported at 410 F.Supp.3d 656 (S.D.N.Y. 2019). *See* Appendices A-C.

## STATEMENT OF JURISDICTION

This Court's jurisdiction is invoked under 28 U.S.C. § 1254(1).

The Second Circuit's opinion was rendered as a Summary Order on May 7, 2020 (*see* Appendix A). A Petition for Panel Rehearing was denied by Order dated June 10, 2020 (*see* Appendix C). On March 19, 2020, the Court extended the deadline for filing a Petition for A Writ of Certiorari.

## STATUTORY PROVISIONS INVOLVED

**Title 17 United States Code, Section 101.**

**Definitions.**

A "joint work" is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.

A "work made for hire" is—

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

**Title 17 United States Code, Section 201.**

**Ownership of copyright.**

(a) Initial Ownership.—
Copyright in a work protected under this title vests initially in the author or authors of the work.  The authors of a joint work are coowners of copyright in the work.

**Title 17 United States Code, Section 507.**

**Limitations on actions.**

(b) Civil Actions.—
No civil action shall be maintained under the provisions of this title

unless it is commenced within three years after the claim accrued.

## STATEMENT OF THE CASE

Christian Charles has enjoyed a 30-year career as an award-winning writer,

director and producer. (*Charles v. Seinfeld, et al.*, No. 19-3335 (2d Cir. Dec. 13,

2019) Joint Appendix (ECF No. 54) ("2D CIR. A") at 134; ¶2). For 18 of those years,

he collaborated on various projects with Seinfeld. (2D CIR. A-135; ¶¶4-5).

Among their collaborations, Charles conceived the idea for and directed

"*Comedian*" – a feature film documenting Seinfeld's attempt to develop a new

stand-up comedy act from scratch. (2D CIR. A-136; ¶¶9-10). At the conclusion of

work on "*Comedian*," Charles suggested to Seinfeld developing a show about two

comedians driving in a car and exploiting their comedic prowess in various free-

wheeling conversations. (2D CIR. A-137-138; ¶¶14- 16).

Charles worked up a pitch for such a show, and in 2002 presented it to

Seinfeld. (2D CIR. A-138; ¶16). Seinfeld declined the pitch; but Charles never let

go of the idea, and continued to collaborate with Seinfeld on many projects. (2D

CIR. A-139-140;¶19).

Almost a decade later, facing a downturn in his career, Seinfeld approached

Charles for help in creating a new show, which he described as involving himself

and another comedian  driving someplace in a car and talking, uninterrupted,

during the drive. (2D CIR. A-141; ¶21-23). Charles immediately reminded Seinfeld

this was the very idea he had pitched to him in 2002. Seinfeld neither disputed this

or corrected Charles. (2D CIR. A-141; ¶23).

Charles put together a treatment for the show that expressed his idea and

later registered this treatment under U.S. Copyright Reg. No. PA 2- 055-610.  (2D

CIR. A-158).

Charles's production company, mouseROAR, conducted all the pre-

production work to shoot a pilot episode (the"Pilot"), all without Seinfeld's

participation. (2D CIR. A-143; ¶32). During the actual shoot of the test/Pilot,

Charles shot most elements needed for a successful edit, and edited the film alone

with his editor in the edit suites of mouseROAR's office. (2D CIR. A-144; ¶¶35-36).

While Charles was completing a cut of the Pilot, Seinfeld called Charles and

told him he was no longer interested in pursuing the idea. He didn't think that it

worked and said "I don't even know what it is." (2D CIR. A-145; ¶37).  But since

Charles was already well down the path of producing an edit of the show, he decided

to complete it and share the final result with Seinfeld. He did so, and emailed it to

Seinfeld, who quickly responded that he had been wrong, that the idea did work

and had great potential, and he thanked Charles "for persevering." Seinfeld

emailed Charles, saying "I'm starting to see this now." (2D CIR. A-145-146; ¶¶38-

41).

Seinfeld and Charles agreed that while Seinfeld's representatives would

search for both sponsorship from a relevant brand and distribution through a non-

traditional digital distributor, Charles would continue developing the show, and mouseROAR would work on research, location scouting, car acquisition and other pre-production details. (2D CIR. A-146; 42-45).

Seinfeld made no copyrightable contributions to the Pilot that Charles had written, produced and directed.   Seinfeld has disputed none of those facts, including that he made no copyrightable contribution to *Comedians In Cars Getting Coffee* ("CICGC").

When a meeting was arranged with Michael Davies of Embassy Row, a boutique production company owned by SONY. (2D CIR. A-147; ¶¶46-47), Charles took the lead in explaining the creative and structural elements of the show. Davies immediately expressed interest in streaming the show on "Crackle," a burgeoning but somewhat unknown digital platform owned by SONY. (2D CIR. A-147; ¶49). After the meeting, Charles's representative, Lenny Beckerman, contacted Davies and Seinfeld's rep, George Shapiro, to negotiate Charles's deal. Both assured Beckerman they would make a deal and "take care of Christian." (2D CIR. A-148-149; ¶51- 55; 2D CIR. A-206; ¶5).

