```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/17/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTIAN CHARLES,

                         Plaintiff,

       -against-

JERRY SEINFELD, ET AL.,

                         Defendants.

**REPORT AND RECOMMENDATIONS ON DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

**18-CV-1196 (AJN) (KHP)**

TO:    THE HONORABLE ALISON J. NATHAN, UNITED STATES DISTRICT JUDGE
FROM:  KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

      This case involves a dispute as to authorship and ownership of the copyright to the pilot episode of *Comedians in Cars Getting Coffee*, now a talk show on Netflix. The comedian Jerry Seinfeld is the host/star of the show. Plaintiff Christian Charles is an award-winning writer, director and producer who has an 18-year working relationship with Seinfeld. Charles claims the theme of the talk show was his idea and that he produced treatments for the initial episode, including a synopsis, camera shot list with description and visual camera angles and script. Charles and his production company also shot a pilot of the show. Based on the pilot, Seinfeld decided to proceed with the project, which first was produced as a web series and later, in 2017, broadcast on Netflix.[1]

---

[1] Charles produced a treatment of the show in the 1990s but Seinfeld decided not to proceed with the project at that time. Then, years later, in 2011, Seinfeld mentioned to Charles that he was considering the idea for a talk show and agreed to work with Charles on the project. Charles produced a new treatment for the show and created a "synopsis, camera shot list with description and visual camera angles, and script. Charles's production company then shot a pilot of the show with Seinfeld, settling on the name, *Comedians in Cars Getting Coffee*." *Charles v. Seinfeld*, 410 F. Supp. 3d 656, 657 (S.D.N.Y. 2019), *aff'd*, 803 Fed. App'x 550 (2d Cir. 2020). The relationship between Charles and Seinfeld soured over Charles's request for compensation and backend

1

Charles received a payment from Seinfeld in the Spring of 2012 for pre-production expenses associated with shooting the pilot but was not given any credit for the pilot or royalties associated with the show. From the outset, Charles requested backend compensation as the show's writer/director, but this request was rejected. Instead, Seinfeld indicated that Charles's contribution was work-for-hire directing, although there was no written work-for-hire agreement and Charles was not an employee of any Seinfeld-related entity. Between 2012 and 2014, Charles continued to negotiate for credit and royalties with Sony, who was producing the show on the web. These discussions ended without any additional credit or money. Charles claims that by 2016 he realized that Seinfeld was excluding him from the project. In September 2016, Charles filed for copyright registration, within weeks after Seinfeld also filed for copyright protection in the first episode.

On February 2, 2018, Charles, in a *pro se* capacity, filed this suit for copyright infringement. Defendants filed a motion to dismiss the Complaint on April 4, 2019. (ECF No. 21.) Charles then retained counsel who filed an Amended Complaint in lieu of opposing the motion. (ECF No. 46.) Defendants moved to dismiss that complaint. (ECF No. 49.) On the same day, Charles's first counsel moved to withdraw to eliminate allegations of conflict arising out of his past representation of a Sony entity. (ECF Nos. 47-48.) This necessitated Charles's engaging new counsel. Once engaged, his current counsel requested and was granted permission to file a Second Amended Complaint in lieu of opposing the motion to dismiss. (ECF No. 69.) Defendants then moved to dismiss that complaint. (ECF No. 73.) After the

---

involvement with the show and Seinfeld contending that Charles would have nothing more than a "work-for-hire" directing role. *Id.* at 657-58.

motion was fully briefed, the Honorable Alison J. Nathan granted the motion in its entirety on the ground that the claims were barred by the statute of limitations.[2] (ECF No. 106.) Plaintiff appealed that decision. (ECF No. 112.) The Second Circuit affirmed Judge Nathan's decision. *Charles v. Seinfeld*, 410 F. Supp. 3d 656 (S.D.N.Y. 2019), *aff'd*, 803 Fed. App'x 550 (2d Cir. 2020). Plaintiff moved for a hearing *en banc*, but that request was denied. Charles has filed a petition for a writ of certiorari to the United States Supreme Court. (ECF No. 138.) The crux of Charles's argument is that his claims for authorship and infringement are not time-barred because the statute of limitations can only be triggered by someone who claims authorship and, based on the facts, Seinfeld has no claim to authorship.

