UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTIAN CHARLES,

                Plaintiff,

    v.

JERRY SEINFELD, COLUMBUS 81
PRODUCTIONS, INC., EMBASSY ROW, LLC,
COMEDIANS IN CARS, LLC, SONY PICTURES
TELEVISION INC., and NETFLIX, INC.,

                Defendants.

No. 18 Civ. 01196 (AJN) (KHP)

*ORAL ARGUMENT REQUESTED*

---

**DEFENDANTS JERRY SEINFELD, COLUMBUS 81 PRODUCTIONS, INC., AND
COMEDIANS IN CARS, LLC'S OBJECTIONS TO MAGISTRATE JUDGE PARKER'S
REPORT AND RECOMMENDATIONS DENYING THEIR
MOTION FOR ATTORNEYS' FEES AND COSTS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Dated: December 1, 2020

*Attorneys for Defendants Jerry Seinfeld,
Columbus 81 Productions, Inc., Embassy
Row, LLC, Comedians in Cars, LLC, Sony
Pictures Television Inc., and Netflix, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

RELEVANT FACTS AND PROCEDURAL HISTORY ............................................ 4

STANDARD OF REVIEW .................................................................................... 7

ARGUMENT ...................................................................................................... 8

    I.     DEFENDANTS ARE ENTITLED TO RECOVER THEIR
          ATTORNEYS' FEES AND COSTS ....................................................................8

          A.    Plaintiff's Copyright Claims Are Objectively Unreasonable Under
                 Second Circuit Precedent ........................................................................8

          B.    *Everly* Does Not Salvage Plaintiff's Statute-of-Limitations
                 Argument ................................................................................................9

          C.    An Award of Attorneys' Fees and Costs Advances the Copyright
                 Act's Principles of Compensation and Deterrence ...................................12

          D.    The Motivation Factor Supports an Award of Attorneys' Fees and
                 Costs.....................................................................................................14

    II.    THE R&R DOES NOT ADDRESS THE REASONABLENESS
          OF DEFENDANTS' ATTORNEYS' FEES AND COSTS,
          WHICH IS UNCONTESTED BY PLAINTIFF ...................................................15

CONCLUSION................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006), *aff'd*,
   249 F. App'x 845 (2d Cir. 2007) ...............................................................13, 14, 15

*Casa Duse, LLC v. Merkin*,
   2017 WL 5558715 (S.D.N.Y. Feb. 17, 2017) ........................................................12

*Charles v. Seinfeld*,
   410 F. Supp. 3d 656 (S.D.N.Y. 2019), *aff'd*,
   803 F. App'x 550 (2d Cir. 2020) .................................................................. *passim*

*Charles v. Seinfeld*,
   803 F. App'x 550 (2d Cir. 2020) .................................................................. *passim*

*Denver v. Berryhill*,
   2020 WL 2832752 (S.D.N.Y. June 1, 2020) ...........................................................7

*Everly v. Everly*,
   958 F.3d 442 (6th Cir. 2020) ....................................................................... *passim*

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994).................................................................................................1, 8

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S. Ct. 1979 (2016)................................................................................................8

*Kwan v. Schlein*,
   634 F.3d 224 (2d Cir. 2011)....................................................................................1, 5

*Mahan v. Roc Nation LLC*,
   2015 WL 4388885 (S.D.N.Y. July 17, 2015) ....................................................9, 12

*Mahan v. Roc Nation, LLC*,
   634 F. App'x 329 (2d Cir. 2016) ...........................................................1, 8, 13, 14

*Manhattan Review LLC v. Yun*,
   765 F. App'x 574 (2d Cir. 2019) ............................................................................13

*Porto v. Guirgis*,
   659 F. Supp. 2d 597 (S.D.N.Y. 2009)..............................................................12, 15

*Sid Bernstein Presents, LLC v. Apple Corps Ltd.*,
   2018 WL 1587125 (S.D.N.Y. Mar. 29, 2018) .............................................8, 9, 12

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Simmons v. Stanberry,*
   810 F.3d 114 (2d Cir. 2016)......................................................................................5

*TufAmerica Inc. v. Diamond,*
   2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) .........................................................12, 13, 15, 17

*TufAmerica, Inc. v. Diamond,*
   2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016) .....................................................................1, 8

**Statutes**

17 U.S.C. § 203..........................................................................................................10

28 U.S.C. § 636(b)(1)(C) ...............................................................................................1, 7

**Rules**

Fed. R. Civ. P. 72(b) ....................................................................................................1, 7

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(C),

Defendants Jerry Seinfeld, Columbus 81 Productions, Inc., and Comedians in Cars, LLC

(collectively, the "Seinfeld Defendants")[1] respectfully object to the Report and Recommendations

("R&R") on Defendants' Motion for Attorneys' Fees and Costs of the Honorable Katharine H.

Parker, United States Magistrate Judge, dated November 17, 2020.  Dkt. No. 139.

