UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_2/26/2021_
```

Christian Charles,

                              Plaintiff,

          —v—

Jerry Seinfeld, *et al.*,

                              Defendants.

18-cv-1196 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

After fending off claims that his one-time collaborator Christian Charles owned copyrights in the television show *Comedians in Cars Getting Coffee*, comedian Jerry Seinfeld now seeks to recoup his attorneys' fees. The Court referred Seinfeld's motion for fees to the Honorable Katharine H. Parker, who recommended it be denied. Though the Court agrees with much in Judge Parker's Report and Recommendation, it disagrees that Charles had a reasonable basis for his claim. The Court finds that a fee award is appropriate. It thus sustains Seinfeld's objections to the Report and Recommendation and grants his motion for fees.

## I.    Background

In Charles's telling, he and Seinfeld worked together on various projects since the 1990s. *Charles v. Seinfeld*, 410 F. Supp. 3d 656, 657 (S.D.N.Y. 2019). Charles produced a treatment for *Comedians in Cars Getting Coffee* and worked with Seinfeld to shoot the pilot, but Seinfeld insisted Charles's involvement would be limited to no more than a work-for-hire directing role. *Id.* at 657–58. Seinfeld repeatedly rejected Charles's requests for backend compensation on the project in 2011, and he paid Charles's production company a bit over $100,000 the following

year for preproduction expenses.  *Id.* at 658.  Seinfeld went on to produce and distribute the show without crediting Charles.  *Id.* at 658, 660.  The pilot premiered in 2012.

But Charles didn't sue in 2012.  Or within the following three years after Seinfeld refused his requests for backend compensation and made clear that Charles would receive no credit on the show.  Only in late 2017, after learning that Seinfeld had reached a hundred-million-dollar distribution deal with Netflix, did Charles contact Seinfeld and demand he participate in mediation over Charles's claimed interest in the show.  Second Amended Complaint, Dkt. No. 70, ¶¶ 96–97.  In February 2018, Charles sued Seinfeld and several companies associated with the show's production and distribution.

Charles initially brought this suit without an attorney.  *See* Dkt. No. 1.  At that time, Seinfeld's attorneys wrote a letter to Charles explaining that his claim could not succeed because he did not file suit before the Copyright Act's statute of limitations had elapsed.  Dkt. No. 125-2. The letter warned that Seinfeld would seek to recoup his attorneys' fees if Charles did not voluntarily dismiss his lawsuit.  Charles did not voluntarily dismiss his lawsuit.  Seinfeld then moved to dismiss, contending that Charles's suit was untimely.  Dkt. No. 21.

Charles hired an attorney and amended his complaint in June 2018.  Dkt. No. 46. Seinfeld again moved to dismiss, contending that Charles's suit was untimely.  Dkt. No. 49. Seinfeld's attorneys wrote to Charles, this time through his new attorney, and warned that Seinfeld would seek to recoup his attorneys' fees if Charles did not voluntarily dismiss his lawsuit.  Dkt. No. 125-3.  Charles did not voluntarily dismiss his lawsuit.  Again, Charles filed a new, amended complaint (his third in total) in August 2018.  Dkt. No. 67.  Seinfeld again moved to dismiss.  Dkt. No. 73.  Charles's opposition to that motion exceeded the page limit, requiring Seinfeld's attorneys to file yet another motion to strike the overlength submission.  Dkt. No. 82.

2

The Court dismissed Charles's claims as untimely.  *See Charles*, 410 F. Supp. 3d 656. The Copyright Act imposes a three-year limitations period for civil actions.  *Id.* at 659; 17 U.S.C. § 507(b).  For claims that turn on who owns a copyright, the clock begins to run when the claimant receives notice that someone else claims sole authorship or ownership of the disputed work.  *Charles*, 410 F. Supp. 3d at 659–60 (citing *Kwan v. Schlein*, 634 F.3d 224, 228–29 (2d Cir. 2011)).  Charles received such notice in 2011 when Seinfeld refused him backend compensation and again in 2012 when Seinfeld began to distribute the show without giving him credit.  *Id.* at 660.  Yet Charles did not file suit until 2018, more than five years later.  Because Charles had waited longer than the Copyright Act's three-year limitations period to sue, the Court held that his claims were time-barred.  *Id.* at 661.

Charles appealed.  The Second Circuit affirmed this Court's judgment in a summary order.  *See Charles v. Seinfeld*, 803 F. App'x 550 (2d Cir. 2020).  It agreed that Charles had notice that Seinfeld claimed ownership of the show no later than 2012 and rejected Charles's attempts to recast the dispute as about something other than ownership of copyrights in the show. Charles filed a petition for writ of certiorari in the Supreme Court, which the Supreme Court denied.  *Charles v. Seinfeld*, No. 20-661, 2020 WL 7327869 (U.S. Dec. 14, 2020).

Seinfeld now seeks to recover the attorneys' fees he incurred litigating this case.

