**CLARK GULDIN**
Attorneys At Law
20 Church Street – Suite 15
Montclair, New Jersey 07042
(973) 707-5346 (ph)
(973) 707-7631 (fax)
*Attorneys for Plaintiff*
*Christian Charles*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTIAN CHARLES,**<br><br>Plaintiff,<br><br>v.<br><br>**JERRY SEINFELD, COLUMBUS 81 PRODUCTIONS, INC., EMBASSY ROW, LLC, COMEDIANS IN CARS, LLC, SONY PICTURES TELEVISION INC., NETFLIX, INC.**<br><br>Defendants. | **Civil Action No. 1:18-cv-01196 (AJN-KHP)** |

# MEMORANDUM ADDRESSING THE SIZE OF A FEE REWARD

In the Court's February 26, 2021 Opinion and Order ("Opinion"), it expressed "concerns about whether the amount of fees Seinfeld seeks is appropriate in light of 'the relative financial strength of the parties,'" and directed the parties to its own 2018 decision in *TufAmerica, Inc. v. Diamond,* 2018 WL 401510 for guidance. *TufAmerica* describes the Court's analysis of disparate financial circumstances, and its application of the factors that led it to a significant reduction in the requested fees. But there the factual similarities end. The losing plaintiff in *TufAmerica* was a corporation that "has been an active copyright infringement litigant for over twenty years." 2018 WL 401510 at *4. Charles has never been a litigant of any type. The Court recognized that *TufAmerica* was solvent enough to have expended tens of thousands of dollars in legal fees (*id.* at *6), and that "a significant portion of Plaintiff's revenue comes from prosecuting copyright claims." *Id.* at *5. After filing his initial complaint *pro se*, Charles has only been represented on a contingency basis. He has neither incurred nor paid attorney's fees.

In assessing an initial fee award when granting summary judgment to defendants in *TufAmerica*, this Court had looked to factors identified in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994), including "frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." But as the Court recognized, its analysis had "focused almost entirely on 'objective reasonableness.'" Here, in the Court's February 26, 2021 Opinion, the focus was also on consideration of the "objective reasonableness" of Charles's Complaints.

In *TufAmerica,* because the Court had found one co-owner of the copyright at question was not a signatory to an agreement purporting to convey an exclusive license to Plaintiff, it determined that Plaintiff acted unreasonably in suing, given that the "clear and unambiguous intent" of this third co-owner "to assign the bare right to sue permeates nearly every provision of the agreement." Relying on the well-established principle that a "right to sue" cannot be the basis for standing, the

1

Court concluded these apparent deficiencies rendered Plaintiff's claim "clearly without merit" and "objectively unreasonable." 2018 WL 401510 at *2.

Following the initial attorneys fee assessment in TufAmerica, the Supreme Court decided *Kirtsaeng v. John Wiley & Sons, Inc.* 136 S. Ct. 1979 (2016). The Court resolved to reassess the fee award, applying *Kirtsaeng's* prescription that while giving "substantial weight to the objective reasonableness" of a losing party's position, courts must also "give due consideration to all other circumstances relevant to granting fees." Opinion at *2-3, citing 136 S. Ct. at 1983.

Directly relevant here, in analyzing a reasonable fee under *Kirtsaeng*, "adjusted based on the relative financial strength of the parties," the Court recognized that the award must not subject the losing party to "financial ruin." 2018 WL 401510 at *5. Charles's accompanying Declaration describes how denial of any credit for COMEDIANS IN CARS GETTING COFFEE effectively destroyed his career, ruined his company, and brought his earnings to a halt. The tax returns and related documents submitted for the Court's *in camera* review establish unambiguously that he already stands on the brink of financial ruin; virtually any fee award will force him into bankruptcy.[1]

I need not belabor "the relative financial strength of the parties." The facts are these:

- Seinfeld has an estimated net worth of $950 million (Charles Declaration Ex. 2);
- Sony Pictures Quarterly Profit for third-quarter 2020 was $212 million (*id.*);
- Netflix's fourth quarter 2020 total revenue was $6.64 billion (*id.*)
- Charles's tax returns reflect losses for 2017 and 2018, and poverty level income for 2019;

---

[1] Unlike the *TufAmerica* plaintiff, here there can be no valid concerns about additional, unaccounted assets at Charles's disposal. *See* 2018 WL 401510 at *5.

