UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____3/25/22____
```

Christian Charles,

                    Plaintiff,

         –v–

Jerry Seinfeld, et al.,

                    Defendants.

18-cv-1196 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Before the Court is Defendants' motion for attorneys' fees and costs under 17 U.S.C. § 505. The Court on February 26, 2021, ordered Charles to file a brief to address the size of fees requested by Defendants, which amounted to $872,939.66 in fees and $100,918.71 in costs, a total of $973,858.37. For the reasons that follow, the Court awards Defendants $28,750 in attorneys' fees and $92 in costs, a total of $28,842. The Court further concludes that Charles's counsel is jointly and severally liable for the payment of this award.

## I.    Background

The Court presumes the parties' familiarity with the facts of this case, which are explained in greater detail in the Court's prior orders and Judge Parker's report and recommendation. Dkt. Nos. 106, 139, 150. In brief, Plaintiff Christian Charles, an award-winning writer, director, and producer, alleged copyright claims against Jerry Seinfeld and several related Defendants related to the show *Comedians in Cars Getting Coffee*. Dkt. No. 106 at 1–2. The Court ultimately dismissed the second amended complaint on statute-of-limitations grounds, explaining that Charles was on notice of his claims since at least 2012 but did not file suit until 2018, far outside the three-year statute of limitations for such claims. *Id.* at 8.

1

Defendants, represented by the law firm of Gibson, Dunn & Crutcher, LLP, filed a motion for attorneys' fees under 17 U.S.C. § 505 on October 15, 2019, Dkt. No. 109, a motion that the Court denied with leave to refile pending resolution of Charles's appeal of the Court's order, Dkt. No. 120.  The Second Circuit affirmed dismissal of Charles's claims on June 18, 2020.  Dkt. No. 122.  Upon additional briefing of the motion for attorneys' fees, the Honorable Katharine H. Parker, U.S. Magistrate Judge, issued a report and recommendation, recommending that the Court deny Defendants' motion in significant part because Charles's claims were not objectively unreasonable.  Dkt. No. 139 at 13, 16–17.

The Court on February 26, 2021, sustained Defendants' objections to the report and recommendation, concluding that Charles's claims were objectively unreasonable and that other relevant factors favored awarding Defendants' attorneys' fees.  Op. & Order, Dkt. No. 150. Because Charles had not disputed the size of Defendants' requested fees and costs in its briefing or oral argument before Judge Parker nor in its briefing to this Court, the Court ordered Charles to file a brief on "the amount of the fee award," with particular attention to the relative financial strength of the parties.  Op. & Order at 9.  Charles filed a brief on the size of the fee award on March 12, 2021.  Pl. Br. on Size of Fee, Dkt. No. 151.  Defendants filed a response on March 19, 2021, in which they requested that Charles's counsel be held jointly and severally liable for the fees.  Defs. Br. on Size of Fee, Dkt. No. 152.  The Court then received further briefing from both parties on the issue of joint and several liability of Charles's counsel.  Pl. Sur-Reply, Dkt. No. 155; Def. Sur-Reply, Dkt. No. 158.

Last, the Court on December 21, 2021, ordered Charles to submit by December 27, 2021, Charles's financial documents referenced in his brief and attached declaration.  Dkt. No. 161. The Court received those documents under seal on December 22, 2021.

2

II.     **Charles's request to reconsider the Court's February 26 order**

Though the Court expressly instructed Charles to "file a brief not to exceed ten pages addressing the size of the fee award" requested by Defendants, Charles devotes much of his brief to relitigating the Court's conclusion that his claim was objectively unreasonable.  Pl. Br. on Size of Fee at 3–6.  Because this amounts to a request for the Court to reconsider a prior order determining a motion, the Court construes these portions of the brief as a motion for reconsideration governed by Local Civil Rule 6.3.

Local Rule 6.3 is intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (citation and internal quotation marks omitted).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (citation and internal quotation marks omitted)).  The decision whether to grant such a motion "rests within the sound discretion of the district court." *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013).