When Seinfeld learned that Charles expected a deal for his writing, directing and producing of the show, with a backend ownership interest in the show  (2D CIR. A-149; ¶55), he called Charles directly and expressed anger that Charles was attempting to negotiate his creative contribution and a backend deal. (2D CIR. A-149; ¶56). Seinfeld did not dispute that Charles had created and developed the Pilot, and who owned it was not addressed.  But Seinfeld expressed

outrage that Charles would receive anything other than a fee for directing individual episodes.  The call ended with Seinfeld yelling at Charles, calling him "ungrateful" and "out of line." (2D CIR. A-149; ¶56). A few days later, at Charles's request he and Seinfeld spoke again, but once again failed to see eye-to-eye. During this second call, Seinfeld insisted that Charles's contribution had been as a work for hire director (2D CIR. A-78; 2D CIR. A-31; ¶70).  There was no discussion about Charles's contributions as an author.  But Seinfeld implicitly recognized that whatever Charles owned, Seinfeld wanted it to be transferred to him.  Although under 17 U.S.C. § 101, creation of a work for hire requires that "parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire," no work for hire agreement was ever prepared or executed (2D CIR. A-31; ¶71; 2D CIR. A-112; ¶28).

When CICGC began streaming on Crackle, Seinfeld took the all-but-unprecedented step of arranging that episodes carry no screen credits – obscuring all visible indications of the show's origins, ownership and creative background. (2D CIR. A-154).

Although Charles received no royalty payments, Seinfeld always insisted there was no real money in the "Crackle" deal, so Charles reasonably believed that the show wasn't generating income for Seinfeld, but was intended instead merely to keep Seinfeld's name before the public. Charles concluded there was little to be gained by an expensive lawsuit against well-financed adversaries – an assumption later confirmed to him by Simon Smith, a mutual entertainment industry

associate and friend of both Charles and Seinfeld, who reported to Charles and Estonilo a conversation with Seinfeld in which Seinfeld claimed there was no money in CICGC. (2D CIR. A-154; ¶70; 2D CIR. A- 216; ¶6). Until Seinfeld's very public $100,000,000 sale to Netflix became known late in 2017, Charles had no reason to believe sufficient compensation was due to him to make litigation worthwhile.

On December 27, 2017, Charles wrote to Seinfeld, proposing that they "participate in a voluntary and confidential mediation" with a neutral third party. (2D CIR. A-167). On January 10, 2018, Seinfeld's attorney responded, asserting for the first time that Seinfeld had himself "conceived the concept for this show," and that Charles had been "asked to simply shoot the idea." (2D CIR. A-121).

Charles filed his initial complaint *pro se* a month later, on February 9, 2018. (2D CIR. A-2, #1). Defendants moved to dismiss on April 4, 2018, based on the statute of limitations. (2D CIR. A-4, #21-22). Before any opposition was filed, Charles found an attorney to file an amended complaint on June 22, 2018. (2D CIR. A-7; #46). Within a week, on June 28, 2018, Charles's attorney was forced out by defendants' assertion of a conflict. (See 2D CIR. A-7, #47). Defendants again moved to dismiss, arguing statute of limitations. (2D CIR. A-7-8, #49-50). After Charles retained his current counsel, leave to file a Second Amended Complaint was granted on August 31, 2018. The Second Amended Complaint added a joint copyright claim to the initial copyright infringement claim. (2D CIR. A-9, #69).[1]

---

[1]     Neither party has ever alleged he intended "their contributions be merged into inseparable or interdependent parts of a unitary whole" required to create a "joint work" under 17 U.S.C. § 101.

On September 17, 2018, Defendants moved to dismiss for the third time, yet again arguing statute of limitations. (2D CIR. A-10, #73-74).

Each of defendants' motions to dismiss rested on identical arguments that (i) the case was essentially about "ownership"; (ii) various alleged "repudiations" by Seinfeld triggered the running of the § 507(b) limitations period on what they insisted was an ownership claim; and (iii) since the ownership claim was time-barred, so was any infringement claim arising from "authorship."

Charles's December 13, 2019 opposition argued this case is about infringement of his *authorship* interests and he was an owner because under §201, copyright ownership "vests initially in the author or authors of the work" and he had never transferred that interest. Charles urged that in all previous cases holding that a repudiation triggered a copyright ownership claim, the defendants – unlike Seinfeld –themselves held ownership or authorship interests, but Seinfeld held neither. 2D CIR. A-244-245. The district court failed to acknowledge the distinction, accepted defendants' position that the case was about ownership, and agreed that Seinfeld's "repudiations" triggered a § 507(b) accrual over three years before Charles filed his first complaint. On September 30, 2019, it granted defendants' Motion To Dismiss. (2D CIR. A-269-277).