Defendants have now moved for an award of their costs, including attorneys' fees, incurred in defending this action to a successful conclusion.[3] (ECF No. 123.)

## LEGAL STANDARD FOR AWARD OF FEES UNDER THE COPYRIGHT ACT

Section 505 of the Copyright Act provides for an award of costs and attorneys' fees, in the Court's discretion, to the prevailing party. 17 U.S.C. § 505. The United States Supreme Court has held that the standard governing an award of attorneys' fees under Section 505 is the same for prevailing plaintiffs and prevailing defendants. *Fogerty v. Fantasy*, 510 U.S. 517, 534 (1994). While there is no precise formula for awarding fees, when exercising their discretion, courts should consider various factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in

---

[2] Plaintiff's state law claims were dismissed without prejudice because the Court elected not to exercise supplemental jurisdiction. Therefore, these claims were not resolved on the merits. *Charles*, 410 F. Supp. 3d at 661.

[3] Defendants filed a motion for their fees and costs after Judge Nathan granted the motion to dismiss, but that motion was dismissed without prejudice pending outcome of the appeal. (ECF Nos. 109, 120.)

particular circumstances to advance considerations of compensation and deterrence." *Id*. at 534 n.19. Most recently, in *Kirtsaeng v. John Wiley & Sons, Inc.*, the Court instructed that when evaluating a motion for fees and costs under Section 505, courts must assess "all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." 136 S. Ct. 1979, 1986 (2016). These goals are to "encourag[e] and reward[] authors' creations while also enabling others to build on that work." *Id*. The Court reiterated the factors set forth in *Fogerty* and elaborated that a court should give "substantial" but not "dispositive" weight to the third factor—"whether the losing party advanced an unreasonable claim or defense." *Id*. at 1989.

## ANALYSIS

1. **Whether Defendants are Prevailing Parties**

In this case, there is no dispute that Defendants are the prevailing parties. Defendants successfully secured dismissal of this case on the ground that the claims were time-barred. Plaintiff appealed the decision dismissing the case, but the Second Circuit affirmed dismissal. *Charles v. Seinfeld*, Fed. App'x 550 (2d Cir. 2020). Plaintiff then requested a hearing *en banc*, which the Second Circuit denied.

2. **Whether Plaintiff's Claims Were Frivolous**

In assessing all of the circumstances of this case, I first address whether Plaintiff's case was frivolous. The facts leading up to and forming the basis for this suit are relevant to this determination, as is the legal basis for it. Charles had an 18-year relationship as a collaborator with Seinfeld. According to Charles, Seinfeld came to Charles for help with his career after coming off an unsuccessful movie and television show. Charles contends that he came up with

4

the idea of *Comedians in Cars Getting Coffee* and is the author of the copyright, the idea and initial treatment of the show reflected in the pilot.  He was not an employee of Seinfeld or any Seinfeld-related entity and no work-for-hire arrangement was ever executed concerning creation of the pilot.  Thus, there was a factual basis for Charles to claim authorship and ownership of the pilot.

The legal issue here is whether Charles sat on his rights to claim authorship thereby waiving or abandoning his ownership rights in the initial copyright term.  Charles argues that authorship cannot be transferred and that the statute of limitations for an authorship claim cannot be triggered by a person with no legitimate claim to authorship.  He cites the recent Sixth Circuit decision in *Everly v. Everly* in support of his legal argument.  958 F.3d 442 (6th Cir. 2020) (reversing dismissal on summary judgment; holding that fact issues existed on issue of whether songwriter repudiated his brother's co-authorship).