## PRELIMINARY STATEMENT

Section 505 of the Copyright Act exists to provide "compensation and deterrence"—

compensation for the litigant's expenses of defeating a meritless claim, and deterrence to others

that might bring a similarly meritless lawsuit.  *TufAmerica, Inc. v. Diamond*, 2016 WL 1029553,

at *1 (S.D.N.Y. Mar. 9, 2016) (Nathan, J.) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534

& n.19 (1994)).  The Second Circuit, moreover, has recognized that a lawsuit that is plainly time-

barred is "objectively unreasonable" and that "the objectives of the Copyright Act" are furthered

by "deterring such baseless" claims with awards of attorneys' fees.  *Mahan v. Roc Nation, LLC*,

634 F. App'x 329, 331 (2d Cir. 2016).  Here, Plaintiff's own complaint recognized that Mr.

Seinfeld had repudiated Plaintiff's claims of ownership more than six years before this lawsuit

was filed.  That made Plaintiff's lawsuit a nonstarter under the Second Circuit's decision in

*Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011).  Yet Plaintiff not only filed his time-barred

lawsuit, but litigated it to the end, multiplying the resources Defendants had to commit to defeat

it.  Section 505 exists to deter precisely this type of litigation conduct.  This Court should award

Mr. Seinfeld his attorneys' fees and costs both to compensate him for the substantial expenses he

---

[1]  Pursuant to an agreement between the Seinfeld Defendants and Sony Pictures Television Inc., Embassy Row, LLC, and Netflix, Inc. (collectively, the "Defendants"), the Seinfeld Defendants were responsible for paying all of the Defendants' attorneys' fees and costs in this action.

1

incurred in defending against Plaintiff's case, and to deter others that might similarly file time-barred lawsuits in the hope of extracting an unwarranted settlement.

Plaintiff's claim that his lawsuit was not objectively unreasonable rests now on the Sixth Circuit's recent decision in *Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020), which Plaintiff says validates his claim that "as a *non-author*, Seinfeld lacked authority to repudiate Charles's ownership of the Pilot's copyright." Dkt. No. 130 at 2. The R&R seemed to accept this argument, stating that "[i]n the absence of the Sixth Circuit's *Everly*, . . . this suit would likely be deemed objectively unreasonable." Dkt. No. 139 at 12. But both Plaintiff and the R&R misread the Sixth Circuit's decision in *Everly*.

*Everly* involves a dispute between two brothers who performed as the Everly Brothers. The copyrights at issue undisputedly are owned by one Everly Brother, but the litigation involves only the termination rights that the Copyright Act grants specially to *authors*; the Everly Brother who had relinquished his ownership interest in the copyright nevertheless argued that he retained his termination rights. Thus, the Sixth Circuit framed the case as addressing only the "unusual" and "narrow[]" circumstance where the litigation turns on "authorship claim[s] without [] corresponding ownership claim[s]." *Everly*, 958 F.3d at 445, 453. In that context, the Sixth Circuit held, "express repudiation must be made by an author herself." *Id.* at 454.

But, here, Plaintiff did not assert an author's termination right; he brought claims of *infringement* that can be brought only by the *owner* of a copyright. That is why this Court and the Second Circuit each recognized that his case centered on *ownership* of the copyrights. And in the "context of ownership," the Sixth Circuit recognized, "express repudiation can be effectuated by a non-author." *Id.* Thus *Everly* itself refutes Plaintiff's position that "as a *non-author*, Seinfeld lacked authority to repudiate Charles's ownership of the Pilot's copyright."

Dkt. No. 130 at 2.  The Seinfeld Defendants thus respectfully submit that the R&R erred in

holding that *Everly* suggests that Plaintiff's statute-of-limitations position was not objectively

unreasonable.

Plaintiff's reliance on *Everly* fails also for the even more fundamental reason that Mr.

Seinfeld cannot possibly be characterized as a "non-author" of the pilot episode that is essentially

an improvisational comedy sketch starring Mr. Seinfeld himself.  Here, the Second Circuit

recognized that Mr. Seinfeld did assert *authorship* of *Comedians in Cars Getting Coffee* (the

"Show") when he repudiated Plaintiff's ownership claim.  *Charles v. Seinfeld,* 803 F. App'x 550,

551–52 (2d Cir. 2020).  Even under *Everly*'s inapplicable rule, Mr. Seinfeld's assertion of

authorship was sufficient to start the clock on Plaintiff's claim to sole authorship.  *Everly*, 958

F.3d at 453 ("[R]epudiation of authorship . . . must come from someone asserting authorship of

the work, not from a third party.").

The Sixth Circuit's decision in *Everly* thus provides no help at all to Plaintiff's position

on the statute of limitations.  And Second Circuit precedent makes clear that Section 505's

purposes of compensation and deterrence are appropriately vindicated by awarding attorneys'

fees against those that bring copyright suits in the teeth of the statute of limitations, as Plaintiff

did here.  The R&R's suggestion that Plaintiff should get a pass because "Defendants are

receiving substantial sums" from the copyrighted work disregards those important purposes.