## II.    Discussion

District courts may refer consideration of a motion to a magistrate judge for a report and recommendation.  If a party timely objects to the findings or recommendations of the magistrate judge, as Seinfeld has done here, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

Section 505 of the Copyright Act authorizes a court to require the losing party in a copyright case to pay the attorneys' fees of the prevailing party.  17 U.S.C. § 505.  An award of fees is not automatic.  A court has discretion to decide if a fee award is appropriate in a given case.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).  However, courts must treat prevailing plaintiffs and prevailing defendants alike when deciding whether to award fees.  *Id.*

The Supreme Court has outlined several factors courts should consider when deciding whether to award fees in a copyright case.  Court's must give "substantial weight" to the objective reasonableness of the losing party's position.  *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016); *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001).  That is, courts will more often award fees against a party whose arguments lack a factual or legal basis.  *TufAmerica Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2016 WL 1029553, at *2 (S.D.N.Y. Mar. 9, 2016).  Fees are less likely to be appropriate in a close case.  Courts may also consider whether the losing party's claims were frivolous, the losing party's motivation in bringing suit, and "the need in particular circumstances to advance considerations of compensation and deterrence."  *Kirtsaeng*, 136 S. Ct. at 1985 (quoting *Fogerty*, 510 U.S. at 534 n.19).  These considerations help ensure that fee awards will promote the purposes of the Copyright Act.  *Id.* at 1986; *Matthew Bender*, 240 F.3d at 122.

### A.   Seinfeld is Entitled to Attorneys' Fees

The Court finds that a fee award is appropriate based on the factors set out in *Fogerty*, 510 U.S. at 534 n.19.  It first considers whether Charles's claims were objectively reasonable.  It concludes that they were not.

Section 507 of the Copyright Act requires a claim for copyright infringement to be filed within three years of the date the claim accrues.  17 U.S.C. § 507(b).  Claims of infringement

ordinarily accrue on the date of the infringing conduct.  However, if a claim turns on who owns a copyright, rather than whether copying occurred, the claim accrues when the person asserting ownership learns that their claim of ownership is disputed.  *Kwan*, 634 F.3d at 228–29.  Thus, if a "dispute involves who wrote [the work] in the first place," a person claiming authorship must file their lawsuit within three years from when the dispute over authorship arose.  Otherwise, § 507 bars their claims.

As both this Court and the Second Circuit held, the allegations in Charles's complaint reflect that he leaned no later than 2012 that Seinfeld disputed his claimed interest in the show. He therefore had only three years from 2012 to file his lawsuit.  But instead he waited over five years.  Under controlling Second Circuit precedent, his claims were plainly untimely.  This was not a close case.

Charles all but concedes that controlling Second Circuit precedent squarely foreclosed his claims.  In his opposition to Seinfeld's fees motion, he does not dispute his case was a dead end in the Second Circuit.  *See* Dkt. No. 130.  Instead, he hangs his case for objective reasonableness on a single decision from a different circuit decided after this Court dismissed his suit and the Second Circuit heard argument in his appeal.  *Id.*  He contends that under the Sixth's Circuit's decision in *Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020), his claims would have been allowed to proceed, and thus the Sixth Circuit's decision in *Everly* is evidence that his claims were not objectively unreasonable.  In her report and recommendation, Judge Parker correctly concluded that Charles's claims would be deemed objectively unreasonable in the absence of the Sixth Circuit's decision in *Everly*.  *See* Report & Recommendation, Dkt. No. 139, at 12.  But the Court disagrees that *Everly* demonstrates that Charles's claims were reasonable.  *Everly* simply does not hold what Charles claims it does.

The Court must first provide some background on the types of disputes that may arise under the Copyright Act.  In perhaps the most typical case, the ownership of a copyright is not in dispute.  Instead, the question is whether someone copied—for example, whether an allegedly infringing song is too similar to one that came before.  *See Kwan*, 634 F.3d at 229.  In other cases, the issue is ownership.  Two singers might dispute who wrote a song, or a record company might claim the person who wrote it sold away their rights to it.  *See id.*  Finally, the Copyright Act grants authors of works a so-called "termination-of-transfers" right.  *See Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 197 (2d Cir. 2008).  This right allows an author—that is, the original creator of a copyrighted work—the opportunity to reclaim their copyright after a lengthy term (usually thirty-five years) has passed, even if they previously sold or gave it to someone else.  *See* 17 U.S.C. § 203.  Thus, in a narrow category of disputes—those concerning an author's invocation of their termination-of-transfers right—the key question will not be who currently owns the copyright, but rather who was the original author of the copyrighted work.