2

- Charles has no industry representation. He has no liquid assets. He co-owns a heavily mortgaged home, and has some modest IRA's that cannot be accessed for several years.

Beyond establishing Charles's inability to pay any fee award, we respectfully request the Court recognize – as did Judge Parker – that "significant monetary benefits . . . come to Defendants by prevailing in this action." We set forth below certain facts in an attempt to beseech the Court to reconsider its rejection of Judge Parker's conclusions: (i) that Charles's position in the litigation "was factually arguable and thus not frivolous," (ii) that she "cannot say it was an objectively unreasonable theory," and (iii) that Charles "sought to create the extra step in this Circuit's copyright claim accrual case law that courts must view not just the *type of conduct* claimed to be a repudiation, but also the validity of the repudiator's claim of authorship." We implore the Court to accept Judge Parker's recognition that "[t]he law is not designed to penalize parties who wish to argue for a change or clarification of the law. The law is developed through such suits" (citing *Fogerty*, 510 U.S. at 526-27).

**Facts relevant to application of the remaining *Kirtsaeng* factors.**

Judge Parker recognized that from the outset, Charles was arguing what he characterized as a "question of first impression," and that she described as an "extra step in this Circuit's copyright claim accrual case law that courts must view not just the *type of conduct* claimed to be a repudiation, but also the validity of the repudiator's claim of authorship." The focus, in both this Court and the Second Circuit, was almost entirely on "repudiations" – and the type of conduct that accrued an ownership claim. But neither this Court nor the Second Circuit addressed the "extra step" – whether the repudiator's status mattered. No court has ever explained why Seinfeld was entitled to win; only that Charles had to lose because he waited too long.

No court has explained how Seinfeld came to own the Pilot's copyright. He didn't write it; he didn't claim to. He didn't direct it; he didn't claim to. Seinfeld has never produced evidence that he created COMEDIANS IN CARS GETTING COFFEE. He has never claimed to be the

3

Pilot's author. Only after it was "in the can" did he claim Charles's work was work for hire, but Seinfeld obtained no work for hire agreement or other written transfer of the copyright that had unquestionably vested in Charles as the Pilot's author. All Seinfeld did was complain Charles had waited too long to assert infringement of the copyright Charles indisputably owned. No court has explained why – given 17 USC § 201(a) – Charles's ownership could be called into question. As Judge Parker recognized, Charles "provided detailed facts related to his development of the idea for the show and creation of the pilot episode that gave him claim to authorship and facts to support his claim that Seinfeld did not make contributions to the pilot that would entitle Seinfeld to claim authorship or co-authorship."

Seinfeld has enjoyed all the benefits and financial rewards of owning a copyright in COMEDIANS IN CARS GETTING COFFEE. But how he came to own it remains a mystery. Charles respectfully disagrees with this Court's conclusion that *Everly v. Everly's* rule – that the repudiator must be author – only applies in the context of terminations of transfers. But whether the Court's interpretation is correct does not really matter. Whether or not the Sixth Circuit intended only to apply the *Everly* rule to terminations did not preclude the Second Circuit from modifying its copyright claim accrual case law as Charles has argued it should.

Charles's argument was not a crackpot theory. It was not an absurd suggestion. It was not frivolous. In advancing it, Charles was accepting the advice of counsel who Judge Parker recognized to be "an experienced litigator with strong knowledge of copyright law." The Court acknowledges it took into account the repeated warnings by Seinfeld's counsel that his claims were time-barred and likely to result in a fee award. But the reasonableness of Charles's conduct in following his own counsel's advice should not be measured by disinclination to be intimidated by adversary counsel's opinion.[2]

---

[2] The validity of Charles's claim had repeatedly been confirmed by groups of lawyers and by Duane Morris, which filed the initial amended complaint. Charles Declaration ¶¶ 16-17.