That high bar is not satisfied here.  Charles presents the same authorities and arguments as the Court considered and rejected in its prior order dated February 26, 2021.  First, Charles

argues that Defendants have not presented affirmative evidence of copyright ownership. Yet at the motion to dismiss stage, Defendants had no burden to present such evidence. And Charles's failure to file suit within the statute of limitations bars his suit from proceeding into discovery. *CTS Corp. v. Waldburger*, 573 U.S. 1, 7–8 (2014) (explaining the history and purpose of statutes of limitations). Second, Charles refers to the Sixth Circuit's decision in *Everly v. Everly*, 958 F.3d 442, 453 (6th Cir. 2020). The Court refers back to its prior conclusion that *Everly* is entirely consistent with the Second Circuit's holding in *Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011), and that neither case provides a reasonable basis for believing that Charles's action was timely filed. Op. & Order at 5–8. Third, Charles argues that the fact he received "repeated warnings" of the basic flaw in his claim does not justify fees. Pl. Br. on Size of Fee at 4. Yet such warnings are an important factor under § 505's fees provision, which "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 205 (2016). And fourth, Charles contests the Court's conclusion that the suit was "opportunistic." Pl. Br. on Size of Fee at 3–6. The Court concludes, however, that Charles's suit filed over five years after his ownership claim was repudiated at the same time that Defendants completed a multimillion-dollar deal with Netflix reflects opportunistic litigation, even if Charles's attempt to first resolve the dispute outside of court provides some mitigation. Op. & Order at 5.[1]

The Court therefore denies Charles's requests to reconsider its prior order.

---

[1] Plaintiff cites in support *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 682–83 (2014), for the proposition that there is "nothing untoward about waiting to see whether an infringer's exploitation undercuts the value of the copyrighted work" because § 507(b)'s separate-accrual rule permits "a copyright owner to defer suit until she can estimate whether litigation is worth the candle." That case is inapplicable, as it is about infringement, not ownership or even, as Plaintiff attempts to frame his claim, authorship. *See Kwan*, 634 F.3d at 228 (contrasting accrual rules for ownership and infringement claims).

### III.     Defendants' presumptively reasonable fee

A district court exercises "considerable discretion" in awarding attorneys' fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *TufAmerica Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2016 WL 1029553, at *3 (S.D.N.Y. Mar. 9, 2016), *reconsideration granted in part*, 2016 WL 3866578 (S.D.N.Y. July 12, 2016), *and on reconsideration in part*, 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill*, 522 F.3d at 183). The Court will first evaluate the reasonable number of hours required by the case, and will then turn to the reasonable hourly rate before calculating the resulting reasonable fee.

An analysis of hourly rates turns on "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011) (cleaned up). Generally, an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of" a reasonable hourly rate. *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99-cv-0962 (RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006). As to hours, the Court conducts "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam)). In determining whether hours are excessive, "the critical inquiry is whether, at the

time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). In calculating fees, the Court also looks at the nature of the legal matter: Complex cases justify higher rates and more hours and resources while simpler cases justify less of each. *Arbor Hill*, 522 F.3d at 184–87.

### A. Defendants' requested fees

Despite several opportunities to do so, Charles has repeatedly declined to contest the basis of Defendants' requested fees. Nevertheless, the Court has an independent obligation to conduct a "conscientious and detailed inquiry" into the reasonableness of a fee award. *Lunday*, 42 F.3d at 134.

Defendants request a staggering $872,939.66 in attorneys' fees and $100,918.71 in costs. *See* Kusnetz Suppl. Decl. ¶¶ 2–4, Dkt. No. 132.[2] That fee amount is constituted by 1,465.9 hours of work completed by eight attorneys as well as paralegals and support staff at Gibson Dunn. These individuals include:

- Orin Snyder, a Senior Partner at the firm and Co-Chair of the firm's Media, Entertainment and Technology Practice Group. His standard hourly rates were $1,395 in 2018; $1,445 in 2019; and $1,550 in 2020.

- David Kusnetz, a sixth-year litigation associate at the firm and had day-to-day responsibility for this matter. His standard hourly rates were $815 in 2018; $895 in 2019; and $965 in 2020.

- Matthew McGill, a partner at the firm who assisted on the appeal in this case. His standard rate was $1,320 in 2020.

- Laura O'Boyle, a junior partner at the firm. Defendants are not seeking reimbursement of fees for any work done by O'Boyle.

- Five first-year associates, Jeremy Bunting, Trevor Gopnick, Kimberly Kirshenbaum, Amanda LeSavage, and Zachary Piaker, whose hourly rates ranged from $545 in

---

[2] The Court considers the materials attached to both of Mr. Kusnetz's declarations. *See also* Kuznetz Decl., Dkt. No. 125.

2018 to $650 in 2020.

- Three paralegals, whose requested hourly rates are $390 in 2018, $405 or $412.50 in 2019 and $423.75 or $431.25 in 2020.