On October 16, 2019, Plaintiff filed a Notice of Appeal. (2D CIR. A-279). The initial opinion of the United States Court of Appeals for the Second Circuit, issued as a Summary Order on May 7, 2020, affirmed the district court's order. Like the district court, the Second Circuit panel rejected Charles's arguments that

the case was one of first impression because Seinfeld – holding neither an ownership nor authorship interest – was a stranger to the copyright, whose repudiations could not cause accrual of Charles's claims.  By Order dated June 10, 2020, Charles's May 21, 2020 Petition for Panel Rehearing was denied.  The Second Circuit's Mandate was issued on June 18, 2020.

<strong>REASONS FOR ALLOWANCE OF THE WRIT</strong>

Charles's production company created this graphic to crystallize the legal dilemma presented by this case.



## I.   REVIEW IS NECESSARY TO RESOLVE THE MISUNDERSTOOD OWNERSHIP/AUTHORSHIP DICHOTOMY.

The Court should grant the writ to clarify the distinctions between copyright ownership and copyright authorship because courts have blurred the line, or failed to recognize there is one. For example, the district court here stated Charles "contends that his lawsuit is about 'authorship,'" then added disdainfully "which is *somehow different* than 'ownership'" (2D CIR. A-273-274; emphasis added). Relatedly, the Second Circuit noted that Charles *disputed* the defendants' and district court's insistence "that his claim centers on ownership," but puzzlingly offered – as an example purportedly showing that Charles instead "consistently assert[ed] that ownership is a central question" – that Charles's "Memorandum in Opposition to Defendants' Motion to Dismiss had contended '[r]esolution of this case depends upon the answer to one simple question: who is the author of the [CICGC] Pilot'" (Appendix A; emphasis added).[2]

During oral argument, Charles counsel emphasized that under 17 U.S.C. § 201(a), absent any work for hire or other transfer, Charles owned the copyright in the material he created *because he was its author*, and that Seinfeld was neither an author nor an owner because he had written nothing, directed nothing, created

---

[2]   From the outset, Charles has insisted this case is about "authorship" as distinct from "ownership." The opening sentences of his October 27, 2018 Memorandum In Opposition To Defendants' Motion to Dismiss (2D CIR. A-224) declare "No matter how many times Defendants insist this case is simply about copyright ownership, wishing cannot make it so. Plaintiff Christian Charles is suing to establish his authorship of the first episode – the "Pilot" – of Defendants' successful internet streaming show "Comedians in Cars Getting Coffee" ("CICGC"). Charles continued to maintain the case is about "authorship" in his appeal and his application for panel rehearing, which explicitly argued "Panel Rehearing Is Necessary To Consider This Case As An Authorship Dispute."

nothing and thus owned nothing.[3]  It was Seinfeld's remoteness from ownership and authorship that distinguished Charles's case from any precedent – in the Second Circuit or elsewhere – and presented a case of first impression.  But a panel member insisted "Don't debate whether [Charles] was the owner; that's not the issue. . . It doesn't matter who was the owner." As he viewed the matter, Charles's claim accrued when an obvious dispute about ownership arose in 2012, and because Charles did not sue until 2018, he lost both his ownership and authorship interests.  This court should clarify under what circumstances an action brought by an author asserting infringement of her *authorship* interest should instead be treated as an *ownership* dispute for purposes of § 507(b) claim accrual.

### A.    REVIEW IS NECESSARY BECAUSE THE SECOND AND SIXTH CIRCUIT DECISIONS ON THE SAME QUESTION OF FIRST IMPRESSION HAVE CREATED AN EXPLICIT CONFLICT.

On May 4, 2020, three days before the Second Circuit issued its decision affirming the district court's dismissal, the Sixth Circuit decided *Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020).  Those two decisions both considered the same question of first impression: who has the legal authority to call into question the copyright interests of another.[4]  In a comprehensive analysis of cases concerning

---

[3]    To the extent Seinfeld ever challenged Charles's authorship while even implying authorship for himself, he only did so by means of an email his then-attorney sent to Charles on January 10, 2018 (2D CIR. A-121).  The email claimed only that Seinfeld had "conceived of the concept" of CICGC.  Charles sued a month later, on February 9, 2018.

[4]    In *Everly*, the estate and children of deceased pop musician Phil Everly – one of the famous Everly Brothers – asserted that Phil was a co-author of the valuable 1960 hit "Cathy's Clown."  The *Everly* Court held that an authorship claim – like an ownership claim – accrues when the assertion of authorship is expressly repudiated.  But with an authorship claim, *Everly* concluded the repudiation must be by another person claiming sole *authorship*.

accrual of claims under § 507(b), examination of species of acts constituting "repudiations," and careful noting and consideration of the distinctions between ownership and authorship, the Circuits reached opposition conclusions.

In direct divergence with the Second Circuit's application of § 507(b) in reliance on "repudiations" by Seinfeld – who held no authorship interest in CICGC and claimed no such interest until a month before Charles sued – the *Everly* Court held:

> [A]n authorship claim will not accrue until the putative author's status as an author is expressly repudiated; *actions repudiating ownership are irrelevant to begin the statute of limitations for an authorship claim* because repudiation of ownership is not adverse to the author's claim as such.