*Everly* involved a dispute about authorship and rights in a hit song performed by the Everly brothers.  Initially the brothers were credited as co-authors, and later, only one brother was treated as an author.  The dispute boiled to a head when heirs of one brother sought to reestablish rights in the song.  The court grappled with whether the suit was time-barred and ultimately found that fact issues precluded resolution of the timeliness issue on summary judgment.  *Id.* at 457.  The court recognized that authorship of a copyright cannot be transferred by contract, whereas ownership can be.  It also noted that a copyright's renewal term automatically vests in the author after expiration of the original term unless renewal is contractually transferred with ownership in the initial term.  *Id*. at 449; *see also* 17 U.S.C. § 304(a) (authors who are living when original 28-year copyright term expires are entitled to

renewal and extension of copyright in work for further term of 67 years).  Additionally, it recognized that authors possess termination rights that allow them to terminate the exclusive or nonexclusive grant of a transfer or license of copyright.  *Everly*, 958 F.3d at 449; *see also* 17 U.S.C. §§ 203(a), 304(c).  With regard to the statute of limitations, *Everly* held that a claim for authorship must be brought within three years of an express repudiation of authorship by someone claiming to be the author or co-author, as distinguished from a third party.  *Everly*, 958 F.3d at 452-453.  Following the Second Circuit's test, it found there are three types of repudiation of authorship and/or ownership:  direct repudiation, publication of the work without credit, and indirect or implicit repudiation through the non-receipt of royalties.  *Id*. at 452; *see also Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 118 (2d Cir. 2018); *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013).

The facts in *Everly* provided ample room for dispute as to whether the brothers were co-authors of song.  The Court found that the issue of authorship had to precede any determination of the statute of limitations because of its view that only an author can repudiate authorship.  And, the question of authorship was not accompanied by a corresponding ownership claim, as in most copyright cases.  Ultimately, the court followed the Second Circuit's test for what type of repudiation can trigger the statute of limitations for a stand-alone authorship claim, making a distinction between authorship and ownership that has not been expressly addressed by the Second Circuit.  *Everly* does not create a split on the issue of the type of repudiation that can trigger accrual of a copyright claim.

Second Circuit case law makes clear that an author can abandon rights in ownership during an initial copyright term by sitting on his rights.  *See Kwan v. Schlein*, 634 F.3d 224, 229

(2d Cir. 2011) (putative author's claim repudiated by publication of book without listing her as author). In *Kwan*, the plaintiff was an editor of a book who had sought credit as a co-author. The Second Circuit found that the claim was time-barred because the writer and publisher had repudiated Kwan's claims of co-authorship more than three years prior to bringing suit. *Kwan* is factually distinguishable from the instant case because Charles contends that Seinfeld is not an author and has no claim to authorship, whereas in *Kwan* there was no dispute that the writer who had repudiated the plaintiff's claim was indeed an author of the book. Other Second Circuit cases similarly do not involve the precise factual scenario here, where the individual who is repudiating another's claim to authorship/ownership is alleged to have no rights in the work. *See Dynatone Publ'g Co.*, 892 F.3d at 118 (plaintiff musicians claimed authorship and ownership of renewal term copyrights in a musical composition and sound recording of a song and that defendant music publishing companies improperly collected royalties from the later sampling of the song by famous artists Justin Timberlake and J. Cole; Second Circuit held District Court erred in concluding that repudiation of claims with respect to the original terms constituted a repudiation of the renewal terms, and that abandonment of ownership during initial term does not extinguish authors' rights in renewal term); *Gary Friedrich Enters.*, 716 F.3d at 317 (Defendant Marvel Characters, Inc. sought dismissal of comic creator's ownership of renewal term copyright; court concluded that notice of repudiation in initial copyright term did not conclusively demonstrate that Marvel was the author or had the right to register the renewal term).