Dkt. No. 139 at 16.  That the Show is successful does not make it any more just for the Seinfeld

Defendants to have to bear the costs of defending Plaintiff's meritless suit.  And the Show's

success makes deterrence of this type of exploitative lawsuit, filed only after commercial success

is achieved, more urgent, not less.  An award of attorneys' fees and costs will serve the purposes

of the Copyright Act by putting Plaintiff and similarly situated plaintiffs on notice that there are adverse consequences to bringing unreasonable claims.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Recognized as one of the best stand-up comedians of all time, Jerry Seinfeld is also an award-winning actor, writer, producer, and director.  Mr. Seinfeld conceived of the concept for the Show—an unscripted talk show where Mr. Seinfeld and a fellow comedian drive in a car to get coffee and engage in comedic banter—in July 2000, during a cross-country road trip he took with a fellow comedian, Barry Marder.  Eleven years later, in 2011, Mr. Seinfeld hired Plaintiff to direct the pilot episode of the Show.

Seeking more than a director's salary, "[i]n January and February of 2012, [Plaintiff] claims that he communicated his request 'for compensation and backend involvement' with the show." *Charles v. Seinfeld*, 410 F. Supp. 3d 656, 657–58 (S.D.N.Y. 2019), *aff'd*, 803 F. App'x 550 (2d Cir. 2020) (citing Second Am. Compl., Dkt. No. 70 ("SAC") ¶ 69).  Mr. "Seinfeld twice rejected [Plaintiff's] request for backend compensation and made it clear that [Plaintiff's] only involvement was to be on a 'work-for-hire' basis." *Id.* at 660.  Two months later, Plaintiff released all claims related to the Show in exchange for a lump-sum payment.  SAC ¶¶ 77–79.  Then, Mr. "Seinfeld and other Defendants went on to produce and distribute the show without giving any credit to [Plaintiff]." *Charles*, 410 F. Supp. 3d at 660.

As this Court and the Second Circuit concluded, Mr. Seinfeld's rejection of Plaintiff's request and the production of the Show each independently was "enough to place [Plaintiff] on notice that his ownership claim was disputed." *Charles,* 803 F. App'x at 552.  Yet Plaintiff remained silent until 2017, when it was announced that "Netflix inked a lucrative new deal for the show to join their platform." *Charles*, 410 F. Supp. 3d at 658.  As this Court recognized, this announcement prompted Plaintiff to contact Mr. Seinfeld via email on December 27, 2017. *Id*.

4

In this email, as well as two subsequent letters, Plaintiff claimed to be the creator of the Show and threatened to sue if Mr. Seinfeld did not agree to a monetary settlement.  In response, Mr. Seinfeld's counsel informed Plaintiff that his ownership claims were "without merit," reminded him that he "releas[ed] all claims of future compensation," and warned him that Mr. Seinfeld would "seek appropriate damages and remedies" if Plaintiff "pursue[d] this unwarranted claim." Dkt. No. 125, Ex. A at 1; *Charles*, 410 F. Supp. 3d at 658 (citing SAC ¶ 98).

Ignoring these warnings, Plaintiff filed a *pro se* complaint on February 9, 2018.  Dkt. No. 1.  Given Plaintiff's then–*pro se* status, Mr. Seinfeld's counsel explained to Plaintiff in a March 1, 2018 letter that, "[b]ecause [he] did not file suit until [February 2018], more than three years after the publication of the first [episode of the show] . . . any ownership claim relating to [the Show] is untimely."  Dkt. No. 125, Ex. B at 2 (citing *Kwan*, 634 F.3d at 229).  The letter also explained the consequences of asserting "objectively unreasonable" time-barred claims, warning that if Plaintiff "require[d] Mr. Seinfeld to spend time and money litigating the case, [Mr. Seinfeld's counsel] [would] ask the judge to make [Plaintiff] pay [his] attorney's fees and costs after [he] prevail[ed]."  *Id.* at 1.

After Plaintiff failed to voluntarily dismiss his lawsuit, Mr. Seinfeld filed a motion to dismiss, arguing that *Kwan* and *Simmons v. Stanberry,* 810 F.3d 114, 116 (2d Cir. 2016) (per curiam), mandated dismissal of Plaintiff's claims.  *See* Dkt. No. 22.  In response, Plaintiff hired an attorney to file a First Amended Complaint ("FAC").  Dkt. No. 46.  After Plaintiff's lawyer conspicuously withdrew as counsel the evening before Defendants moved to dismiss the FAC, Plaintiff hired new counsel, who requested leave to file a SAC.  Dkt. No. 65.  When Plaintiff's new counsel emailed Mr. Seinfeld's counsel, seeking consent to file an amended complaint, Mr. Seinfeld's counsel responded, "[w]e have made it clear . . . that controlling precedent mandates

dismissal of his copyright claims as time-barred," and warned that we would seek fees and costs if Plaintiff persisted with the lawsuit.  Dkt. No. 125, Ex. C at 4.  Ignoring this warning, Plaintiff filed a SAC, Dkt. No. 70, requiring Defendants to file a *third* motion to dismiss.  Dkt. No. 74.