In an effort to evade the rule that an ownership claim accrues when the person claiming ownership learns that their claim is disputed, Charles seeks to recast his claim as one about authorship rather than ownership.  This is nothing more than an attempt to substitute jargon for substance.  Charles sued Seinfeld for copyright infringement.  To enforce a copyright, one must own it.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Authorship here matters only as an avenue to ownership.  The Second Circuit's foundational case on claim accrual for ownership claims involved nearly identical facts.  *See Kwan*, 634 F.3d at 229.  The plaintiff in that case, like Charles, claimed that she was "the author and therefore owner of the copyright."  *Id.*

And so Charles turns to *Everly*, a recent Sixth Circuit case that he contends created a new rule for claims of "authorship."  In *Everly*, a divided panel of the Sixth Circuit held that a claim asserting an author's termination-of-transfers right does not accrue until another person repudiates the claimant's status as an author.  *Everly*, 958 F.3d at 452–53.  In this context, another person's claim to own the copyright does not start the clock, because it does not necessarily give the author notice that their claim of authorship is disputed.  *Id.*  Abe might own the copyright today, while Beth, the original author, could invoke her termination-of-transfers right tomorrow.  Thus, only Abe's claim that he is the work's author (not merely the current copyright owner) puts Beth on notice that her claim of authorship is disputed.

But *Everly* does not hold that the rules for claim accrual change just because someone throws out the word "authorship."  Its holding applies only to "an authorship claim without a corresponding ownership claim."  *Id.* at 453.  Phil Everly's claim was "for authorship *qua* authorship, relevant *only* for the termination rights available under 17 U.S.C. §§ 203(a), 304(c)." *Id.* at 452 (emphasis added).  Unlike here, the parties in that case agreed that Phil had transferred his ownership rights to his brother Don.  The only dispute was whether Phil qualified as an author with the right to terminate that transfer.  "[C]opyright ownership" simply was "not at issue in this case."  *Id.*

This reasoning does not suggest a reasonable basis for Charles's position, nor does it conflict with Second Circuit precedent as he claims.  Quite to the contrary, the court in *Everly* relied extensively on Second Circuit precedent—including *Kwan*—that would bar Charles's claims.  Cases involving the termination-of-transfers right, it explained, are different from "ownership cases in which a defendant has raised a statute of limitations defense based on the defendant's repudiation of the plaintiff's authorship."  *Id.* at 453 (citing *Kwan*, 634 F.3d at 229).

Outside the narrow set of cases dealing with the termination-of-transfers right, the Sixth Circuit and the Second Circuit follow the same rule for the accrual of copyright claims.

Charles's case was not a termination-of-transfers case. *Everly* addressed an entirely different sort of claim and therefore does not support the reasonableness of Charles's position. The Court is quite confident that Charles's case would have met the same end in the Sixth Circuit as it did here. No matter where he had filed suit, his claims would have plainly been untimely. Charles learned no later than 2012 that Seinfeld disputed Charles's claimed ownership of copyrights in the show, and without ownership of those rights—whether obtained by authorship or by some other means—Charles could not maintain a claim for copyright infringement.

The Court thus concludes that Charles lacked a reasonable legal basis for his claims. And the Court stresses, for the benefit of future litigants, that his claims would be as unreasonable after *Everly* as they were before that case was decided.

The Court finds that the other factors set out in *Fogerty*, 510 U.S. at 534 n.19, also support an award of fees. Charles's suit appears to have been opportunistic. He received a substantial payment for his work on the show's pilot and brought suit only years later once Seinfeld had signed a lucrative distribution deal with Netflix. *Charles*, 410 F. Supp. 3d at 658. In circumstances like these, the prospect of a huge payday may entice litigants to pursue claims with little or no merit. Substantial deterrence is needed to counterbalance these incentives. The Court also takes into account Seinfeld's repeated—and correct—warnings that Charles's claims were time-barred and that a fee award would be likely if Charles pursued this case. *See* Dkt. No. 125. Rather than heed these warnings, Charles persisted in litigation conduct that created unusually high costs, requiring Seinfeld to file three motions to dismiss and a motion to strike.

Considering these factors, the Court concludes that an award of fees would promote the purposes of the Copyright Act by deterring plainly time-barred claims, and so will award attorneys' fees to Seinfeld.

### B.   The Court Defers Consideration of the Amount of Fees

In his opposition to Seinfeld's motion for fees, Charles did not address the amount of fees that Seinfeld seeks. *See* Dkt. No. 130.  The Court has an independent obligation to conduct a "conscientious and detailed inquiry" into the reasonableness of a fee award. *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994); *cf. Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154–55 (2d Cir. 1999) (holding that a court must assess the evidence in support of a monetary award even in the case of default).  In particular, the Court has concerns about whether the amount of fees Seinfeld seeks is appropriate in light of "the relative financial strength of the parties." *TufAmerica Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2018 WL 401510, at *5 (S.D.N.Y. Jan. 12, 2018).  Adversary briefing will assist the Court in this inquiry.  Thus, the Court will defer consideration on the amount of the fee award pending further briefing.

Conclusion

Seinfeld's motion for attorneys' fees (Dkt. No. 123) is GRANTED.  Within two weeks, Charles shall file a brief not to exceed ten pages addressing the size of the fee award.  Seinfeld may file a reply not to exceed five pages within one week of that submission.

SO ORDERED.

Dated: February 26, 2021
New York, New York

_____
ALISON J. NATHAN
United States District Judge

9