Characterizing Charles's suit as "opportunistic," the Court mistakenly contends Charles "received a substantial payment for his work on the show's pilot." This was error. Charles received *nothing* for creating, writing and directing the pilot. The "substantial payment" to which the Court apparently refers – some $109,000 – was a *reimbursement* of expenses Charles's company mouseROAR had incurred in producing the pilot and developing plans for additional episodes in the show's first season. The payment was arranged in written exchanges between Charles's wife Anne Estonilo, and Seinfeld's sister/business manager Carolyn Liebling. Those facts were set out in Estonilo's October 17, 2018 Declaration at ¶¶ 20-22. Discovery could have confirmed them. Seinfeld submitted no certification from Liebling disputing them.[3]

In evaluating whether Charles's suit was "opportunistic," the Court should consider too that Charles attempted to resolve his disagreements with Seinfeld through private dispute resolution. Charles Declaration ¶ 16. Seinfeld's $100 million sale to Netflix includes a license to "Comedian," the documentary film Charles directed and in which he and a partner hold a 50% contractual ownership interest. Charles Declaration ¶ 7. Coupled with Charles's claim for an interest in COMEDIANS IN CARS GETTING COFFEE, the sudden infusion of value in Charles's "Comedian" ownership interest triggered a justifiable desire to collect some of what he was owed. Justice Ginsburg's observation in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) is directly implicated ("there is nothing untoward about waiting to see whether an infringer's exploitation undercuts the value of the copyrighted work, has no effect on that work, or even complements it. Section 507(b)'s limitations period, coupled to the separate- accrual rule, allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle)." If the Court's inclination to assess fees remains unaltered, we respectfully suggest before Charles is forced into bankruptcy, the Court should consider some procedure by which the value of Charles's interest in "Comedian" can be gauged as a set-off.

---

[3] Defendants have in fact never submitted a sworn statement by anyone other than their counsel, who has no first-hand knowledge of the facts.

5

Just as Charles's theory was not frivolous, in its attempt to forge a modification to Second Circuit law, it was not objectively unreasonable.[4] Awarding attorneys fees here will not serve copyright's purpose. It will instead chill principled attempts to extend the law in the face of being declared objectively unreasonable. Judge Parker's observation was correct: "Imposing an award for the sake of deterring future parties from seeking changes or clarifications in the law would in fact undermine the purpose of the Copyrights Act; it generally will not promote the purposes of the Copyright Act to impose a fee award against a purported copyright holder when that person has not taken an objectively unreasonable litigation position. *Matthew Bender & Co. v.West Publishing Co.*, 240 F.3d 116. 122 (2d Cir. 2001). Rather than promoting the interests of copyright, an award of fees will serve only to strike a final devastating blow to Charles while telling Seinfeld that by wielding a limitations shield to prevent discovery of the truth, he could successfully continue to hide Charles's essential and comprehensive role in conceiving and executing the CICGC pilot — the seminal work from which scores of subsequent episodes derived.

Charles recognizes that he is not merely addressing "whether the amount of fees Seinfeld seeks is appropriate in light of 'the relative financial strength of the parties.'" He is instead respectfully urging the Court to exercise its discretion, to reevaluate, and to conclude that an award of attorneys fees is not in fact appropriate or equitable.

Charles created a show that existing Second Circuit law permitted Seinfeld to steal from him. Although Seinfeld's conduct has been found to be lawful, it was not just. Then, after suffering that injustice, the rules of the legal system have been interpreted in a way that Charles is now threatened with total ruin for having had the temerity to complain.

From the outset, Charles has lived under the threat of a fee award, hanging over him like a volcano emitting sporadic low rumbles. When Judge Parker ruled, although he had lost every prior

---

[4] Charles has previously explained that *no defendant* in existing Second Circuit law addressing accrual of copyright ownership claims, unlike Seinfeld, did not and could not assert an authorship interest.

round in the litigation and continued to believe in the merits and reasonableness of his claims, Charles was able to breathe a sigh of relief. But with unconscionable malice, Seinfeld wouldn't let it go. The specter of a crippling award from this Court has snapped back. We entreat the Court to let Charles breathe again.

**Dated**: March 12, 2021                              **CLARK GULDIN**
                                                        Attorneys at Law

                                                       By: _/s/ Peter L. Skolnik_
                                                       Peter L. Skolnik (PS 4876)
                                                       Of Counsel
                                                             20 Church Street, Suite 15
                                                             Montclair, New Jersey 07042
                                                             (973) 707-5346
                                                             *Attorneys for Plaintiff*
                                                             *Christian Charles*