- Four litigation support staff, whose requested hourly rates are $195 and $303.75 for 2018, $202.50 in 2019 and $210 in 2020.

- A managing attorney, for whom the requested hourly rates are $442.50 in 2018, $461.25 in 2019 and $438.75 in 2020.

Defendants provided the educational and professional background for their attorneys but not for paralegals or support staff.

## B. Rates

According to the Kusnetz declaration, the rates listed above are those actually charged and paid by Gibson Dunn's clients for comparable work. That weighs in favor of finding the rates reasonable, but is not dispositive. *Blum*, 465 U.S. at 895 n.11.

Defendants cite in support of their requested rates several cases in this district that awarded similarly high rates for Gibson Dunn attorneys. Yet these cases are not copyright cases. *See, e.g.*, *APEX Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, No. 11-cv-9718 (ER), 2018 WL 5784544, at *5 (S.D.N.Y. Nov. 5, 2018) (in breach of contract action, approving hourly rates of up to $1,058.25); *Vista Outdoor Inc. v. Reeves Family Tr.*, No. 16-cv-5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (in a breach of contract action, approving rates up to $1,260 for Gibson Dunn partners); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16-cv-8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (finding reasonable the rate of $1,048.47 charged by partners at Gibson Dunn).

In copyright cases, the rates deemed reasonable in this district are lower than those sought by Defendants. *See, e.g.*, *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, No. 13-cv-1526 (RJS), 2020 WL 2848232 (S.D.N.Y. June 1, 2020) (in copyright action, capping partner

rate at $750 per hour, capping associate rates at $465 per hour, and capping paralegal rate at $200 per hour for attorneys at Stroock & Stroock & Lavan LLP and Hughes Hubbard & Reed LLP); *Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618 (ALC), 2020 WL 468904 (S.D.N.Y. Jan. 29, 2020) (in copyright case in which Loeb & Loeb LLP represented the prevailing party, awarding $913 per hour to partner with 40 years' experience, $750 for partner with 20 years' experience, $575 per hour for senior associate, $400 per hour for associate with over 5 years of experience, and $150-200 per hour for paralegals and litigation support personnel); *Craig v. UMG Recordings, Inc.*, No. 16-cv-5439 (JPO), 2019 WL 2992043, at *5 (S.D.N.Y. July 9, 2019) (in copyright case in which Loeb & Loeb LLP represented the prevailing party, awarding  $828 per hour to partner with 40 years' experience and $550 per hour for associate with 5 years of experience).

Partner rates have ranged from a low of $400 to as high as $913.  *See also Broad Music, Inc. v. Pamdh Enters., Inc.*, No. 13-cv-2255, 2014 WL 2781846, at *6-7 (S.D.N.Y. June 19, 2014) (approving hourly rates of $570 for partner with 15 years' experience in copyright law); *Sub-Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*, No. 13-cv-2548, 2014 WL 1303434, at *8-9 (S.D.N.Y. Apr. 1, 2014) (collecting cases and approving rates of $785 for a partner who specializes in copyright); *Pyatt v. Raymond*, No. 10-cv-8764 (CM), 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) (collecting cases approving rates ranging from $400 to $650 for partners in copyright and trademark cases); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Liab. Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (finding partner's rate of $735 to be reasonable in copyright dispute).