\*\*\*

> "Regardless of whether repudiation of authorship is made privately, publicly or implicitly, *it must come from someone asserting authorship of the work*, not from a third party.

\*\*\*

> "A person's authorship of a work can be legally called into question *only if it is challenged by another person who herself claims authorship* of the work in question.

*Everly*, 958 F.3d at 453-454.

The conflict between the Second and Sixth Circuit approaches to the ownership/authorship dichotomy is particularly acute in the oft-occurring context of evaluating claim accrual under §507(b).  Federal courts construing and applying §507(b) have established various principles regarding when a plaintiff's cause of action is considered to accrue and under what circumstances the running of the limitations period may be tolled.  A WESTLAW search quickly reveals over 500 federal cases dealing to one extent or another with interpretation of when a claim "accrues" for purposes of § 507(b).  The accrual issue can arise in actions asserting

among others simple infringement, wrongful copyright, copyright ownership and co-ownership disputes, termination disputes and disputes on computation of recoverable damages.

Further, the distinctions between copyright ownership and authorship explicated in *Everly* can and do arise in other settings. As *Everly* notes, ownership rights – which besides permitting the holder to sue for infringement, "entitle[] one to the 'exclusive right to do and authorize' uses of the work, including 'reproduc[ing] the copyrighted work,' 'prepar[ing] derivative works,' 'distribut[ing] copies ... of the copyrighted work to the public by sale or other transfer,' and, depending on the type of medium, 'perform[ing]' or 'display[ing] the copyrighted work publicly'" – "may be transferred in whole or in part." But "[i]n addition to the initial vesting of ownership rights, *authorship* status has other implications in copyright law unaffected by the transfer of *ownership*." (Emphasis added). These implications arise in the important copyright law frameworks of "duration," and "termination rights" under 17 U.S.C. § 203(a) and §304(c). *Everly*, 958 F.3d at 449.

Like the district court, the Second Circuit held that Seinfeld's various repudiations activated § 507(b). But if, as Charles has always maintained and the Sixth Circuit validated, none of Seinfeld's repudiations could trigger the 507(b) clock because Seinfeld — neither author nor owner — lacked the power to do so, then all of the rationales and justifications insisting that Seinfeld's repudiations should have alerted Charles to accrual of his claim are irrelevant.[5] *Everly* is

_____

[5]     As noted above, Seinfeld railed about "work for hire" agreements but never obtained one. He contrived to eliminate all screen credits on CICGC episodes to obscure Charles's involvement. And

unambiguous: as a non-author, Seinfeld lacked authority to repudiate Charles's ownership of the Pilot's copyright.  If Seinfeld's repudiations of ownership were irrelevant, Charles' claim for infringement of his copyright interest as author did not accrue, and the statute of limitations was not triggered by those repudiations.

The *Everly* Court considered the implications of several prior decisions about varieties of repudiations – private, public and implicit, whether through absence of credit, non-payment of royalties, or otherwise (958 F.3d at 452).  Among them was the Second Circuit's decision in *Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011), which both the district court and the appellate panel relied on in dismissing Charles's suit.  But the Sixth Circuit's examination led it to sweep those cases aside: "All of these examples, however, concern claims for copyright ownership, which is not at issue in this case, which involves copyright authorship. . . ." *Everly*, 958 F.3d at 452.  For the same reason, those cases should be swept aside here.

---

until the immense sale to Netflix, he denied he was receiving sufficient financial return to make any suit for Charles's proper share worthwhile.  During argument, the Second Circuit panel gave substantial weight to the fact that Charles failed to sue even though he received no royalties.  But until that very substantial sale to Netflix became known, Charles could not discern what if any compensation was due to him.  *See Wilson v. Dynatone Publishing Co.*, 892 F.3d 112, 119 (2d Cir. 2018) ("absence of royalty payments . . . does not show repudiation" when there "is no indication [plaintiff was] entitled to royalties"  More important, Justice Ginsburg's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) addressed any perceived injustice in the fact Charles held his fire: "It is hardly incumbent on copyright owners, however, to challenge each and every actionable infringement. And there is nothing untoward about waiting to see whether an infringer's exploitation undercuts the value of the copyrighted work, has no effect on the original work, or even complements it."  As the late copyright expert explained, "Section 507(b)'s three-year limitations period . . . allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle." *Petrella*, 572 U.S. at  665.

**B.     REVIEW IS WARRANTED BECAUSE THE SECOND CIRCUIT DECISION HAS TROUBLESOME IMPLICATIONS FOR FUTURE CASES.**

That Charles and Everly, coming within days of one another, both addressed the same question of first impression might suggest there is little need for this Court to pronounce the better rule. But because of the Second Circuit's recognized expertise in copyright law, its decision permitting a non-author effectively to repudiate the copyright interests of a bona fide author invites mischief. A stranger to a copyright like Seinfeld can publicly claim ownership of a work in which she holds authorship interest and after three years exploit the work without fear of suit.