      Nevertheless, both the District Court and the Second Circuit in this case did not view the factual distinction asserted by Charles as relevant to the statute of limitations analysis. That

7

Seinfeld allegedly has no bona fide claim to authorship was irrelevant to the issue of ownership of the copyright, and ownership was deemed to be the crux of Charles's claim, as he was seeking royalties from the Netflix deal. What was important was that Seinfeld *claimed* authorship (regardless of whether this claim was bona fide), Charles admitted that Seinfeld refused to give Charles credit or backend compensation in 2012, Seinfeld excluded Charles from production of the show with Sony, and Charles's non-receipt of royalties—all of which the District Court and the Second Circuit said should have triggered far prompter action by Charles to protect his asserted authorship and/or ownership rights in the initial copyright term. Implicit in the decisions was the recognition that the statute of limitations can be triggered by repudiation by someone alleged to be a non-author but who nonetheless is claiming authorship and ownership rights, irrespective of the veracity of that claim.

While the Sixth Circuit does appear to endorse the idea that authorship needs to be resolved prior to determining whether an alleged non-author's repudiation can jeopardize an author's authorship rights by triggering the statute of limitations on a claim, *Everly* does not necessarily hold that in the circumstances of this case, which involved claims of ownership rights (not just authorship rights), the statute of limitations issue could not be decided on the pleadings. In other words, this Court cannot say that there is a definitive split in the Circuits as Plaintiff suggests, because unlike *Everly*, this case involves both authorship and ownership rights. However, this Court does not find the legal claim to be frivolous where Plaintiff was seeking to create a distinction in the law based on the individual/entity who is repudiating authorship. And, the fact that the Sixth Circuit in *Everly* deemed the identity of the individual/entity who is repudiating to be important to the issue of who can repudiate

8

authorship for purposes of triggering the statute of limitations means that the argument Plaintiff makes is not frivolous.

A case is frivolous where it lacks a basis in fact and law. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Plaintiff's counsel is an experienced litigator with strong knowledge of copyright law. Here, assuming the truth of the facts pleaded in the complaint, there was a factual basis for Charles's claim of authorship and a somewhat weaker factual basis for his claim that Seinfeld did not repudiate Charles's ownership by claiming sole authorship/ownership more than three years prior to the filing of the complaint. Specifically, Plaintiff provided detailed facts related to his development of the idea for the show and creation of the pilot episode that gave him claim to authorship and facts to support his claim that Seinfeld did not make contributions to the pilot that would entitle Seinfeld to claim authorship or co-authorship. He also contended there was no work-for-hire agreement and provided facts to support his contention that he did not understand Seinfeld to have repudiated Charles's authorship or ownership until 2016. In sum, though Plaintiff lost his case, the case was factually arguable and thus not frivolous. *See Arclightz and Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01-cv-10135 (SAS), 2003 WL 22434153, at *3 (S.D.N.Y. Oct. 24, 2003) (mere fact that defendant prevailed "does not necessarily mean plaintiff's position was frivolous or objectively unreasonable"); *Ann Howard Designs, L.P. v. Southern Frills, Inc.*, 7 F. Supp. 2d 388, 390 (S.D.N.Y. 1998) (recognizing that unsuccessful claim not necessarily objectively unreasonable). And, as noted above, there is a non-frivolous basis for Plaintiff to have sought a modification, clarification or reversal of existing law. Therefore, this factor weighs against an award of fees under Section 505.

### 3. Whether Plaintiff's Claims Were Objectively Unreasonable

Whether the claims were objectively unreasonable is another question. An objectively unreasonable claim is not necessarily frivolous or made in bad faith. *Matthew Bender & Co. v. West Publ'g. Co.*, 240 F.3d 116, 122 (2d Cir. 2001). It is one that is "clearly without merit." *Diplomatic Man, Inc. v. Nike, Inc.*, No. 08-cv-139, 2009 WL 935674, at *3 (S.D.N.Y. Apr. 7, 2009). Said another way, it is "whether the factual and legal support for plaintiff's position was so lacking as to render its claim . . . objectively unreasonable." *Proctor & Gamble Co. v. Colgate-Palmolive Co.,* No. 96-cv-0123, 1999 WL 504909, at *2 (S.D.N.Y. July 15, 1999); *see also CK Co. v. Burger King Corp.*, No. 92-cv-1488, 1995 WL 29488, at *1 (S.D.N.Y. Jan. 26, 1995) ("The infirmity of the claim, while falling short of branding it as frivolous or harassing, must nonetheless be pronounced" to be deemed objectively unreasonable).