This Court granted Defendants' motion to dismiss the SAC, ruling that Plaintiff's copyright claims were time-barred under the same Second Circuit precedent.  *Charles*, 410 F. Supp. 3d at 659–61.  The Seinfeld Defendants moved for attorneys' fees and costs pursuant to Section 505 of the Copyright Act.  *See* Dkt. Nos. 109–11.  The next day, Plaintiff submitted a notice of appeal from this Court's judgment.  *See* Dkt. No. 112.  Accordingly, the Court denied Defendants' fee motion without prejudice, noting that "the expedited briefing schedule set by the Second Circuit would not leave [Plaintiff's] counsel enough time to brief the fees issue . . . [and] that the content of a fees motion may be altered depending on the outcome and reasoning of the Second Circuit's opinion."  Dkt. No. 120 at 1.

The Second Circuit affirmed by summary order, one week after hearing oral argument. *Charles,* 803 F. App'x at 552.  Plaintiff then sought rehearing, arguing that *Everly*—decided three days before the Second Circuit's decision—supported his argument that Mr. Seinfeld could not repudiate Plaintiff's ownership claims because he had alleged Mr. Seinfeld was not an author of the Show.  *Charles,* No. 19-3335, at Dkt. No. 94 at 4.  The Second Circuit denied the petition without ordering a response.  *Id.* at Dkt. No. 101.  And now Plaintiff has sought Supreme Court review.  Dkt. No. 138.

As the undisputed prevailing parties in this copyright action, the Seinfeld Defendants renewed their motion for attorneys' fees and costs initially filed before Plaintiff took his appeal ("the Motion").  Dkt. No. 124.  The Motion extensively documents the reasonableness of the requested fees and costs, including a declaration and supporting exhibits.  *See id.* at 18–25; Dkt.

6

No. 125.  This Court referred the Motion to Magistrate Judge Parker as a "Dispositive Motion."

Dkt. No. 126.  Plaintiff filed an opposition, based entirely on *Everly*, which he argued rendered

his claims objectively reasonable.  Dkt. No. 130 at 2.  The Seinfeld Defendants filed a reply, Dkt.

No. 131, which included a supplemental declaration substantiating fees and costs associated with

briefing the Motion, Dkt. No. 132.  At oral argument, Plaintiff conceded that the entire basis of

his opposition is that *Everly* had rendered reasonable his position on the statute of limitations and

that he "intentionally did not address" the reasonableness of the Seinfeld Defendants' fees.  Dkt.

No. 135 at 19.

The Magistrate Judge issued a Report and Recommendations, recommending that this

Court deny the Motion because *Everly* rendered Plaintiff's lawsuit, which was otherwise

"objectively unreasonable . . . based on Plaintiff having waited so long to file his suit," non-

frivolous and reasonable.  Dkt. No. 139 at 12.  The Magistrate Judge did not address the

reasonableness of the Seinfeld Defendants' requested fees and costs.

## **STANDARD OF REVIEW**

"When a party properly objects to the magistrate judge's proposed findings and

recommendations, a district court must 'make a *de novo* determination of those portions of the

report or specified proposed findings or recommendations to which objection is made.'"  *Denver*

*v. Berryhill*, 2020 WL 2832752, at *1 (S.D.N.Y. June 1, 2020) (Nathan, J.) (quoting 28 U.S.C.

§ 636(b)(1)(C)).  As part of this review, "[t]he district judge may accept, reject, or modify the

recommended disposition; receive further evidence; or return the matter to the magistrate judge

with instructions."  Fed. R. Civ. P. 72(b)(3).

<u>**ARGUMENT**</u>

**I.    DEFENDANTS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES AND COSTS**

When determining whether to award fees under Section 505 of the Copyright Act, courts

in the Second Circuit consider "'frivolousness, motivation, objective unreasonableness (both in

the factual and in the legal components of the case), and the need in particular circumstances to

advance considerations of compensation and deterrence' as relevant factors," *TufAmerica*, 2016

WL 1029553, at *1 (quoting *Fogerty* 510 U.S. at 534 & n.19 (1994)), while giving "'substantial

weight' to the reasonableness of [a] losing party's litigating position[]," *Kirtsaeng v. John Wiley*

*& Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016).