Courts have found associate rates of between $200 and $575 to be reasonable in copyright cases.  *See also Genger v. Genger*, No. 14-cv-5683 (KBF), 2015 WL 1011718, at *2

(S.D.N.Y. Mar. 9, 2015) ("New York district courts have . . . recently approved rates for law firm associates in the range of $200 to $450 per hour . . . ."); *Dweck v. Amadi*, No. 10-cv-2577 (RMB) (HBP), 2012 WL 3020029, at *4 & n.5 (S.D.N.Y. July 6, 2012) (collecting cases approving rates between $180 and $440 per hour for associates).[3]

Courts in this district generally find that reasonable hourly rates for paralegal and litigation support staff range from $150 to $250.  *See, e.g.*, *Tatintsian v. Vorotyntsev*, No. 16-cv-7203 (GHW), 2020 WL 2836718, at *5 (S.D.N.Y. June 1, 2020) (finding "$150 per hour is reasonable for a paralegal in a complex commercial litigation matter"); *H.B. Auto. Grp., Inc.*, 2018 WL 4017698, at *5 (reducing senior paralegal with 18 years of relevant experience from approximately $215 to $200 per hour); *Vista Outdoor Inc.*, 2018 WL 3104631 at *7 ("[C]ourts in this District typically award rates not to exceed $200 per hour for paralegals."); *TufAmerica*, 2016 WL 1029553, at *6 (reducing hourly rate for junior paralegals to $150).  Additionally, courts often reduce hourly rates for paralegals when no information was provided as to their experience and expertise.  *See Sid Bernstein Presents, LLC v. Apple Corps Ltd.*, No. 16-cv-7084 (GBD), 2018 WL 1587125, at *5 (S.D.N.Y. Mar. 29, 2018) (in copyright case, reducing paralegal rates from $185 to $100 where no information was provided regarding their experience); *Yea Kim v. 167 Nail Plaza, Inc.*, No. 05-cv-8560 (GBD) (GWG), 2009 WL 77876, at *9 (S.D.N.Y. Jan. 12, 2009) (reducing paralegal rates to $50 because the Court was "given no

---

[3] Even in commercial litigation, courts in this District have not awarded associate rates in a significantly higher range.  *See, e.g.*, *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 286 F. Supp. 3d 585, 588-89 (S.D.N.Y. 2018) (approving, in commercial litigation, hourly rates for partners of $765 and for associates of up to $450 for attorneys at Holland & Knight LLP); *H.B. Auto. Grp., Inc. v. Kia Motors Am., Inc.*, No. 13-cv-4441 (VEC) (DF), 2018 WL 4017698, at *5 (S.D.N.Y. July 25, 2018) (finding $395 per hour is reasonable for a lead associate at Hogan Lovells US LLP), *report and recommendation adopted*, 2018 WL 4007636 (S.D.N.Y. Aug. 22, 2018).

information whatsoever as to their experience and expertise").

In this case, based on the prevailing rates awarded by courts in this district, the extensive experience and reputation of Gibson Dunn, and the information provided about the attorneys who worked on this matter, all of whom have strong credentials, the Court awards the following rates to counsel who worked on this case:

- Orin Snyder:           $875 in 2018; $900 in 2019; and $925 in 2020.

- David Kusnetz:         $400 in 2018; $425 in 2019; and $450 in 2020.

- Mathew McGill:         $800 in 2020.

- Jeremy Bunting:        $270 in 2018.

- Trevor Gopnick:        $250 in 2018 and $275 in 2019.

- Kimberly Kirschenbaum: $270 in 2018.

- Amanda LeSavage:       $275 in 2019 and $300 in 2020.

- Zachary Piaker:        $275 in 2019 and $300 in 2020.

Because no information was provided to the Court about the experience and education of the legal support staff who worked on this case and in light of awards in similar cases for support staff, the Court awards the rate of $150 per hour for litigation support staff and $200 per hour be for the paralegals and Managing Attorney.

## C. Hours

Defendants' requested 1465.9 hours of billed work excludes any work performed by summer associates and partner O'Boyle. Partners Snyder and McGill, who have the highest billing rates, performed 6 percent of the billed hours; associate Kusnetz about 57 percent; the junior associates about 32 percent; and paralegals and support staff about 5 percent. Though Defendants properly assigned the bulk of the legal work to associates rather than senior partners,

the Court concludes that the volume of hours billed is excessive by any measure.  "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (cleaned up).

A few examples demonstrate the excessive nature of the hours billed.  First, take the series of motions to dismiss that Defendants filed.  The lead associate, Kusnetz, alone billed 120 hours to research and draft the initial motion to dismiss; an additional 130 hours to update the motion following the first amended complaint; and a further 37 hours to update it following the second amended complaint.  And partners and junior associates also billed hours to contribute to and review this work.  The Court finds substantial overlap in the authorities across the three briefs filed in support of the motions to dismiss, suggesting that the hours billed to modify later briefs were in large part unnecessary.  And the approximately 180 hours spent by associates to analyze Charles's response and to draft a reply exacerbates the issue.  At bottom, given the straightforward statute-of-limitations defense at the center of this case, Defendants' request of $300,000 for drafting just the moving briefs alone is plainly unreasonable.[4]

Second, between their two motions for attorneys' fees—the first prepared in September 2019 and the present motion in May 2020—Defendants request fees for more than 150 hours of work.  Courts in this district typically find that motions for attorneys' fees should not exceed 30 hours even in cases more complex than this one.  *See, e.g.*, *Reiter v. Metro. Transp. Auth.*, No. 01-cv-762 (GWG), 2007 WL 2775144, at *20 (S.D.N.Y. Sept. 26, 2007) ("[E]ven in a complex

---

[4] As Defense counsel observed at the oral argument before Judge Parker: "There was no novelty here.  There was no mystery here.  This case was as dead on arrival as a copyright case can be. I've been practicing copyright for a lot of years, 30 years."  Tr. at 13, Dkt. No. 135.