Seinfeld could declare he owns the song "Yesterday," hope the owner of the Beatles' copyright wouldn't bother to invest the time and money to sue, and begin to license rights for derivative exploitation of the composition. Of course, celebrity and public profiles make the Seinfeld/Beatles scenario implausible. But the principle it illustrates is sound. A little-known author of a lesser known but potentially valuable work – for example a written work whose derivative uses in visual media can be far more profitable than the work itself – could lose ownership of his copyright to an unscrupulous thief if he is unwilling or unable to finance litigation. By adopting the Sixth Circuit holding that only "*another person who herself claims authorship*" can legally call authorship into question, the Court should close the door to this dodgy practice left open by the Second Circuit.

## CONCLUSION

For all the foregoing reasons, Petitioner Christian Charles respectfully

requests that the Supreme Court grant review of this matter.

Respectfully submitted,

PETER L. SKOLNIK
*Counsel of Record*

CLARK GULDIN
Attorneys at Law
20 Church Street
Suite 15
Montclair, NJ 07046
(973) 476-5625
pskolnik@clarkguldin.com

*Attorneys for Petitioner*

**APPENDIX**

19-3335-cv
Charles v. Seinfeld

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 7th day of May, two thousand twenty.

Present:     JOHN M. WALKER, JR.,
             ROSEMARY S. POOLER,
             GERARD E. LYNCH,
                     *Circuit Judges*.
_____

CHRISTIAN CHARLES,

                     *Plaintiff-Appellant*,

                 v.                                             19-3335

JERRY SEINFELD, COLUMBUS 81 PRODUCTIONS, INC.,
(AND NEW MATERIAL, LLC), COMEDIANS IN CARS, LLC,
SONY PICTURES TELEVISION INC., NETFLIX, INC.,
EMBASSY ROW, LLC,

                     *Defendants-Appellees*.

EMBASSY ROW, MICHAEL DAVIES, CEO,

                     *Defendant*.
_____

Appearing for Appellant:     Peter L. Skolnik, Clark Guldin, Montclair, N.J.

Appearing for Appellee:      Orin Snyder (David M. Kusnetz, *on the brief*), Gibson, Dunn &
                             Crutcher LLP, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Nathan, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

Appellant Christian Charles appeals from the September 30, 2019 judgment of the United States District Court for the Southern District of New York (Nathan, *J.*) granting defendants' motion to dismiss on the ground that Charles's copyright infringement claims were time-barred.

In February 2018, Charles sued comedian Jerry Seinfeld and other defendants in a copyright infringement action based on his claimed authorship of the television series, *Comedians in Cars Getting Coffee*, a show whose pilot episode Charles and his production company helped develop in 2011. To maintain an action for infringement, a plaintiff must establish (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (internal quotation marks and citation omitted). Claims under the Copyright Act must be brought "within three years after the claim [has] accrued." 17 U.S.C. § 507(b). When "ownership is the dispositive issue" in an infringement case and the "ownership claim is time-barred," the infringement claim itself is also time-barred, even if any allegedly infringing activity occurred within the limitations period. *Kwan*, 634 F.3d at 230; *see also Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016). An ownership claim accrues only once, when a reasonably diligent plaintiff would have discovered that ownership was disputed. *Kwan*, 634 F.3d at 228.

We conclude that the district court was correct in granting defendants' motion to dismiss, for substantially the same reasons that it set out in its well-reasoned opinion. The dispositive issue in this case is whether Charles's alleged "contributions . . . qualify [him] as the author and therefore owner" of the copyrights to the show. *Kwan*, 634 F.3d at 229. Charles disputes that his claim centers on ownership. But that argument is seriously undermined by his statements in various filings throughout this litigation which consistently assert that ownership is a central question. To take one example, the Memorandum in Opposition to Defendants' Motion to Dismiss stated that "[r]esolution of this case depends upon the answer to one simple question: who is the author of the [*Comedians in Cars Getting Coffee*] Pilot." As the district court explained, "authorship is merely one path to ownership of a copyright." App'x at 274. Charles asserts that he owns a copyright in the pilot episode of the show because he is its author; Seinfeld disputes that claim, contending that he conceived that show and that Charles did his work as a hired producer and director. Therefore, the central issue is clearly a dispute over ownership, as opposed to a dispute over whether subsequent iterations of the show make use of the material in the script for the pilot.

Charles's infringement claim is therefore time-barred because his ownership claim is time-barred. The district court identified two events described in the Second Amended Complaint that would have put a reasonably diligent plaintiff on notice that his ownership claims were disputed. First, in February 2012, Seinfeld rejected Charles's request for backend compensation and made it clear that Charles's involvement would be limited to a work-for-hire basis. *See Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 318 (2d Cir.

2013) (noting that a copyright ownership claim would accrue when the defendant first communicates to the plaintiff that the defendant considers the work to be a work-for-hire). Second, the show premiered in July 2012 without crediting Charles, at which point his ownership claim was publicly repudiated. *See Kwan*, 634 F.3d at 227. Either one of these developments was enough to place Charles on notice that his ownership claim was disputed and therefore this action, filed six years later, was brought too late.