Courts have found that copyright claims are not objectively unreasonable when the claims withstand summary judgment and plaintiffs prevailed in eliminating affirmative defenses and obtaining preliminary injunctive relief. *See, e.g.*, *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, No. 96-cv-4126, 2004 WL 728878 (S.D.N.Y. April 6, 2004). Even in cases dismissed at the pleading stage, courts have found that the claim was not objectively unreasonable. For example, in *Canal+ Image UK Ltd. v. Lutvak*, the plaintiff brought copyright infringement and contract claims against a defendant whose Broadway musical allegedly infringed on plaintiff's film. 792 F. Supp. 2d 675 (S.D.N.Y. 2011). The court dismissed the complaint on defendants' motion pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment on the ground that no reasonable jury could find the works at issue to be substantially similar and that the contract claim was preempted by the Copyright Act. The

reasonableness of the plaintiff's infringement claims turned on the reasonableness of its assertion of rights to what the film's creators added to the novel from which it was adapted and similarities between the film and musical. The court acknowledged that it ultimately ruled in defendants' favor but stated that it "did not reach [its] conclusion so easily that future courts should be spared the effort." *Id*. at 683. In other words, the court admitted that it struggled in reaching the result, ultimately finding no substantial similarity. The court stated that "a court should not award attorneys' fees where the case is novel or close because such a litigation clarifies the boundaries of copyright law." *Id*. (quoting *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001); *see also Matthew Bender & Co.*, 240 F.3d at 122 (citing with approval *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) ("When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful claim.")).

Courts in this District have found copyright claims to be objectively unreasonable when they were dismissed on statute of limitations grounds. *See, e.g.*, *Mahan*, 634 Fed. App'x 329 (upholding fee award of 90% of lodestar amount in copyright claim that was dismissed on statute of limitations grounds; claim was brought ten years too late); *Sid Bernstein Presents, LLC v. Apple Corps Limited*, No. 16-cv-7084 (GBD), 2018 WL 1587125 (S.D.N.Y. Mar. 29, 2018) (awarding $83,417.45 in fees and $1,159.01 in costs in copyright case dismissed on Rule 12(b)(6) motion; claims were objectively unreasonable within the meaning of Section 505

because the contracts governing the parties' rights were clear and unambiguous and the claims were plainly time-barred).  However, this case differs from the ones cited above because Plaintiff did not wait as long to sue, attempted to resolve his claims without litigation, and appears to have had a factual basis for claiming rights in the pilot.  At the same time, Plaintiff is not an unsophisticated actor.  He has been in the business a long time and is an award-winning writer, director and producer.  He collaborated with Defendant Seinfeld and was well aware that he was not being attributed as the author or owner of *Comedians in Cars Getting Coffee* in 2012.  Rather than immediately bringing suit and allowing the series to continue to be published without giving him credit, it was not until 2018 when he brought this action.  As the Second Circuit has recognized, a primary purpose of the Copyright Act is to "encourage origination of creative works by attaching enforceable property rights to them." *Matthew Bender & Co.*, 240 F.3d at 122.  The three-year statute of limitations and express repudiation doctrine are designed to further the goals of the statute and resolve property rights in a timely fashion.  While Plaintiff may have indeed formulated the idea for the now successful series, there were many signals from Seinfeld that Charles was not going to be credited.  Charles may have thought he would work things out with Seinfeld given their 18-year relationship and may have desired to resolve things privately; but it was clear early on that Seinfeld was proceeding without him, especially when Sony came into the picture and produced the web series without Plaintiff's involvement.