**A.    Plaintiff's Copyright Claims Are Objectively Unreasonable Under Second Circuit Precedent**

Plaintiff does not dispute that his claims were objectively unreasonable under controlling

Second Circuit precedent.  Nor could he, as this Court and the Second Circuit held that binding

authority, such as *Kwan* and *Simmons*, compelled dismissal of his claims.  *Charles*, 803 F. App'x

at 551; *Charles*, 410 F. Supp. 3d at 659; *see also TufAmerica*, 2016 WL 1029553, at *2 (stating

that a claim is "objectively unreasonable" when it disregards a "well-settled principle of law.").

The R&R is correct to observe that, "given the well-developed case law in this Circuit regarding

the type of conduct that triggers claim accrual on a copyright ownership/authorship claim, this

suit would likely be deemed objectively unreasonable for purposes of Section 505 based on

Plaintiff having waited so long to file his suit."  Dkt. No. 139 at 12–13; *see also id.* at 11

("Courts in this District have found copyright claims to be objectively unreasonable when they

were dismissed on statute of limitations grounds." (citing *Mahan*, 634 Fed. App'x 329, and *Sid*

*Bernstein Presents, LLC v. Apple Corps Ltd.,* 2018 WL 1587125 (S.D.N.Y. Mar. 29, 2018))).

Here, "Plaintiff's claims under the Copyright Act were plainly time barred and [are] therefore

objectively unreasonable." *Mahan v. Roc Nation LLC*, 2015 WL 4388885, at *2 (S.D.N.Y. July 17, 2015); *see also Sid Bernstein,* 2018 WL 1587125, at *4.[2]

### B.  *Everly* Does Not Salvage Plaintiff's Statute-of-Limitations Argument

Plaintiff argues that his statute-of-limitations argument was not objectively unreasonable because, if the Sixth Circuit's *Everly* rule applied here, "as a *non-author*, Seinfeld lacked authority to repudiate Charles's ownership of the Pilot's copyright." Dkt. No. 130 at 2.  This argument, which the R&R accepted, misapprehends the Sixth Circuit's decision.  *Everly*, as shown below, is inapplicable to an infringement case like this one that necessarily depends on ownership of the copyright.  Once that is recognized, under the R&R's own reasoning, "given the well-developed case law in this Circuit regarding the type of conduct that triggers claim accrual on a copyright ownership/authorship claim, *this suit [should] be deemed objectively unreasonable*." Dkt. No. 139 at 10, 12 (emphasis added).

*Everly* involves a dispute among the artists who previously performed as the Everly Brothers over the song *Cathy's Clown*, with "Don Everly, on the one hand, and the successors-in-interest of his brother, the late Phil Everly, on the other."  958 F.3d at 445.  "[O]wnership

---

  [2]  To bolster its conclusion that Plaintiff's suit was not frivolous or objectively unreasonable, the R&R also seems to accept as certain Plaintiff's characterizations of the law and the record below that are sharply at odds with this Court's controlling decision.  For example, the R&R asserts that the Second Circuit's decision in *Kwan*, is "factually distinguishable . . . because Charles contends that Seinfeld is not an author." Dkt No. 139 at 7.  But, as this Court recognized, *Kwan*'s "set of facts largely mirrors the present case," in that "the plaintiff in *Kwan* claimed that she, and not the defendant was the sole author."  *Charles*, 410 F. Supp. 3d at 659–60.  The R&R also observed that Plaintiff "provided facts to support his contention that he did not understand Seinfeld to have repudiated [Plaintiff's] authorship or ownership until 2016." Dkt. No. 139 at 9.  But this Court held those same "facts" provided by Plaintiff, "[e]ven drawing all inferences in favor of [Plaintiff] . . . do not plausibly contradict Seinfeld's statements that [Plaintiff] would not be 'involved' on more than a work-for-hire basis."  *Charles*, 410 F. Supp. 3d at 660.  *Kwan* is controlling—as the Second Circuit and this Court concluded, it is not distinguishable.  And under Plaintiff's allegations viewed in the light most favorable to him, *Kwan* plainly foreclosed his suit.

rights [which] are transferrable" were not in dispute, as "defendants acknowledge[d] that Phil transferred his ownership rights to Don in the 1980 Release." *Id.* at 452 ("[C]laims for copyright ownership" are "not at issue in this case"). Instead, the dispute centers around termination rights Section 203 of the Copyright Act grants to authors to allow them to terminate licenses and grants of ownership under certain circumstances. *Id.* at 449–50; *see also* 17 U.S.C. § 203. With each Everly Brother looking to control the termination rights to *Cathy's Clown*, "Don sued Phil's successors, seeking a declaration that Don was the sole author, while Phil's successors counterclaimed for declaratory relief that both brothers were authors." *Everly*, 958 F.3d at 445. *Everly* thus involves only the "unusual" and "narrow[]" circumstance where there are only "authorship claims without corresponding ownership claims"—a circumstance so rare that the Sixth Circuit panel "ha[d] not identified any cases" like it. *Id.* at 445, 453.