case, a fee application should take about 30 hours."); *Cooper v. Sunshine Recoveries*, No. 00-cv-8898 (LTS) (JCF), 2001 WL 740765, at *4 (S.D.N.Y. June 27, 2001) (40 hours reduced to 21); *Colbert v. Furumoto Realty,* 144 F. Supp. 2d 251, 262 (S.D.N.Y. 2001) (20.5 hours reduced to 15.5).

Third, the records reflect hours billed for multiple attorneys, including junior associates, to attend a mock argument and oral argument.  Typically, courts do not pass the cost of associates observing mock arguments or oral arguments on to the opposing party in a fee award. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 97 (2d Cir. 2004) (finding the attendance of five attorneys at oral argument to be "excessive" and stating that "[o]nly the hours reasonably necessary for attorney attendance at oral argument should be included in the firms' respective lodestars"); *White v. White Rose Food*, 86 F. Supp. 2d 77, 79–80 (E.D.N.Y. 2000), *rev'd sub nom. on other grounds*, 237 F.3d 174 (2d Cir. 2001) (omitting from an associate's requested hours "time he spent merely observing" partners at oral argument and trial).

Excessive billing for relatively straightforward matters is repeated across this case, including for initial disclosures, seeking a stay, mediation, brief and appendix formats, oral argument preparation, and the actual decisions issued in this case.  The excessive research time warrants a substantial reduction in hours.  *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606 (S.D.N.Y. 2018) (reducing hours in fee award for excessive research time).

Further, Defendants submitted records to the Court that involve block billing—that is, the attorneys did not sufficiently disaggregate their time description to permit the Court to determine the time spent on individual tasks.  Block billing, "although disfavored, does not automatically preclude recovery for the hours billed by counsel."  *Benihana, Inc. v. Benihana of Tokyo, LLC*,

No. 15-cv-7428 (PAE), 2017 WL 6551198, at *3 (S.D.N.Y. Dec. 22, 2017).  "[C]ourts make reductions to block-billed hours in circumstances when (1) there is reason to believe that the hours billed were independently unreasonable; (2) the block billing involved aggregating tasks that were not all compensable; or (3) the number of hours block billed together was so high (such as five hours or more) so as to create an unacceptable risk that the aggregated total exceeded the reasonable hours worked on compensable tasks."  *Id.*  Here, the first and third factors are present, which justifies a reduction in hours.

The Court has broad authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended.  *Williams v. Epic Sec. Corp.,* 368 F. Supp. 3d 651, 656–57 (S.D.N.Y. 2019).  Courts in this district have applied percentage reductions of up to fifty percent to address overbilling issues, driven by case and billing specifics.  *See, e.g., Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64–65 (2d Cir. 2014) (upholding "an across-the-board 50 percent reduction" in hours); *Alicea,* 272 F. Supp. 3d at 612 (where plaintiff's counsel engaged in numerous instances of excessive and unjustified billing, the court found that "[a] fifty percent cut in this case is warranted"); *Lora v. Grill on 2nd LLC*, No. 18-CV-4949 (JMF), 2018 WL 5113953, at *1–2 (S.D.N.Y. Oct. 19, 2018) ("In light of the seeming lack of complexity of the legal and procedural issues at play and counsel's time and labor, the Court finds that the fee request should be reduced by 50%."); *Hines v. 1025 Fifth Ave. Inc.,* No. 14-cv-3661 (SAS), 2015 WL 4006126, at *7 (S.D.N.Y. June 30, 2015) ("I find that a fifty (50) percent reduction in the total number of hours expended is necessary to correct for excessive billing, over litigation, and counsel's utter failure to exercise billing judgment."); *Tucker v. City of New York*, 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) ("[U]sing multiple attorneys in a simple case, which this certainly was, poses the serious potential—fully realized in

this instance—for duplication of work or overstaffing."); *see also, e.g.*, *Houston v. Cotter*, 234 F. Supp. 3d 392, 407 (E.D.N.Y. 2017) (reducing fees by 50%); *Anello v. Anderson*, 191 F. Supp. 3d 262, 284 (W.D.N.Y. 2016) (same).