We have considered the remainder of Charles's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 3 0 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Christian Charles,

                        Plaintiff,

          —v—                                          18-CV-1196 (AJN)

Jerry Seinfeld, *et al.*,                              OPINION & ORDER

                        Defendants.

ALISON J. NATHAN, District Judge:

This litigation concerns allegations that Plaintiff is the author of intellectual property related to the talk show *Comedians in Cars Getting Coffee*, produced and distributed by Defendants. Now before the Court is Defendants' motion to dismiss, Dkt. No. 73. For the reasons set forth below, the Court GRANTS the motion. The copyright claims are time-barred, and the Court declines supplemental jurisdiction over Plaintiff's remaining state law claims.

## I.    BACKGROUND

The following facts are drawn from Plaintiff's Second Amended Complaint ("SAC"), Dkt. No. 70, Exhs. 3-4. Since the 1990s, Plaintiff Christian Charles, a writer and director, and Defendant Jerry Seinfeld, a well-known comedian and actor, had worked together on various projects. SAC ¶ 18-26. During one of their collaborations, Charles allegedly suggested to Seinfeld that he should create a television show based on the concept of two friends talking and driving. *Id.* ¶ 22. Charles produced a treatment of the show, but Seinfeld ultimately decided not to proceed with the project. *Id.* ¶ 24.[1] Years later, in 2011, Seinfeld allegedly mentioned to

---

[1] In this context, the term "treatment" commonly refers to "a brief outline, in prose, describing the actions of a movie plot, indicating characters along the way with little or no dialogue . . . run[ning] no more than 25 pages." *Richlin v. MGM Pictures, Inc.*, 531 F.3d 962, 964 n.1 (9th Cir. 2008). It can include a "mixture of story and

Charles that he was considering a talk show about "comedians driving in a car to a coffee place and just 'chatting,'" as his next project. *Id.* ¶ 28. Charles claims he immediately noted that this was the same idea for which he earlier produced the treatment. *Id.* They then purportedly agreed to work together on the project. *Id.*

Charles then produced a new treatment which he claims captures the "look and feel" of *Comedians in Cars Getting Coffee. Id.* ¶ 32. Seinfeld liked the treatment, and Charles allegedly created a "synopsis, camera shot list with description and visual camera angles, and script," all of which he deems "the Script." *Id.* ¶ 36. In October 2011, Charles and his production company, mouseROAR, shot a pilot of the show with Seinfeld, settling on the name, *Comedians in Cars Getting Coffee. Id.* ¶ 36-44. According to the SAC, despite some initial reservations, Seinfeld decided he wanted to proceed with the project. *Id.* ¶ 45-47.

In Charles's telling, this is the point at which things go sour. Charles allegedly had a business understanding with Seinfeld that mouseROAR would provide all production services and was concerned when Seinfeld brought in a subsidiary of Sony Pictures Television that also did production work. *Id.* ¶ 62. In January and February of 2012, Charles claims that he communicated his request "for compensation and backend involvement" with the show. *Id.* ¶ 69. According to the SAC, Seinfeld "expressed outrage at the notion that Charles would have more than a 'work for hire' directing role." *Id.* ¶ 70. The SAC further states that Seinfeld characterized Charles as "ungrateful" and told Charles that he "should expect to be compensated through his directing fee." *Id.* They had another conversation along similar lines a few days later. *Id.* ¶ 73. During these conversations, Charles alleges that "Seinfeld did not claim authorship or ownership of the Pilot" even though "Charles had often reminded Seinfeld" that

staging." *Id.*

2

the idea for the show was Charles's. *Id.* Chares also contends that he never made any agreements with any of the Defendants regarding a "work-for-hire" arrangement or his alleged copyright interests. *Id.* ¶ 71-72.

Charles alleges that business partners and confidantes of Seinfeld assured Charles that he would "remain involved" and that the spat with Seinfeld would "blow over." *Id.* ¶ 74. As late as April of 2012, Charles claims that one Seinfeld representative left a voicemail stating that Charles and Seinfeld could still work together. *Id.* ¶ 76. Later that month, the SAC states that Seinfeld agreed to pay $107,734 for pre-production expenses that mouseROAR incurred. *Id.* ¶ ¶ 77-79. Charles also alleges that he and his representatives were engaged in discussions with the Sony subsidiary, regarding a potential deal and "backend compensation" as the show's "writer/director." *Id.* ¶ 80. Despite these conversations, Charles had no further involvement in the project, which became a successful web series that continues to produce new episodes. *Id.* ¶¶ 81, 96.