In the absence of the Sixth Circuit's *Everly*, given the well-developed case law in this Circuit regarding the type of conduct that triggers claim accrual on a copyright ownership/authorship claim, this suit would likely be deemed objectively unreasonable for

purposes of Section 505 based on Plaintiff having waited so long to file his suit. However, the legal theory that Plaintiff focused on—that a stranger to a copyright cannot repudiate authorship—is not objectively unreasonable, because the Sixth Circuit has so held in *Everly*. Plaintiff sought to create the extra step in this Circuit's copyright claim accrual case law that courts must view not just the *type of conduct* claimed to be a repudiation, but also the validity of the repudiator's claim of authorship, in determining when a copyright claim accrues. While this argument did not find traction with the District Court or the Second Circuit, this Court cannot say it was an objectively unreasonable theory when another Circuit has deemed it an important aspect of a copyright claim accrual analysis. Thus, this factor, which as noted above, the law views as a "substantial" factor in the analysis, does not weigh in favor of an award of fees.

4. **Plaintiff's Motivation for the Suit**

The next factor to consider is motivation. Defendants assert that Plaintiff was motivated by bad faith, claiming authorship only when it was clear that substantial money could be earned from *Comedians in Cars Getting Coffee* when it was picked up by Netflix, relying heavily on *Porto v. Guirgis*, 659 F. Supp. 2d 597 (S.D.N.Y. 2009). In *Porto*, the court dismissed copyright infringement claims on a motion to dismiss or, in the alternative, on summary judgment, and awarded the prevailing defendant attorneys' fees of approximately $10,000. *Id*. Porto self-published a novel called *Judas on Appeal* in February 1999. The novel was sold on Amazon.com and generated enough interest to be the subject of an article in the *New York Daily News* in February 1999. The allegedly infringing play, *The Last Days of Judas Iscariot*, was performed at the Public Theater in New York City in March 2005. It was written by

Stephen Adly Guirgis, a Pulitzer Prize winning author, and directed by Philip Seymour Hoffman, a famous actor.

*Porto* is distinguishable from this case. Porto had no relationship with the defendants, whereas in this case, Charles has an 18-year relationship with Seinfeld and collaborated with Seinfeld on many projects. Moreover, in this case, Seinfeld did not dispute that Charles had a role in the creation of the project. Thus, Charles cannot be said to have pursued Seinfeld merely because he was a celebrity target. Seinfeld was a target because of the specific history of the creation of *Comedians in Cars Getting Coffee* and Charles's own role in its creation. And, unlike in *Porto*, Charles raised the issue privately with Seinfeld *right away* and attempted to negotiate backend rights with Sony. In *Porto*, the plaintiff waited after the play was no longer showing to raise an issue and bring suit. However, it is true that Charles did not promptly bring a legal action. After it was clear he was not going to receive any kind of royalty from Sony, he sat on his purported rights and waited too long to bring a claim in court, only bringing it when it was apparent that the show was going be shown on Netflix. Perhaps Charles decided it was not worth pursuing his claim in 2012 through 2014 if it was not going to result in any money; however, if this was the motivation for his decision, his decision turned out to be foolish in hindsight. Thus, the extent to which Plaintiff looked for arguments to avoid the statute of limitations hurdle he faced is not surprising. Finally, the claims in *Porto* were frivolous. The Court noted that the "differences between the plaintiff's novel and the defendants' play are clear and pervasive" and that plaintiff was "unable to point to any similarity of expression that [was] protectable." *Id.* at 616. Here, as discussed above, the claims and maintenance of the

suit were not frivolous because the bona fide factual dispute about authorship focused on by Plaintiff underlay the legal issues regarding whether the dispute was timely brought in court.