"The district court granted summary judgment to Don, finding that the claim of Phil's co-authorship was barred by the statute of limitations because Don expressly repudiated Phil's co-authorship." *Id.* at 445. The Sixth Circuit reversed. *Id.* It held that, in the rare case where a dispute centers on authorship without a corresponding ownership claim, that a claim of authorship can be repudiated only by an author, and cannot be repudiated by a third party. *Id.* at 454. And applying that principle, the Sixth Circuit determined there existed a genuine factual dispute over whether Phil's claim of authorship had been repudiated by Don. *Id.* at 445.

But this case has nothing to do with Section 203 termination rights granted to authors. Instead, Plaintiff's suit is predominantly one for infringement—an action for which, as the Second Circuit recognized, Plaintiff needed to "establish [] *ownership* of a valid copyright." *Charles*, 803 F. App'x at 551 (emphasis added). This Court and the Second Circuit thus correctly held that this case centered on ownership of the copyright, not merely authorship

divorced from a claim of ownership.  *Id.*; *Charles*, 410 F. Supp. 3d at 659.  And in cases where

ownership is at issue, *Everly* itself states clearly that "express repudiation can be effectuated by a

*non-author*."  958 F.3d at 454 (emphasis added).  Thus even if Mr. Seinfeld possibly could be

deemed a non-author of the improvisational comedy sketch in which he performs—and he

cannot—because Plaintiff's dispute centers on ownership, *Everly* would uphold Mr. Seinfeld's

repudiation of Plaintiff's claim.  Any possible doubt on this point is dispelled by *Everly*'s

recognition that the Sixth Circuit's test of express repudiation in the ownership context is

"consistent" with the test applied by the Second Circuit.  *Id.* at 452.  *Everly* actually refutes

Plaintiff's assertion that "as a *non-author*, Seinfeld lacked authority to repudiate Charles's

ownership of the Pilot's copyright."  Dkt. No. 130 at 2.  The R&R thus erred in holding that

*Everly* rendered reasonable Plaintiff's statute-of-limitations argument.

Plaintiff's *Everly* argument fails for the additional reason that Mr. Seinfeld quite

obviously qualifies as "someone asserting authorship of the work" and thus satisfies *Everly*'s

requirement for repudiation applicable in cases turning only on authorship.  Indeed, the Second

Circuit recognized that Mr. "Seinfeld disputes [Plaintiff's authorship] claim, contending that he

conceived that show and that [Plaintiff] did his work as a hired producer and director."  *Charles*,

803 F. App'x at 551.  Thus, when Mr. Seinfeld repudiated Plaintiff's authorship, he did so as

"someone asserting authorship of the work, not [as] a third party."  *Everly*, 958 F.3d at 453.  This

forecloses "[t]he legal theory that Plaintiff focused on—that a stranger to a copyright cannot

repudiate authorship."  Dkt. No. 139 at 13.  Nothing in *Everly* even remotely suggests that Mr.

Seinfeld could be plausibly characterized as a "non-author" of his Show.

*Everly* did not render reasonable Plaintiff's statute-of-limitations position, which

otherwise indisputably conflicts with controlling Second Circuit precedent.  Instead *Everly*

confirms that those Second Circuit precedents correctly state the law in cases that, like this one, turn on ownership of the copyright.

### C.   An Award of Attorneys' Fees and Costs Advances the Copyright Act's Principles of Compensation and Deterrence

"[A]n award of attorneys' fees and costs [] will [also] advance the purposes of the Copyright Act by compensating the [Seinfeld Defendants] for expending the time and incurring the expense of defending this action" and deterring others "from pursuing meritless claims, such as those asserted in this action." *Sid Bernstein*, 2018 WL 1587125, at \*4.  With respect to compensation, the Magistrate Judge agrees that awarding fees would "compensate Defendants for defending their rights."  Dkt. No. 139 at 16.  The Magistrate Judge nevertheless concludes that the compensation factor does not weigh in favor of a fees award because "Defendants are receiving substantial sums in connection with the Netflix series that exponentially exceed the cost of their defense fees."  *Id.*  This is a non sequitur.  No artist should be forced to bear the costs of defending frivolous copyright claims.

Courts in this Circuit often award attorneys' fees in cases involving valuable copyrights. *See e.g.*, *TufAmerica Inc. v. Diamond*, 2018 WL 401510, at \*4 (S.D.N.Y. Jan. 12, 2018) (Nathan, J.) (awarding the defendants, the Beastie Boys and Capitol Records, LLC, approximately $450,000 in attorneys' fees, notwithstanding the "[p]laintiff's weak financial position"); *Mahan*, 2015 WL 4388885, at \*2 (awarding the defendants, Jay-Z and Roc-A-Fella Records, attorneys' fees and costs after dismissing the plaintiff's copyright claims as "plainly time-barred"); *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) (awarding defendant, "an award-winning play and author, and a well-known director," attorneys' fees and costs after granting his motion for summary judgment on plaintiff's copyright infringement claims).  On the other hand, the only case cited by the R&R in the compensation analysis, *Casa Duse, LLC v. Merkin*, 2017 WL