"In making its determination of the percentage reduction to be used, the Court is guided by the principles of rough justice. . . . [T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" *Epic Sec. Corp.*, 368 F. Supp. 3d. at 661 (quoting *Errant Gene Therapeutic, LLC*, 286 F. Supp. 3d at 588). The Court therefore reduces Defense counsel's hours across the board by 50 percent.

### D.  Costs

Section 505 permits "the recovery of full costs" by the prevailing party.  17 U.S.C. § 505. Generally, courts award reasonable out-of-pocket costs incurred by attorneys and charged to their clients.  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) ("An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).  Defendants' request of $100,918.71 in costs is made up of $66,386.26 for electronic legal research, $32,692.21 for electronic discovery database hosting fees, $1,308.30 for in-house duplication charges, and $532.24 for postage, messenger and courier delivery services.[5]

The Court will not award costs for electronic research fees, which are already accounted in the attorneys' hourly rates and research time.  *See, e.g.*, *John Wiley*, 327 F. Supp. 3d at 648 ("[T]he cost of the computer service used in the research is no more reimbursable than the cost of the West's Keynote Digests and the volumes of the Federal Report and the Federal

---

[5] There is a $ 0.30 discrepancy in the costs requested and the sum of the component costs.

14

Supplement that lawyers used to use (and many still use) to find authority and research issues of law." (quoting *BD v. DeBuono*, 177 F. Supp. 2d 201, 209 (S.D.N.Y. 2001)); *DiBella v. Hopkins*, 407 F. Supp. 2d 537, 539 (S.D.N.Y. 2005); *cf. U.S. for Use & Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) ("We agree that computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost.").

Similarly, the electronic database hosting fees are very high and not properly imposed on Charles in a case that did not proceed to discovery.  Defendants of course had an obligation to preserve relevant documents for discovery, as did Charles, but both sides bear and typically retain that cost.

By contrast, copying costs *are* typically recoverable.  Yet Defendants do not explain exactly what was copied and why, especially as paper copies become less and less necessary. For example, it appears that some copying was done to create litigation binders.  The Court will reduce copying costs by 50 percent.

Postage and messenger costs are similarly recoverable by default.  But Defendants do not explain why a messenger and overnight mail was required rather than, for example, first class mail.  The Court reduces these costs by 50 percent as well.

### E.  Calculation of reasonable fees and costs

Based on the above analysis, the Court concludes that a presumptively reasonable fee for Defendants based on the lodestar method is $287,500 in attorneys' fees—the hourly rates determined above multiplied by the hours listed in Kusnetz Suppl. Decl., Ex. B—and $920.27 in costs—$654.15 for copying and $266.15 for mailing and delivery.

### IV.    Equitable reduction of the fee award

"[E]ven after the 'presumptively reasonable fee' is calculated, a fee award may be adjusted based on the relative financial strength of the parties." *TufAmerica Inc. v. Diamond*, No. 12-CV-3529 (AJN), 2018 WL 401510, at *5 (S.D.N.Y. Jan. 12, 2018) (quoting *Barclays Cap. Inc. v. Theflyonthewall.com*, No. 06 CIV. 4908 (DLC), 2010 WL 2640095, at *6 (S.D.N.Y. June 30, 2010)). Ultimately, the fee award must be tailored to the goals of § 505, namely "to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *accord Vargas v. Transeau*, No. 04-CV-9772 (WHP), 2008 WL 3164586, at *4 (S.D.N.Y. Aug. 6, 2008), *aff'd sub nom.*, 352 F. App'x 458 (2d Cir. 2009) ("[T]he court may consider the defeated litigant's economic circumstances to determine whether a lesser sum assessed would [fulfill] the statute's deterrent purpose, without subjecting [the losing party] to financial ruin." (internal quotation marks and citation omitted)).

### A.  The parties' financial resources

The financial disparity between the parties is glaring.  Charles initially pursued this case pro se and has been represented by two sets of counsel on a contingency basis—in other words, he has never paid attorneys' fees.  Pl. Br. on Size of Fee, Attach. 1 A ("Charles Decl.") ¶ 17. According to his sworn declaration, Charles's income "completely collapsed" following the events at issue in this case. *Id.* ¶ 31.  In the four years preceding this suit, Charles reported income totaled just $1,000.  He further attests that he has "no liquid assets." *Id.* ¶ 32.  Charles's financial record submitted to the Court under seal confirm these statements and that Charles's financial situation is indeed precarious.  Defendants do not dispute these facts.