From 2012 to 2014, Charles claims that he "maintained a reasonable and good faith belief" that "Seinfeld would eventually acknowledge Charles's authorship and ownership and bring him in" on the show. *Id.* ¶ 86. By September of 2016, the SAC states that "Charles concluded that Seinfeld never intended to include Charles in the Project." *Id.* ¶ 91. That month Charles registered his treatment with the Copyright Office. *Id.* ¶ 92. In 2017, Netflix inked a lucrative new deal for the show to join their platform, leading Charles to contact Seinfeld. *Id.* ¶ 96-97. Seinfeld's lawyer responded, stating that Seinfeld was the creator and owner of the show. *Id.* ¶ 98. While Charles concedes that Seinfeld had previously claimed to be the "creator" of the show in the press, this was the first time that "Seinfeld or a representative of Seinfeld had directly made this claim to Charles." *Id.* In February of 2018, Charles filed this lawsuit against

Defendants, all of whom are involved in the production or distribution of *Comedians in Cars Getting Coffee*. *Id.* ¶¶ 1-3, 99. He brings claims for copyright infringement of the treatment, script, and pilot, as well as claims for joint authorship, injunctive relief, and several state law causes of action. *Id.* ¶¶ 100-71.

## II.    LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

While "the statute of limitations is ordinarily an affirmative defense that must be raised in the answer" it may nevertheless "be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). When evaluating 12(b)(6) motions based on the statute of limitations, the Court must continue to "assume [Plaintiff's] factual allegations are true" and apply the plausibility standard announced in *Twombly* and *Iqbal*. *Luv N' Care, Ltd. v. Shiboleth LLP*, Case No. 16-cv-3179, 2017 U.S. Dist. LEXIS 128060, at *15 (S.D.N.Y. Aug. 8, 2017).

## III.   DISCUSSION

Defendants argue that Plaintiff's copyright claims are time-barred. The Court agrees.

Civil actions under the Copyright Act have a three-year statute of limitations. *See* 17 U.S.C. § 507(b). To successfully sue for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, Inc., 499 U.S. 340, 361 (1991)). The Second Circuit has held that when "ownership is the dispositive issue" in an infringement claim and the "ownership claim is time-barred," then the infringement claim itself is time-barred, even if there had been infringing activity in the three years preceding the lawsuit. *Kwan*, 634 F.3d at 230; *see also Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016) (per curiam) ("Where the plaintiff's claims were rooted in her contested assertion of an ownership interest in the copyright, and that claim of ownership interest was time-barred because of the plaintiff's delay in suing, the plaintiff could not resuscitate the untimely claim by relying on claims against the defendants' continuing course of infringing publication after the plaintiff's ownership claim became time-barred.").

Plaintiff's infringement claim is squarely "rooted in [his] contested assertion of an ownership interest in the copyright." *Id.* The principle issue in this case is not the "nature, extent or scope, of copying." *Kwan*, 634 F.3d at 229. Rather, it is whether Charles's alleged "contributions . . . qualify [him] as the author and therefore owner" of the copyrights in *Comedians in Cars Getting Coffee*. *Id.*

Plaintiff does not truly dispute any of this. *See* Memorandum in Opposition to Defendants' Motion to Dismiss, Dkt. No. 85, at 1 ("Resolution of this case depends upon the answer to one simple question: who it the *author* of the [*Comedians in Cars Getting Coffee*] Pilot.") (emphasis in original). Instead, Plaintiff makes unavailing attempts to distinguish Second Circuit precedent on this issue. First, he contends that his lawsuit is about "authorship,"

which is somehow different than "ownership." However, authorship is merely one path to ownership of a copyright, and *Kwan* itself dealt with an authorship dispute. 634 F.3d at 229. Second, Plaintiff argues that *Kwan* and *Simmons* involved disputes over the plaintiff's status as an owner but not defendant's status. This is not a material distinction, because a non-owner defendant can prevail in an infringement suit so long as the plaintiff is also not the owner. Moreover, the plaintiff in *Kwan* claimed that she, and not the defendant, was the sole author, even though the defendant had been listed as the author on the work in question. *Id.* at 227; *see also id.* at 229 ("[Plaintiff] cannot recover unless she was the sole author"). This set of facts largely mirrors the present case.

Having determined that "ownership forms the backbone of the 'infringement' claim," the relevant inquiry is whether it is evident from the face of Plaintiff's Second Amended Complaint that his ownership claim is time-barred. *Id.* at 229. The ownership claim "accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Id.* at 228 (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). Furthermore, "any number of events can trigger the accrual of an ownership claim, including an express assertion of sole authorship or ownership." *Kwan*, 634 F.3d at 228. For several reasons, the SAC describes assertions made over three years before this lawsuit was filed that were sufficiently express as to put a reasonably diligent plaintiff on inquiry.

First, the SAC alleges that in 2011 Seinfeld twice rejected Charles's request for backend compensation and made it clear that Charles's only involvement was to be on a "work-for-hire" basis. In *Wilson v. Dynatone Publishing Co.*, the Second Circuit explained that a defendant who, in a copyright registration, "assert[ed] ownership *as a work for hire* would effectively repudiate Plaintiffs' claim" of copyright ownership, if the plaintiffs were put on notice of the registration.