Other cases in which bad faith was found are also distinguishable. *See, e.g.*, *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357-358 (S.D.N.Y. 2006) (that plaintiff persisted in seeking monetary damages well in excess of what he could legally achieve and rejected a settlement of more than double the defendant's gross profits from the infringing product were indicia of bad faith weighing in favor of an award of damages); *see also TufAmerica Inc. v. Diamond*, No. 12-cv-3529, 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) (in copyright infringement action, court dismissed four of six claims on Rule 12 motion and the remaining claims on Rule 56 motion and awarded $450,000 in attorneys' fees and costs to the prevailing defendants, finding plaintiff's claim to be clearly without merit and objectively unreasonable based on well-established precedent demonstrating plaintiff did not have standing to sue).

In sum, the authority cited by Defendants is distinguishable, and the specific facts of this case do not support a finding of bad faith. Thus, the motivation factor tips against an award of fees.

5. **Whether an Award of Fees and Costs Advances the Purposes of the Copyright Act**

The last factor is whether an award of fees and costs furthers the Copyright Act's principles of deterrence and compensation. One reason to award fees is to deter others from bringing similarly unreasonable actions without fear of any consequences." *Urban Outfitters*, 431 F. Supp. 2d at 359. Defendants fault Plaintiff for pursuing his claim on appeal after it was rejected based on well-established precedent by the District Court. Discouraging unreasonable appeals is consistent with the Copyright Act's purpose. *Mahan*, 634 Fed. App'x at 331 (because

arguments on appeal were as frivolous as those made to trial court, an award of attorneys' fees in connection with the appeal was warranted and consistent with the objectives of the Copyright Act); *Porto*, 659 F. Supp. 2d at 618 (recognizing that a fee award would further the objectives of the Copyright Act by deterring future potential plaintiffs from filing objectively unreasonable claims). An award of fees also would compensate Defendants for defending their rights. At the same time, as a result of their success, Defendants are receiving substantial sums in connection with the Netflix series that exponentially exceed the cost of their defense fees. *Cf*. *16 Casa Duse, LLC v. Merkin*, No. 12-cv-3492 (RJS), 2017 WL 5558715, at *2 (S.D.N.Y. February 17, 2017) (noting that one purpose of law is to encourage copyright holders to vindicate rights; declining to award fees because "[i]t is not the case that without an award of fees, there would be no incentive for copyright holders like Plaintiff to litigate; to the contrary, as a result of Plaintiff's hard work in this litigation it may now finally exploit the film without fear of legal retribution.").

This Court also recognizes that any award of fees must be reasonable in terms of the circumstances of the particular case. *Matthew Bender & Co.*, 240 F.3d at 121. Here, the Court must exercise its equitable discretion. *Id*. The law is not designed to penalize parties who wish to argue for a change or clarification of the law. The law is developed through such suits. *Fogerty*, 510 U.S. at 526-27. Imposing an award for the sake of deterring future parties from seeking changes or clarifications in the law would in fact undermine the purpose of the Copyrights Act; it generally will not promote the purposes of the Copyright Act to impose a fee award against a purported copyright holder when that person has not taken an objectively unreasonable litigation position. *Matthew Bender & Co.*, 240 F.3d at 122. And even to the

extent that it was objectively unreasonable for Charles to have waited until 2018 to bring his claim, based on all of the factors set forth above, an award of attorneys' fees would not be equitable in this case, particularly given the exorbitance of the fees and costs requested and the significant monetary benefits that come to Defendants by prevailing in this action.  None of the cases Defendants cite are factually similar or dictate an award of fees here.  Thus, the compensation and deterrence factor does not weigh in favor of an award here.

In sum, based on the circumstances of this case and an evaluation of all of the factors set forth above, I respectfully recommend denying the motion for fees and costs.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Defendants' motion be denied.

Dated: November 17, 2020
New York, New York

Respectfully,

_____
KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

**The Parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.** *See also* **Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties).**

**A party may respond to any objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Alternatively, if Defendant files written objections, Plaintiffs may respond to such objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2);** *see also* **Fed. R. Civ. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties.** *See* **28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Nathan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.** *See* **28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b);** *Thomas v. Arn*, **474 U.S. 140 (1985).**