5558715 (S.D.N.Y. Feb. 17, 2017) does not support the R&R's conclusion.  In that case, the court found that the compensation factor weighed in favor of an award for attorneys' fees because the "fee award would compensate Plaintiff" for the "substantial legal fees" incurred.  The court did not consider, or even reference, the value of the underlying copyright. *Id.*  The Seinfeld Defendants respectfully submit the profits flowing from a copyright—whether large or small—have no place in the analysis whether it is appropriate to compensate copyright litigants for their expenses in litigating an objectively unreasonable claim.  The R&R erred in holding that the success of the Show weighed against compensating Defendants for their losses in fighting off Plaintiff's claim.

With respect to deterrence, a fees award is appropriate when "necessary to deter [a] [p]laintiff from similarly frivolous future litigation," *TufAmerica Inc.*, 2018 WL 401510, at *6, after that plaintiff followed the perilous path of "pursu[ing] expensive and time-consuming litigation" with the hope of "extract[ing] a significant payment from perceived 'deep pocketed' defendants."  *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).  As the record makes clear, this case is particularly the kind of strike suit that the Copyright Act seeks to deter through awards of attorneys' fees.  As the Second Circuit recently explained in *Manhattan Review LLC v. Yun*, the Copyright Act's "goals of compensation and deterrence are furthered by compensating [] defendants for litigating against claims that *should not have been brought in the first place because the plaintiffs lacked the capacity to sue*."  765 F. App'x 574, 577 (2d Cir. 2019) (emphasis added).  And as this Court and the Second Circuit found, this case should not have been brought in the first place because Plaintiff lacked the capacity to sue under the Copyright Act's statute of limitations.  As the Second Circuit held in *Mahan*, "the objectives of the Copyright Act" are furthered by "deterring

13

such baseless" claims.  634 F. App'x at 331.

The R&R concludes that the deterrence factor weighed against a fees award because "[i]mposing an award for the sake of deterring future parties from seeking changes or clarifications in the law would in fact undermine the purpose of the Copyrights Act."  Dkt. No. 139 at 16.  But the conclusion rests on a false premise—that Plaintiff was seeking a change or clarification in the law.  Plaintiff has never argued that *Kwan* and other Second Circuit precedent controlling this case was incorrectly decided.  Instead, Plaintiff has sought to evade that controlling precedent with the specious contentions that "his lawsuit is about authorship," that *Kwan* did not control a case "involv[ing] [a] dispute[] over . . . defendant's status" as an author, and that Mr. Seinfeld is not an author of his own Show.  *Charles*, 410 F. Supp. 3d at 659.  But this Court found that *Kwan* "largely mirrors the present case," that Plaintiff's attempts to distinguish Second Circuit precedent are "unavailing," and that Mr. Seinfeld did indeed claim to be an author of the Show.  *Id.* at 656–60.  This marks Plaintiff's case not as one that made good faith arguments to advance copyright doctrine, but rather as a frivolous effort to evade clear and controlling precedent.  Awarding fees here "would deter similar frivolous suits from being filed by others."  *Mahan*, 634 F. App'x at 331.

### D.   The Motivation Factor Supports an Award of Attorneys' Fees and Costs

The "presence of [Plaintiff's] improper motivation in bringing [this] lawsuit [and his] other bad faith conduct weigh[] heavily in favor of an award of costs and fees."  *Baker*, 431 F. Supp. 2d at 357.  As this Court found, it was the announcement in 2017 that "Netflix inked a lucrative new deal for the show to join their platform," that prompted Plaintiff to file suit.  *Charles*, 410 F. Supp. 3d at 658.  In doing so, Plaintiff hoped that Mr. Seinfeld would offer him a settlement, but Mr. Seinfeld refused.  Instead, Mr. Seinfeld repeatedly warned Plaintiff that his copyright claims were time-barred under binding precedent, and then defended himself after

14

Plaintiff declined to abandon his objectively unreasonable claims.  Dkt. No. 124 at 7–8.

Plaintiff's case thus bears several classic "hallmarks of an abusive lawsuit," including (1) that

"plaintiff [] persisted in . . . filing his complaint," even after he "was warned, before any action

had been filed, that there was no colorable copyright infringement claim"; (2) the "complaint

[was] directed against" a well-known artist; and (3) "[t]he suit was brought several years after

the production of the [work]."  *Porto*, 659 F. Supp. 2d at 617.

The R&R nevertheless finds that *Porto* is distinguishable and concludes that that the

motivation factor "tips against an award of fees."  Dkt. No. 139 at 15.  Of course, there are

distinctions that can be drawn between Plaintiff's lawsuit and that in *Porto*, but on the relevant

issue—the defining features of an abusive lawsuit—the similarities far exceed the differences.