By contrast, Defendants are well known and financially thriving.  Plaintiff attaches to the declaration of Mr. Charles a collection of media sources that estimate Defendants' net worth and revenues.  Charles Decl., Ex. 2.  The Defendants do not contest these numbers.  And the Court

finds them to be consistent with Defendants' public securities filings.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (permitting judicial notice of public documents, including SEC filings).  Simply put, the difference in the parties' financial resources is vast.

Defendants argue that Charles's financial position "does not negate" the need to award fees to satisfy the ends of compensation and deterrence.  Defs. Br. on Size of Fee at 2–3.  The Court agrees, so far as this argument goes.  As the Court previously stated, Charles's pursuit of opportunistic and baseless claims requires "[s]ubstantial deterrence."  Op. & Order at 8.  Some degree of deterrence is especially necessary here because Charles received "repeated—and correct—warnings" that his claims were time-barred and that Defendants would seek a fee award under § 505.  Charles's conduct reflected, as Defendants describe it, a sense that "he had nothing to lose and everything to gain" in pursuing this litigation.  Def. Br. on Size of Fee at 3.  But the Court must further assess "whether, in light of [Plaintiff's] ability to pay, a lesser sum assessed would . . . fulfill[] the statute's deterrent purpose without subjecting him to financial ruin."  *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1029 (2d Cir. 1979); *see also Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992) ("[W]hen a court awards defendants attorney's fees, it must take into account the financial circumstances of the plaintiff.").

### B.  Joint and several liability of Charles's counsel

Defendants also argue that the financial burden on Charles should be reduced by holding his counsel jointly and severally liable for the fees award.  The authority to grant this request derives from "a court's inherent power[, which] allows it to impose monetary sanctions against a litigant (or its counsel) for misconduct."  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021).[6]  To hold counsel liable for fees owed by their client, a court must make

---

[6] The authority to sanction counsel, as opposed to a party, is also supported by 28 U.S.C. § 1927,

two findings: "first, that 'the challenged claim was without a colorable basis' and, second, that 'the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay.'" *Id.* at 368 (quoting *Enmon*, 675 F.3d at 143). The first requirement means that the claim "lacks any legal or factual basis." *Id.* (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)). And bad faith may be inferred when an action is "so completely without merit as to require the conclusion that it must have been undertaken for some improper purpose." *Id.* (cleaned up) (quoting *Enmon*, 675 F.3d at 143).

For the same reasons articulated in its prior opinion that Charles's claim was objectively unreasonable, the Court finds that Charles's claims lacked a colorable basis. Op. & Order at 5–8. Indeed, "Charles all but concedes that controlling Second Circuit precedent squarely foreclosed his claims." *Id.* at 5. And Charles's conduct "not only multiplied the proceedings, but it caused the district court 'to expend considerable time and effort that could have been devoted elsewhere.'" *Int'l Techs. Mktg., Inc.*, 991 F.3d at 368 (quoting *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, No. 1:15-CV-2457 (GHW), 2019 WL 1244493, at *9 (S.D.N.Y. Mar. 18, 2019)).

Additionally, the Court infers bad faith on Charles's counsel's part because the claims were completely without merit. Given the clarity of the controlling law at issue here, "[n]o reasonable copyright attorney, or even an attorney who had devoted 20 minutes to legal research, would have filed this complaint." *Schleifer v. Berns*, No. 17-CV-1649 (BMC), 2017 WL 3084406, at *6 (E.D.N.Y. July 19, 2017). Further, counsel refused repeated opportunities to withdraw the claims after warnings from Defendants and upon the filing of multiple motions to dismiss. *See id.* at *7. Rather, counsel's litigation conduct "created unusually high costs," Op.

---

the requirements for which are effectively identical as the Court's inherent authority. *See Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143–44 (2d Cir. 2012).

& Order at 8, and delayed resolution of this action, *Enmon*, 675 F.3d at 143.  Apparently, counsel decided "to roll the dice" despite dispositive, binding authority.  *Schleifer, 2017 WL 3084406, at \*7.*

Crucially, Charles relied on the advice of his counsel—an experienced copyright lawyer, Pl. Sur-Reply at 4—in choosing to press this litigation.  Charles explained that his counsel's experience "was reassuring" and he "was given no reason to believe [his] case was objectively unreasonable."  Charles Decl. ¶ 17.  As litigation proceeded, Charles "follow[ed] his own counsel's advice" to ignore indications that his claims lacked merit.  Pl. Br. on Size of Fee at 4.  Even now, counsel refuses to acknowledge his error.  *See, e.g.*, Pl. Br. on Size of Fee at 4.  These circumstances present "a need to deter attorneys who fail to comply with their obligations to the Court to research and put forth good-faith claims and defenses."  *Schleifer*, 2017 WL 3084406, at \*6.  Charles himself need not bear the full brunt of the costs for which his counsel is responsible.