6

892 F.3d 112, 119 (2d Cir. 2018) (emphasis in original). Likewise, Seinfeld restricting Charles

to a "work-for-hire" directing role necessarily contradicted any idea that Charles was the owner

of intellectual property in the show. Even if all inferences are drawn in favor of Charles, a

reasonably diligent plaintiff would have understood that Seinfeld was repudiating any claim of

ownership that Charles may have. That Seinfeld did not expressly claim ownership for himself

during these conversations does not matter. It is sufficient that Charles's claim was rejected. *See*

*Mahan v. ROC Nation, LLC*, 634 F. App'x 329, 331 (2d Cir. 2016) (statute of limitations barred

copyright infringement claim when defendant "had long ago expressly repudiated [plaintiff's]

ownership claims"); *Simmons*, 810 F.3d at 116 (copyright infringement claim was time-barred

when "more than three years prior to [plaintiff's] filing of his suit, [defendant] had made clear to

[plaintiff] that he rejected [plaintiff's] assertion of an interest in the copyright").

      Charles claims that statements made by associates of Seinfeld in the aftermath of the two

phone calls diluted or muddled the repudiation. However, as the SAC makes explicit, these

statements relate only to whether Charles "would remain involved in the Project." SAC ¶ 74; *see*

*also id.* ¶ 76 ("It's not over; Christian and Jerry can still work together"). Even drawing all

inferences in favor of Charles, these remarks do not plausibly contradict Seinfeld's statements

that Charles would not be "involved" on more than a work-for-hire basis.

      Second, Seinfeld and other Defendants went on to produce and distribute the show

without giving any credit to Charles. In *Kwan*, the fact that the book in question was published

without crediting Plaintiff as an author was enough to put her on notice that her claim of

authorship was repudiated. 634 F.3d at 227, 229. The SAC states that from 2012 to 2014,

Charles believed that "Seinfeld would eventually acknowledge Charles's authorship and

ownership and bring him in on the Project." SAC ¶ 86. Even interpreting the SAC most

favorably to Charles, it clearly alleges he was aware that the show was being produced and that he was not being credited on it.

Because Charles was on notice that his ownership claim had been repudiated since at least 2012, his infringement claim is time-barred. His joint authorship claim is also time-barred for the same reasons. And his request for an injunction fails, because it was premised on Charles' assertion that he is the sole owner. Because Charles has had multiple opportunities to amend his complaint in the face of Defendants' timeliness arguments and has not made any further amendment requests, these claims are dismissed with prejudice. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' *see* Fed. R. Civ. P. 15(a), no court can be said to have erred in failing to grant a request that was not made."); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (dismissal with prejudice is proper when "a party has been given ample prior opportunity to allege a claim"); *see also* Individual Rule 3.F ("Non-moving parties are on notice that declining to amend their pleadings to timely respond to a fully briefed argument in the motion to dismiss may well constitute a waiver of their right to use the amendment process to cure any defects that have been made apparent by the briefing.").

The Court further declines supplemental jurisdiction over the remaining state law claims. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (noting that "when the federal claims are dismissed the 'state claims should be dismissed as well'") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (explaining that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point

8

toward declining jurisdiction over the remaining state-law claims").

The Court finds no reason to deviate from that normal practice here. Because "the Court has not yet invested resources necessary to resolve [these] claims," and because "[t]he extensive discovery already taken is likely sufficient to enable [these] claims to be evaluated in state court without any additional discovery," the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 393-94 (S.D.N.Y. 2013). They are dismissed without prejudice.[2]

## IV.   CONCLUSION

For the reasons stated above, the Court hereby GRANTS Defendants' motion to dismiss. The federal claims are dismissed with prejudice and the state law claims dismissed without prejudice. Because the Court resolves these motions on the papers, Defendants' request for oral argument, Dkt. No. 89, is hereby DENIED. The Clerk of Court is respectfully directed to terminate Dkt. Nos. 73, 89 and to close this case.

SO ORDERED.

Dated: September 30, 2019

New York, New York

ALISON J. NATHAN
United States District Judge

---

[2] After submitting briefing on this motion, the parties became engaged in a dispute regarding the proper procedural vehicle for Defendants to challenge Plaintiff's attachment of various declarations and affidavits to his opposition memorandum. *See* Dkt. Nos. 91, 92. Because these declarations and affidavits would not affect the Court's analysis if they were considered, the Court declines to address the parties' procedural arguments.

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT
_____

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of June, two thousand twenty,

Before:

JOHN M. WALKER, JR.,
ROSEMARY S. POOLER,
GERARD E. LYNCH,
*Circuit Judges.*

_____

Christian Charles,

        Plaintiff - Appellant,

v.

Jerry Seinfeld, Columbus 81 Productions, Inc., (and New Material, LLC), Comedians in Cars, LLC, Sony Pictures Television Inc., Netflix, Inc., Embassy Row, LLC,

        Defendants - Appellees,

Embassy Row, Michael Davies, CEO,

        Defendant.

_____

**ORDER**
Docket No. 19-3335

Appellant having filed a petition for panel rehearing and the panel that determined the appeal having considered the request,

IT IS HEREBY ORDERED that the petition is DENIED.

For The Court:
Catherine O'Hagan Wolfe,
Clerk of Court