The R&R similarly dismissed two additional authorities, *Baker*, 431 F. Supp. 2d at 351

and *TufAmerica*, 2018 WL 401510.  Yet both cases support a finding of bad faith here.  Just as

the court in *Baker* found that plaintiff's lawsuit was "an attempt to extract a significant payment

from perceived 'deep pocketed' defendants," 431 F. Supp. 2d at 358, this Court found that it was

the announcement in 2017 that "Netflix inked a lucrative new deal for the show to join their

platform," that prompted Plaintiff to file suit, *Charles*, 410 F. Supp. 3d at 658.  And just as in

*TufAmerica*, Plaintiff here "was not diligent in investigating [his] claims before bringing this

action," 2018 WL 401510, at *4, and ignored Mr. Seinfeld's multiple warnings that his copyright

claims were time-barred.  Dkt. No. 124 at 7–8.

## II.   THE R&R DOES NOT ADDRESS THE REASONABLENESS OF DEFENDANTS' ATTORNEYS' FEES AND COSTS, WHICH IS UNCONTESTED BY PLAINTIFF

The attorneys' fees and costs sought by the Seinfeld Defendants were necessary to defend

against Plaintiff's vexatious litigation tactics.  The Motion extensively documents the

reasonableness of the requested fees and costs, including declarations and supporting exhibits. *See* Dkt. No. 124 at 18–25; Dkt. No. 125; Dkt. No. 131 at 8; Dkt. No. 132.

While the Seinfeld Defendants submit that the fees incurred are reasonable and in line with the market, in an exercise of restraint and proportionality, the Seinfeld Defendants reduced their request for attorneys' fees by 25 percent.  Dkt. No. 124 at 18.  Plaintiff does not contest the Seinfeld Defendants' counsel's rates.  Nor does Plaintiff contest the reasonableness of the time incurred by the Seinfeld Defendants to defend this action.  Indeed, in response to the Magistrate Judge's question whether he "ha[d] anything that [he] wanted to argue about the reasonableness of the hourly rate requested or the hours expended," Plaintiff's counsel replied, "[w]ell, to be candid, your Honor, no.  *I intentionally did not address that in my opposition*."  Dkt. No. 135 at 27 (emphasis added).  Thus, in view of Plaintiff's concession of the reasonableness of Defendants' requested fees and costs, Defendants respectfully submit that no reduction is warranted.

The R&R's only evaluation of the reasonableness of the Defendants' requested fees and costs is a passing reference to "the exorbitance of the fees and costs requested."  Dkt. No. 139 at 17.  The R&R's suggestion that the requested fees and costs were excessive is unsupported and unwarranted.  Even though this was a meritless case, the stakes were high because of the Show's value and the nature of Plaintiff's demands.  *See* SAC ¶ 96 ("[I]ndustry press revealed that the Project's deal with Netflix was estimated at around $100 million.").  Given that Plaintiff was seeking Mr. Seinfeld's entire share of the Show's profits, as well as an injunction on making future episodes or distributing existing ones, Defendants were forced to vigorously defend their rights to the Show.  In addition, Plaintiff's vexatious litigation tactics needlessly burdened the Seinfeld Defendants with additional substantial fees.  Assuming the truth of Plaintiff's

allegations regarding Mr. Seinfeld's deal with Netflix, Plaintiff claimed damages of least $100 million based on his infringement claim, or $50 million based on his joint authorship claim. Alternatively, had Plaintiff elected to receive statutory damages under 17 U.S.C. § 504, and a court found that each of the Show's 84 episodes constituted individual "work[s]" and that Defendants willfully infringed Plaintiff's copyrights, statutory damages could have exceeded $12 million.  In the context of the potential damages Defendants faced, the $973,858.37 in requested fees and costs is eminently reasonable.

In any event, as this Court held in *TufAmerica*, while courts may consider economic disparities between the parties in calculating a fee award, "the fee award must still be sufficient to accomplish the goals of Section 505 fee awards, namely 'considerations of compensation and deterrence.'"  2018 WL 401510, at *5.  Here, unlike in *TufAmerica*, Plaintiff has neither challenged the amount of the requested fee award, nor claimed financial hardship.

## CONCLUSION

For the foregoing reasons, the Seinfeld Defendants respectfully request that the Court reject the Magistrate Judge's recommendations and grant their motion for attorneys' fees and costs, together with such further relief as appropriate.

Dated: New York, New York
       December 1, 2020

Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP

By:     /s/ Orin Snyder

Orin Snyder
David M. Kusnetz

200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
osnyder@gibsondunn.com
dkusnetz@gibsondunn.com

*Attorneys for Defendants Jerry Seinfeld,*
*Columbus 81 Productions, Inc., Embassy*
*Row, LLC, Comedians in Cars, LLC,*
*Sony Pictures Television Inc., and*
*Netflix, Inc.*

18