The Court therefore holds that Charles's counsel is jointly and severally liable for the fee award assessed against Charles.

### C.  Calculation of the final award

Even accounting for counsel's joint and several liability, the Court concludes that equitable considerations—Charles's limited financial resources relative to those of Defendants chief among them—favor a significant reduction from the presumptively reasonable fee award calculated above.  The Court finds that a far smaller fee award would adequately deter Charles and his counsel, as well as send a general deterrence signal, while still meaningfully compensating Defendants.  It therefore reduces Defendants' presumptively reasonable fee by 90 percent, resulting in a final attorneys' fee award of $28,750 and costs of $92.  That reduction, while considerable, is consistent with the practice of other courts in this circuit that have

19

similarly reduced reasonable fees in light of limited financial resources.  *E.g.*, *Cabell v. Sony Pictures Enters., Inc.*, No. 09-CV-1610 (WHP), 2011 WL 92765, at *2 (S.D.N.Y. Jan. 7, 2011) (awarding just $1,000 of the $500,000 fee requested by Sony Pictures and other defendants in a copyright-infringement suit); *Hsueh v. N.Y. State Dep't of Fin. Servs.*, No. 15-CV-3401 (PAC), 2017 WL 5514520, at *1 (S.D.N.Y. Nov. 16, 2017) (reducing fee award by over 95 percent where defendants sought fees equal to plaintiff's annual salary); *Gordon v. McGinley*, No. 11-CV-1001 (RJS), 2013 WL 1455122, at *4 (S.D.N.Y. Mar. 28, 2013) (reducing fee award by over 90 percent); *Faraci*, 607 F.2d at 1029 (reducing a requested $2500 fee award to $200, approximately 92 percent); *Tancredi*, 2003 WL 22299203, at *6 (reducing a fees award by more than 88 percent); *Vargas*, 2008 WL 3164586, at *4 (reducing a fee award by approximately 78 percent where plaintiff reported "monthly income of $1,300 to $1,450, and very limited savings" but had some additional assets).

In further recognition of Charles's financial resources, the Court also adopts Defendants' proposal that, if Charles so chooses, "the fee award may be paid in annual installments over the next ten years to ease the burden on Charles and his counsel."  Defs. Br. on Size of Fee at 5.[7]

Neither party addressed the matter of interest.  Under 28 U.S.C. § 1961, post-judgment interest is mandatory running from the date of judgment (as opposed to a prior opinion and order of the Court).  *KCG Holdings, Inc. v. Khandekar*, No. 17-CV-3533 (AJN) (GWG), 2020 WL 7053229, at *16 (S.D.N.Y. Dec. 2, 2020), *report and recommendation adopted*, 2021 WL

---

[7] Charles also suggests that if the Court awards fees, "before Charles is forced into bankruptcy, the Court should consider some procedure by which the value of Charles's interest in 'Comedian' can be gauged as a set-off."  Pl. Br. on Size of Fee at 5.  Charles's brief does not explain this proposal with adequate specificity for the Court to make a ruling on it.  But the Court strongly encourages and expects that the parties meet and confer on this and any similar methods that would facilitate a timely satisfaction of Defendants' award without causing Charles needless hardship.

623927 (S.D.N.Y. Feb. 17, 2021).

## V.     Conclusion

For the reasons above, the Court GRANTS IN PART Defendants' motion for fees.  The

Court awards Defendants $28,750 in attorneys' fees and $92 in costs for a total of $28,842.  The

Court further awards mandatory interest to Defendants at the rate specified in 28 U.S.C.

§ 1961(a) running from the date of judgment.  Charles and his counsel, Mr. Peter Skolnik, are

jointly and severally liability for the payment of this award.  If Charles so chooses, he may make

these payments in equal monthly installments over a ten-year period.

The Clerk of Court is respectfully directed to enter judgment.


SO ORDERED.

Dated: March 25, 2022
       New York, New York                    _____
                                                     ALISON J. NATHAN
                                                  United States District Judge

21